No. 24-4624

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE EX PARTE APPLICATION OF GREGORY GLINER
FOR AN ORDER PURSUANT TO 28 U.S.C. §1782
GRANTING LEAVE TO OBTAIN DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS

On Appeal from the United States District Court
for the Northern District of California at San Francisco
(Case No. 3:24-mc-80087-JD, Hon. James Donato)

## PRINCIPAL BRIEF OF
## APPLICANT-APPELLANT GREGORY GLINER

MICHELE FLOYD
KILPATRICK TOWNSEND
STOCKTON LLP
2 Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 273-4756
mfloyd@ktslaw.com

JOSEPH R. OLIVERI
*Lead Counsel*
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7405
joe@clarelocke.com

*Attorneys for Applicant-Appellant Gregory Gliner*

September 6, 2024

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Because Applicant-Appellant Gregor Gliner is an individual, no disclosure statement is required by Federal Rule of Appellate Procedure 26.1.

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ...................................................................... v

INTRODUCTION .................................................................................. 1

STATEMENT OF JURISDICTION ............................................................ 5

STATEMENT OF THE ISSUE.................................................................. 5

STATUTORY ADDENDUM ..................................................................... 6

STATEMENT OF THE CASE .................................................................. 7

    A.    Statement of Facts. ................................................................ 7

        1.    Gregory Gliner Earns a Reputation as a Successful and Ethical Businessman in the United Kingdom. ........................... 7

        2.    Mr. Gliner's Father-in-Law Passes Away and Litigation Over the Family Wealth—and a Smear Campaign Against Mr. Gliner's Family—Follow. ................................................... 9

        3.    Mr. Gliner Is Falsely Accused of Criminality by an Anonymous Person or Persons in an Article on the Disinformation Website PoliticalLore.com. ........................... 10

        4.    Mr. Gliner Intends to Sue the Anonymous Defamer(s) in the United Kingdom But Has Been Unable to Determine Their Identities.................................................................................. 12

        5.    Mr. Gliner's Application Seeks Discovery of Evidence Sufficient to Identify the Anonymous Defamer(s)— Evidence Necessary for Mr. Gliner to Sue Them, Which Dynadot Almost Certainly Possesses........................................ 14

    B.    Procedural History. ............................................................. 16

1.  Mr. Gliner Files His Application Under 28 U.S.C. §1782, Supported by Three Declarations and a Memorandum of Law. ................................................................ 16

2.  The District Court Denies Mr. Gliner's Application in a Paperless Order. ..................................................... 17

3.  Mr. Gliner Moves to Alter or Amend Under Rule 59(e) to Correct the District Court's Manifest Errors of Law, But the Court Denies His Motion Without Explanation..................... 18

4.  The District Court Denies Mr. Gliner's Rule 59(e) Motion Without Explanation in a Paperless Order.............................. 19

SUMMARY OF ARGUMENT ............................................................ 20

STANDARD OF REVIEW ................................................................ 23

ARGUMENT.......................................................................................... 23

I.    The District Court Reversibly Erred by Denying Mr. Gliner's 28 U.S.C. §1782 Application Because It Satisfies All Statutory Requirements and All Discretionary Factors Weigh in Favor of Granting It. .......................... 23

A.   28 U.S.C. §1782 Broadly Allows Discovery in Aid of Foreign Proceedings. ........................................................................ 23

B.   Mr. Gliner's Application Easily Satisfies Section 1782's Statutory Requirements...................................................................... 26

C.   The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Gliner's Application............................................................ 28

1.  The First *Intel* Factor Favors Granting the Application: Dynadot Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Dynadot to Provide Discovery................................. 28

2.  The Second *Intel* Factor Favors Granting the Application: The English Court Will Accept, Not Reject, Assistance from U.S. Courts Under Section 1782............................... 30

3.    The Third *Intel* Factor Favors Granting the Application:  The Application Does Not Attempt to Circumvent Proof-Gathering Restrictions or Policies. ........................................... 32

4.    The Fourth *Intel* Factor Favors Granting the Application: Mr. Gliner's Discovery Request Is Not Unduly Burdensome. ...................................................................... 34

II.   The District Court Reversibly Erred by Denying Mr. Gliner's 28 U.S.C. §1782 Application on First Amendment Grounds Because It Does Not Implicate the First Amendment. ................................................. 37

A.    The First Amendment Is Not Implicated by Mr. Gliner's Application Because There Is No Indication That the Anonymous Publisher Is a U.S. Citizen or Located in the United States, and the First Amendment Does Not Apply to Non-U.S. Citizens Outside the United States. ....................................................... 37

B.    The First Amendment Is Not Implicated by Mr. Gliner's Application Because the PoliticalLore.com Article Is False and Defamatory, and the First Amendment Does Not Protect Defamatory Speech. ......................................................... 44

CONCLUSION ................................................................................... 48

CERTIFICATE OF COMPLIANCE ...................................................... 50

CERTIFICATE OF SERVICE .............................................................. 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
 292 F.3d 664 (9th Cir. 2002), *aff'd sub nom.*
 *Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004)................................................................. 23, 24

*Agency for Int'l Dev. (USAID) v.*
 *All. for Open Soc'y Int'l, Inc.*,
 591 U.S. 430 (2020)................................................... 3, 5, 18, 21, 38

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
 793 F.3d 1108 (9th Cir. 2015) ..................................................... 25, 28

*Ashcroft v. Free Speech Coal.*,
 535 U.S. 234 (2002)................................................... 3, 6, 19, 22, 44

*B&L Prods., Inc. v. Newsom*,
 104 F.4th 108 (9th Cir. 2024) ........................................................... 41

*Bar-Navon v. Brevard Cnty. Sch. Bd.*,
 290 F. App'x 273 (11th Cir. 2008) ................................................... 41

*Church of Am. Knights v. Kerik*,
 356 F.3d 197 (2d Cir. 2004) ............................................................ 41

*Clark v. Cmty. for Creative Non-Violence*,
 468 U.S. 288 (1984)......................................................................... 40

*Columbia Ins. v. Seescandy.com*,
 185 F.R.D. 573 (N.D. Cal. 1990)..................................................... 47

*DeMartini v. DeMartini*,
 833 F. App'x 128 (9th Cir. 2020) ............................................... 12, 48

*Digit. Shape Techs., Inc. v. Glassdoor, Inc.*,
 No. 16-mc-80150, 2016 WL 5930275
 (N.D. Cal. Oct. 12, 2016)................................................................. 35

*Eurasian Nat. Res. Corp. Ltd. v. Simpson*,
No. 19-mc-699, 2020 WL 8456039
(D. Md. Jan. 6, 2020) ................................................................ 31

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
27 F.4th 136 (2d Cir. 2022) ..................................................... 33

*Felton v. Griffin*,
185 F. App'x 700 (9th Cir. 2006) ............................................ 44

*Franklin v. Madden*,
586 F. App'x 431 (9th Cir. 2014) ............................................ 35

*Garneau v. City of Seattle*,
147 F.3d 802 (9th Cir. 1998) ................................................... 35

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) ................................................... 30

*Hey, Inc. v. Twitter, Inc. (Hey I)*,
No. 22-mc-80034, 2022 WL 1157490
(N.D. Cal. Apr. 19, 2022) ................................................. 35, 36

*Hey, Inc. v. Twitter, Inc. (Hey II)*,
No. 22-mc-80034, 2023 WL 3874022
(N.D. Cal. June 6, 2023) ....................................... 4, 22, 39, 45, 46

*Highfields Cap. Mgmt., L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005) ..................................... 48

*HRC-Hainan Holding Co. v. Hu*,
No. 19-mc-80277, 2020 WL 906719
(N.D. Cal. Feb. 25, 2020) ....................................................... 34

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
No. 19-mc-80215, 2020 WL 820327
(N.D. Cal. Feb. 19, 2020) ....................................................... 33

*In re Anahara*,
No. 22-mc-80063, 2022 WL 783896
(N.D. Cal. Mar. 15, 2022) ......................................... 43, 45, 46

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011) ..................................................... 17

*In re ANZ Commodity Trading Pty Ltd.*,
  No. 17-mc-80070, 2017 WL 3334878
  (N.D. Cal. Aug. 4, 2017).............................................................. 27

*In re Apple Retail UK Ltd.*,
  No. 20-mc-80109, 2020 WL 3833392
  (N.D. Cal. July 8, 2020)......................................................... 24, 30, 36

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998),
  *as amended* (July 23, 1998) ..................................................... 33

*In re Bracha Found.*,
  663 F. App'x 755 (11th Cir. 2016) ............................................ 33

*In re Credit Suisse Virtuoso*,
  No. 21-mc-80308, 2022 WL 1786050
  (N.D. Cal. June 1, 2022) ............................................................ 30

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ...................................................... 24

*In re Eurasian Nat. Res. Corp.*,
  No. 18-mc-80041, 2018 WL 1557167
  (N.D. Cal. Mar. 30, 2018)........................................................... 30

*In re Frontier Co.*,
  No. 19-mc-80184, 2019 WL 3345348
  (N.D. Cal. July 25, 2019).......................................................... 46, 47

*In re Grand Jury Subpoena*,
  875 F.3d 1179 (9th Cir. 2017) ................................................... 17

*In re Gulf Inv. Corp.*,
  No. 19-mc-593, 2020 WL 7043502
  (S.D.N.Y. Nov. 30, 2020) .......................................................... 28

*In re Guy*,
  No. 19-mc-96, 2004 WL 1857580
  (S.D.N.Y. Aug. 19, 2004) .......................................................... 31

*In re Hattori*,
  No. 21-mc-80236, 2021 WL 4804375
  (N.D. Cal. Oct. 14, 2021) ................................................................. 36

*In re Joint Stock Co. Raiffeinsenbank*,
  No. 16-mc-80203, 2016 WL 6474224
  (N.D. Cal. Nov. 2, 2016) ................................................................... 34

*In re JSC Comm. Bank Privatbank*,
  No. 21-mc-80216, 2021 WL 4355334
  (N.D. Cal. Sept. 24, 2021) ................................................................ 31

*In re Legatum*,
  No. 21-mc-80032, 2021 WL 706436
  (N.D. Cal. Feb. 23, 2021) ................................................... 31, 34, 35

*In re Letters Rogatory from the Tokyo Dist.*,
  539 F.2d 1216 (9th Cir. 1976) ......................................................... 25

*In re Letters Rogatory from Tokyo Dist. Prosecutor's Off.*,
  16 F.3d 1016 (9th Cir. 1994) ........................................................... 34

*In re Motorola Mobility, LLC*,
  No. 12-cv-80243, 2012 WL 4936609
  (N.D. Cal. Oct. 17, 2012) ........................................................... 29, 32

*In re Nouvel, LLC*,
  No. 22-mc-4, 2022 WL 3012521 (C.D. Cal. June 8, 2022),
  *adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ....................... 33

*In re Ontario Principals' Council*,
  No. 13-mc-120, 2013 WL 6844545
  (E.D. Cal. Dec. 23, 2013) ................................................................. 46

*In re Pishevar*,
  No. 21-mc-105, 2023 WL 2072454
  (D.D.C. Feb. 17, 2023) ..................................................................... 31

*In re Planning & Dev. of Educ., Inc.*,
  No. 21-mc-80242, 2022 WL 228307
  (N.D. Cal. Jan. 26, 2022) ........................................................... 45, 46

*In re Premises Located at 840 140th Ave. NE*,
  634 F.3d 557 (9th Cir. 2011) .......................................................... 5, 24

*In re Request for Jud. Assistance for the Issuance*
  *of Subpoena Pursuant to 28 U.S.C. §1782*,
  No. 11-cv-80136, 2011 WL 2747302 (N.D. Cal. July 13, 2011) ...................... 29

*In re Silver Lake Grp., LLC Sec. Litig.*,
  108 F.4th 1178 (9th Cir. 2024) ..................................................... 10, 42

*In re Tagami*,
  No. 21-mc-80153, 2021 WL 5322711
  (N.D. Cal. Nov. 16, 2021)............................................................. 45, 46

*In re Takada (Takada I)*,
  No. 22-mc-80221, 2022 WL 4913183
  (N.D. Cal. Oct. 3, 2022)................................................................ 26

*In re Takada (Takada II)*,
  No. 22-mc-80221, 2023 WL 1442844
  (N.D. Cal. Feb. 1, 2023) ........................................... 35, 36, 39, 40, 45, 46

*In re Takagi*,
  No. 22-mc-80240, 2022 WL 7620511
  (N.D. Cal. Oct. 13, 2022)............................................................. 26

*In re Team Co.*,
  No. 22-mc-80183, 2023 WL 1442886
  (N.D. Cal. Feb. 1, 2023) ............................................... 39, 40, 45, 46

*In re Vahabzadeh*,
  No. 20-mc-80116, 2020 WL 7227205
  (N.D. Cal. Dec. 8, 2020) ............................................................. 33

*In re Varian Med. Sys. Int'l AG*,
  No. 16-mc-80048, 2016 WL 1161568
  (N.D. Cal. Mar. 24, 2016)........................................................... 30, 32

*In re Yasuda (Yasuda I)*,
  No. 19-mc-80127, 2019 WL 4933581
  (N.D. Cal. Oct. 7, 2019)............................................................. 45, 47

ix

*In re Yasuda (Yasuda II)*,
No. 19-mc-80156, 2020 WL 759404
(N.D. Cal. Feb. 14, 2020) .................................................................. 27

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) .................... 1, 16, 17, 20, 24, 25, 27, 28, 29, 32, 34, 39, 40

*IPCom GmbH & Co. KG v. Apple Inc.*,
61 F. Supp. 3d 919 (N.D. Cal. 2014) ................................................ 24

*IS Prime Ltd. v. Glassdoor, Inc.*,
No. 21-mc-80178, 2021 WL 5889373
(N.D. Cal. Dec. 13, 2021) .......................................................... 31, 35

*Khrapunov v. Prosyankin*,
931 F.3d 922 (9th Cir. 2019) ........................................................... 25

*London v. Does 1-4*,
279 F. App'x 513 (9th Cir. 2008) ..................................................... 29

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990) ............................................................................. 45

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
39 F.4th 1158 (9th Cir. 2022) .................................................... 10, 42

*Rosenblatt v. Baer*,
383 U.S. 75 (1966) ........................................................................... 45

*Rothe v. Aballi*,
No. 20-12543, 2021 WL 4429814
(11th Cir. Sept. 27, 2021) ................................................................ 33

*Santa Monica Food Not Bombs v. City of Santa Monica*,
450 F.3d 1022 (9th Cir. 2006) ........................................................ 41

*Siemens AG v. W. Digit. Corp.*,
No. 13-cv-1407, 2013 WL 5947973
(C.D. Cal. Nov. 4, 2013) .................................................................. 30

*Takagi v. Twitter, Inc.*,
No. 22-mc-80240, 2023 WL 1442893
(N.D. Cal. Feb. 1, 2023) ................................................. 39, 40, 45, 46

*Talley v. Mazzocca,*
  796 F. App'x 61 (3d Cir. 2019) ........................................................... 41

*Thunder Studios, Inc. v. Kazal,*
  13 F.4th 736 (9th Cir. 2021) ...................................................... 3, 21, 38

*United States v. Gilbert,*
  920 F.2d 878 (11th Cir. 1991) ............................................................ 41

*United States v. Google LLC,*
  690 F. Supp. 3d 1011 (N.D. Cal. 2023) .............................................. 39

*United States v. Meta Platforms, Inc.,*
  No. 23-mc-80249, 2023 WL 84385796
  (N.D. Cal. Dec. 5, 2023) ...................................... 3, 22, 39, 40, 43

*United States v. Sealed 1,*
  235 F.3d 1200 (9th Cir. 2000) ............................................................ 27

*United States v. Sineneng-Smith,*
  910 F.3d 461 (9th Cir. 2018),
   *vacated and remanded on other grounds*, 590 U.S. 371 (2020) ...................... 45

*United States v. Stevens,*
  559 U.S. 460 (2010) ............................................................................ 44

*United States v. Verdugo-Urquidez,*
  494 U.S. 259 (1990) ............................................................................ 38

*United States v. Waggy,*
  936 F.3d 1014 (9th Cir. 2019) ........................................... 3, 19, 22, 44

*Walker v. City of Kansas City,*
  911 F.2d 80 (8th Cir. 1990) ............................................................... 41

*ZF Auto. US, Inc. v. Luxshare, Ltd.,*
  596 U.S. 619 (2022) ............................................................................ 39

*Zuru, Inc. v. Glassdoor, Inc.,*
  614 F. Supp. 3d 697 (N.D. Cal. 2022) ............................. 39, 40, 45, 47

**Statutes**

28 U.S.C. §1291 ........................................................................... 5

28 U.S.C. §1331 ........................................................................... 5

28 U.S.C. §1782 ........................................................... 1, 5, 6, 24, 25

Cal. Civ. Code §45 ................................................................ 12, 48

**Rules**

Fed. R. App. P. 4 ........................................................................ 5

**United Kingdom (England) Cases**

*Bourlakova & Ors v. Bourlakov & Ors*
   [2022] EWHC 1269 (Ch.) .................................................... 9

*Gregory Gliner v. Persons Unknown*,
   No. KB-2024-001583 (Eng.) ...................................... 14, 28

*Nokia Corp. v. Interdigital Tech. Corp.*
   [2004] EWHC 2920 ......................................................... 32

*South Carolina Ins. Co. v. Assurantie N.V.*
   [1987] 1 A.C. 24 (HC) ..................................................... 31

## **INTRODUCTION**

This appeal arises from the district court's denial of Mr. Gliner's Application for Discovery under 28 U.S.C. §1782 in a one-paragraph, paperless order without considering the applicable statutory elements—each of which Mr. Gliner's Application satisfies—or the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)—all of which weigh in favor of granting his Application. That alone was reversible error. But the district court went further and substantially compounded its error.

Rather than undertake the proper analysis, the district court denied Mr. Gliner's Application seeking discovery to identify an anonymous online tortfeasor on the basis that discovery of that person's identity would infringe his "First Amendment interests." The district court so held without any analysis, based solely on its citation of a general right under the First Amendment to speak anonymously. In fact, its order is so generic that it could just as easily have been issued in response to *any* Section 1782 application—thereby effectively neutering the statute. But Section 1782 applications are routinely granted to enable applicants to discover the identity of persons who have anonymously defamed or injured them in aid of foreign litigation. Mr. Gliner's Application presents a textbook case for such discovery—and the First Amendment poses no bar to it.

1

Mr. Gliner, who lives, works, and has an established reputation in the United Kingdom, filed an application under 28 U.S.C. §1782 to discover the identity of the person who pseudonymously published an article on the disinformation website PoliticalLore.com falsely accusing him of crimes. Mr. Gliner intends to sue that person in the United Kingdom but cannot currently do so because he is unable to determine his identity. That person has hidden his identity by using privacy services provided by Dynadot, Inc. to register the PoliticalLore.com domain. Dynadot, however, requires users of its services to provide truthful identifying information to it, so Dynadot will possess documents identifying the anonymous defamer. As such, Mr. Gliner filed a Section 1782 Application to obtain discovery of that information from Dynadot.

As explained below, Mr. Gliner's Application satisfies all statutory requirements and all discretionary factors weigh in favor of granting the Application. (*See infra* Argument Part I.) But the district court erroneously eschewed that analysis. That was error. Instead, it denied Mr. Gliner's Application because, according to it, disclosure of the anonymous defamer's identity is not "justified or appropriate in light of their First Amendment interests." (ER-6.) That, too, was error, for multiple reasons.

***First***, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution,"

including "under the First Amendment." *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020).  And although this Court has held that the First Amendment protects the "right of domestic listeners to receive speech from foreign speakers," it has strictly limited the applicability of that right to "speech ... directed at and received by [domestic] residents." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021).  Thus, courts considering Section 1782 applications have consistently held that "where the record does not indicate that anonymous speakers are entitled to First Amendment protections, U.S. free-speech principles should not factor into a federal district court's evaluation of a §1782 application."  *E.g.*, *United States v. Meta Platforms, Inc.*, No. 23-mc-80249, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023).  Here, not only is there no indication that the anonymous defamer is a U.S. citizen, is located in the United States, or targeted a U.S. audience, but all evidence indicates that he is *not* a U.S. citizen, is *not* located in the United States, and did *not* target a U.S. audience.  Thus, the First Amendment is inapplicable, and the district court erred by holding otherwise. (*See infra* Argument Part II.A.)

**Second**, it is axiomatic that "[t]he freedom of speech ... does not embrace ... defamation."  *E.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002) (collecting cases); *accord United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019).  Thus, courts considering Section 1782 applications have consistently held

that the First Amendment does not shield the identity of a publisher of defamatory statements. *E.g.*, *Hey, Inc. v. Twitter, Inc. (Hey II)*, No. 22-mc-80034, 2023 WL 3874022, at *4-5 (N.D. Cal. June 6, 2023). And, in so holding, these courts have largely refused to condition the First Amendment's inapplicability on any assessment of the merits of the underlying foreign claim, explaining that they are "'reluctant to endorse a standard for exercising discretion [under section 1782] that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that seems ill-suited to an application for discovery in aid of a foreign proceeding that is within reasonable contemplation but not yet filed.'" *Id.* at *5. Here, Mr. Gliner has not merely alleged that the PoliticalLore.com article providing the basis for his underlying English defamation claim is false and defamatory but has submitted actual evidence satisfying each element of that claim. Thus, under any standard, the First Amendment cannot apply to shield the identity of the anonymous publisher of that article, and the district court erred in holding otherwise. (*See infra* Argument Part II.B.)

The judgment below should be reversed, and this Court should grant Mr. Gliner's Section 1782 Application or remand with instructions that the district court do so.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. §§1331 & 1782.  The district court entered a paperless final order denying Mr. Gliner's Application on May 28, 2024 (ER-6), and it denied his Rule 59(e) Motion to Alter or Amend the Judgment on June 26, 2024 (ER-5).  Mr. Gliner timely filed a Notice of Appeal on July 22, 2024 (ER-211–15), fewer than 30 days after the district court's final judgment.  Fed. R. App. P. 4(a)(1)(A).  This Court has jurisdiction under 28 U.S.C. §1291.  *See In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 565-66 (9th Cir.2011).

## STATEMENT OF THE ISSUE

Mr. Gliner, a U.K. resident, filed an application under 28 U.S.C. §1782 to discover the identity of the person(s) who pseudonymously published a defamatory article falsely accusing him of crimes.  The district court denied his application—not because the applicable statutory requirements and discretionary factors were unsatisfied—but because, according to it, disclosure of the publisher's identity would infringe his First Amendment interests.  But there is no indication that the publisher is a U.S. citizen or located in the United States (or targeted a U.S. audience) so as to have First Amendment rights, *e.g.*, *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433-36 (2020), and defamatory speech is not

protected by the First Amendment, *e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S.

234, 245-46 (2002).  Did the district court err?

## <u>STATUTORY ADDENDUM</u>

**28 U.S.C. §1782:  Assistance to Foreign and International Tribunals and to Litigants Before Such Tribunal**

(a)    The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

    A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

(b)    This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him.

## STATEMENT OF THE CASE

**A.     Statement of Facts.**

This case arises from Mr. Gliner's Application under 28 U.S.C. §1782 to discover the identity of the person(s) who pseudonymously published a defamatory article falsely accusing him of crimes so that he can sue that person for defamation in the United Kingdom where he lives, works, and has an established reputation. This appeal arises from the district court's erroneous denial of Mr. Gliner's Application based on First Amendment concerns not applicable under the facts here—in two paperless orders that suggest the court ignored or improperly discounted the declarations and caselaw supporting Mr. Gliner's Application.

### 1.     Gregory Gliner Earns a Reputation as a Successful and Ethical Businessman in the United Kingdom.

Mr. Gliner, a dual U.K. and U.S. citizen, has worked tirelessly for years to become—and earn a reputation as—a successful and ethical businessman and entrepreneur.  (ER-66–67, ¶¶2, 4-8.)  After receiving Bachelor of Science and Arts degrees in finance and history in the mid-2000s, Mr. Gliner earned Master of Business Administration (MBA) degrees from the London Business School and the Columbia Business School.  (ER-66, ¶3.)  He then entered the business and investment fields and worked at various large hedge funds and consulting firms in the United States and United Kingdom.  (ER-66, ¶4.)

7

In 2015, Mr. Gliner left the United States and moved to the United Kingdom, permanently settling in London, England in 2016, where he has since lived with his wife and children.  (ER-66, ¶¶2, 5.)  Also in 2015, Mr. Gliner founded Ironwall Capital Management LLP, a London-based global macro fund, and he has served as its Chief Investment Officer since that time.  (ER-66, ¶5.)  Mr. Gliner (together with his wife) also serves as a director of Ironwall Capital Services Ltd., a London-based affiliate of Ironwall Capital Management.  (*Id.*)  In addition to his work at Ironwall Capital and in the investment industry, Mr. Gliner is and has been actively involved in philanthropic endeavors in the United Kingdom, including serving for nearly seven years as a director of a charitable organization dedicated to preventing child abuse in the United Kingdom and supporting and treating victims of child abuse in the United Kingdom.  (ER-66–67, ¶6.)  Mr. Gliner has also authored a book, "Global Macro Trading: Profiting in a New World Economy," the proceeds of which he donated to charity.  (ER-67, ¶7.)

Mr. Gliner's efforts have been successful, and he has earned a reputation in the United Kingdom (in England) as a successful, ethical, and upstanding businessman and investment advisor.  (ER-67, ¶8.)

### 2.  Mr. Gliner's Father-in-Law Passes Away and Litigation Over the Family Wealth—and a Smear Campaign Against Mr. Gliner's Family—Follow.

Since 2015, Mr. Gliner has been married to Veronica Bourlakova.  (ER-66–67, ¶¶2, 9.)  Ms. Bourlakova is the daughter of Oleg and Loudmila Bourlakov,[1] who rose from humble beginnings in Soviet Ukraine and Russia to found and grow multi-billion-dollar businesses in a variety of industries across the globe.  (ER-67, ¶9.)  In 2018, following the revelation that Mr. Bourlakov had taken a mistress, Mrs. Bourlakova initiated divorce proceedings.  (*Id.*)   In 2021, while those proceedings were pending, Mr. Bourlakov passed away from COVID-19.  (*Id.*)

Litigation over the family's wealth—including substantial litigation in the United Kingdom[2]—followed.  (ER-67, ¶10.)  At the same time, parties opposed to Loudmila's and Veronica's claims to their family's wealth (and the claims of Loudmila's other daughter, Veronica's sister Elena) began a campaign to publicly disparage their side of the family in an effort to coerce them to abandon or settle their claims.  (*Id.*)   As part of that campaign, numerous false accusations of criminality against the family have been anonymously published online in the form

---

[1] Bourlakov (masculine version) and Bourlakova (feminine version) are sometimes transliterated to English as "Burlakov"/"Burlakova."   Similarly, Loudmila is sometimes transliterated to English as "Ludmila" or "Lydmila."  (ER-68, ¶11 n.4.)

[2] *E.g.*, *Bourlakova & Ors v. Bourlakov & Ors* [2022] EWHC 1269 (Ch.).

of supposed "news" articles, many of which were published on Russian misinformation websites. (*Id.*)

> **3.    Mr. Gliner Is Falsely Accused of Criminality by an Anonymous Person or Persons in an Article on the Disinformation Website PoliticalLore.com.**

Mr. Gliner discovered that he, too, has been targeted with false accusations of criminality. (ER-67–69, ¶¶11-13.) Specifically, Mr. Gliner learned of an article targeting him on the website PoliticalLore.com—a website that purports to be (but is not) a legitimate news site. (ER-66–69, ¶11.) PoliticalLore.com bears all the hallmarks of a disinformation website: Almost all of its articles are Russian-centric, exhibit poor English, and contain over-the-top anti-Western content and rhetoric; it is completely devoid of advertising; its sample page is in Russian; it links to Russian-language social media in its source code; and although it contains a link for companies that wish to advertise with it, the link leads to a dead-end, thus strongly suggesting that the website is independently funded and/or relies on paid-for content. (ER-35 n.4.)[3]

The PoliticalLore.com article targeting Mr. Gliner is headlined "Inheritance of Billionaire Oleg Burlakov – A Battle on an Epic Scale" (the "Article") and lists

---

[3] *See* https://politicallore.com; https://politicallore.com/sample-page. The Court may take judicial notice of the contents of the website and its source code. *See, e.g.*, *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1186 n.4 (9th Cir. 2024); *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1176 n.6 (9th Cir. 2022).

its author as "Edward Swensson."  (ER-67–68, ¶11.)[4]  The Article purports to describe a dispute relating to the distribution of Mr. Bourlakov's estate but in fact falsely describes that dispute and levels numerous false accusations against the Bourlakovas and Mr. Gliner.  (ER-67–69, ¶¶11-13.)  Among other things, the Article falsely accuses Mr. Gliner of engaging in criminal conduct such as embezzlement and theft:

- "Gliner and the Bourlakovas remembered the good old 90ies in Russia where assets could be grabbed swiftly" and "started to engage in classic corporate raiding tactics to gain control over entities that hold assets they had not yet placed their hands on";

- Gliner "us[ed]" "[a] Latvian notary ... in an attempt to obtain control over an enormous yacht built by Mr Bourlakov and to get a swift inheritance certificate" despite having no right or title to that yacht; and

- "Gliner's plan was simple: Ludmila, who had authority over Mr Bourlakov's accounts, withdraws assets which then get transferred to accounts outside Mr Bourlakova's control.  From thereon, funds would be placed in a trust and other vehicles that would ensure an [sic] juicy income stream for Veronica, Elena, Ludmila and Gliner without any need to exert oneself."

(ER-68, ¶12.)

Those statements and accusations convey categorically and demonstrably false (purported) facts.  (ER-68–69, ¶13.)  Mr. Gliner has dedicated his career to being an ethical and law-abiding businessman and has *never* engaged in any acts of

---

[4] Edward Swensson, *Inheritance of Billionaire Oleg Burlakov – A Battle on an Epic Scale*, Political Lore (June 2, 2023), https://politicallore.com/inheritance-of-billionaire-oleg-burlakov-a-battle-on-an-epic-scale/36294.

11

embezzlement, theft, fraud, or criminality of any kind.  (*Id.*)  Mr. Gliner has *not* "grabbed" "assets" that do not belong to him; he has *not* "engage[d] in classic corporate raiding tactics" to unlawfully obtain any corporate entity's or any person's assets; he has *not* "us[ed]" "[a] Latvian notary" to attempt to improperly take or assert dominion over a "yacht built by Mr Bourlakov" or thereby sought to "get a swift inheritance certificate"; and he was *never* part of any plan to "withdraw[] assets" from "Mr Bourlakov's accounts" to obtain income for his wife (Veronica), his sister-in-law (Elena), his mother-in-law (Loudmila), himself, or any other person. (*Id.*)

The Article's statements and accusations plainly accuse Mr. Gliner of criminal actions and damage him and his reputation as an honest, upstanding, and ethical person and businessman.  (ER-67–69, ¶¶8, 12-14.)  As such, they are defamatory under English law (and U.S. law).  (ER-114–18, ¶¶3-14).[5]

### 4. Mr. Gliner Intends to Sue the Anonymous Defamer(s) in the United Kingdom But Has Been Unable to Determine Their Identities.

Because the defamatory statements and accusations in the Article have caused—and are continuing to cause—substantial harm to Mr. Gliner and his reputation, Mr. Gliner intends to sue the person(s) responsible for the Article's

---

[5] *See also* Cal. Civ. Code §45; *DeMartini v. DeMartini*, 833 F. App'x 128, 132 (9th Cir. 2020) ("Perhaps the clearest example of defamation per se is an accusation of a crime." (brackets and citation omitted)).

publication—that is, the person(s) who operate PoliticalLore.com and/or authored the Article.  (ER-68–69, ¶¶13-14; ER-114, ¶3; ER-117–18, ¶12.)  And Mr. Gliner has retained English counsel—the law firm Mishcon de Reya LLP and litigators Alexandra Whiston-Dew and Harry Eccles-Williams—for that purpose.  (ER-69, ¶17; ER-114, ¶¶2-3.)

However, Mr. Gliner and his English counsel are unable to sue that person or persons because they have been unable to determine their identity or identities despite making diligent efforts to do so.  (ER-69, ¶¶15-17; ER-114–15, ¶¶3-4; ER-72–73, ¶¶3, 8.)  PoliticalLore.com does not provide information identifying the person(s) who operate it (ER-72, ¶4), and they have taken affirmative steps to hide their identity or identities by using privacy services provided by Dynadot, Inc. ("Dynadot") to register the PoliticalLore.com domain (ER-72, ¶5).  Thus, Mr. Gliner and his counsel, despite their best efforts, have been unable to identify them. (ER-69, ¶16; ER-73, ¶8.)

Similarly, neither PoliticalLore.com nor the Article provides any information from which the Article's author—identified only as "Edward Swensson"—can be identified.  (ER-72, ¶¶4-5.)  Mr. Gliner's counsel conducted detailed research to attempt to determine whether the "Edward Swensson" listed as the author of the Article is a real person who lives in the United States, and those efforts identified only two people by that name, neither of whom has any apparent connections to

PoliticalLore.com.  (ER-73, ¶7.)   As such, Mr. Gliner and his counsel have concluded that "Edward Swensson" is an alias/pseudonym and/or a person located outside the United States.  (*Id.*)

Thus, Mr. Gliner has only been able to file an English claim against "Persons Unknown";[6] he cannot assert his claim against the anonymous defamer(s) until he obtains discovery identifying that person or persons.

### 5. Mr. Gliner's Application Seeks Discovery of Evidence Sufficient to Identify the Anonymous Defamer(s)—Evidence Necessary for Mr. Gliner to Sue Them, Which Dynadot Almost Certainly Possesses.

Although Mr. Gliner and his counsel have been unable to determine the identities of the person(s) who published the defamatory Article, Dynadot—whose services the person(s) responsible for PoliticalLore.com used to register that website—almost certainly has information that will identify them.  (ER-73, ¶9.) Persons who use Dynadot's services to register a website are required to "provide to Dynadot accurate and reliable contact details and correct and update them within seven (7) days of any change during the term of a domain name's registration, including" the person's "full name"; "postal address"; "e-mail address"; "voice telephone number"; "fax number, if available"; for organizations, associations, or corporations, "the name of an authorized person for contact purposes"; "the names

---

[6] *See Gregory Gliner v. Persons Unknown*, No. KB-2024-001583 (Eng.).

of the primary nameserver and secondary nameserver(s) for the associated domain name"; "the name, postal address, e-mail address, voice telephone number, and (if available) fax number of the technical contact for the associated domain name"; and "the name, postal address, e-mail address, voice telephone number, and (if available) fax number of the administrative contact for the associated domain name." (ER-73, ¶9; ER-78–79, §2.1.) The failure to do so is grounds for canceling the domain registration. (ER-78–79, §2.2)[7]

Accordingly, Mr. Gliner filed an Application under 28 U.S.C. §1782 to obtain from Dynadot evidence sufficient to identify the publisher(s) of the defamatory PoliticalLore.com Article. (ER-23–26.) To Mr. Gliner's and his counsel's knowledge, Dynadot is the only available source for this information.

---

[7] Dynadot's Service Agreement, to which persons who use Dynadot's services agree as a condition and term of use, provides that if a person using Dynadot's services "directly or indirectly, willfully provide inaccurate or unreliable information to Dynadot, willfully fail to update information provided to Dynadot within seven (7) days of any change, or fail to respond for over fifteen (15) days to inquiries by Dynadot concerning the accuracy of contact details associated with [the person's] domain name, then such action or inaction, as appropriate, shall constitute a material breach of this Agreement and become a basis for suspension and/or cancellation of the associated domain name registration." (ER-78–79, §2.2.)

### B.    Procedural History.

#### 1.    Mr. Gliner Files His Application Under 28 U.S.C. §1782, Supported by Three Declarations and a Memorandum of Law.

On April 11, 2024, Mr. Gliner filed his *Ex Parte* Application for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery For Use in Foreign Proceedings. (ER-23–210.)[8]    Specifically, Mr. Gliner's Application seeks the following limited discovery from Dynadot:

- Documents and communications sufficient to identify the person(s) who own and/or registered and/or engaged the services of Dynadot with regard to PoliticalLore.com;

- Documents and communications sufficient to identify the person(s) identified as "Edward Swensson" in the Article; and

- A short deposition to authenticate and explain the documents produced.

(ER-55, ER-61.)

Mr. Gliner supported his Application with three declarations—from himself, his English counsel, and his U.S. counsel—setting forth, under penalty of perjury, the factual bases for his Application, and a memorandum of law explaining how, based on those facts, all three 28 U.S.C. §1782 statutory requirements are satisfied and all discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting his Application.

---

[8] Applications under 28 U.S.C. §1782 are typically brought *ex parte*.  (*See infra* Argument Part I.A and cases cited therein.)

16

**2.  The District Court Denies Mr. Gliner's Application in a Paperless Order.**

On May 28, 2024, the district court entered a paperless, text-only order denying Mr. Gliner's Application.  (ER-6.)  The order did not address any of the statutory elements or discretionary factors applicable to applications under 28 U.S.C. §1782.  Instead, the court cited a general right under the First Amendment to speak anonymously and held that the "application does not address why disclosure of the website operator and author's identities would be justified or appropriate in light of the First Amendment interests, and is consequently denied."  (*Id.*)  The entirety of the court's paperless order is as follows:

> Docket Text:  ORDER.  Gregory Gliner has applied ex parte for an order permitting Gliner to obtain discovery from nonparty Dynadot, Inc. (Dynadot) in aid of foreign proceedings in the United Kingdom, pursuant to 28 U.S.C. §1782.  The Court retains wide discretion to grant discovery under Section 1782, *Intel Corp. v. Advanced Micro Devices, Inc.*, 642 *[sic]* U.S. 241, 260-61 (2004), and the application is denied. Gliner seeks to issue subpoenas to Dynadot to uncover the identities of the anonymous operators of the website PoliticalLore.com, and the anonymous author of an allegedly defamatory article about Gliner published on the website.  "An author's decision to remain anonymous is an aspect of the freedom of speech protected by the First Amendment."  *In re Grand Jury Subpoena*, No. 16-03-217, 875 F.3d 1179, 1185 (9th Cir. 2017) (quoting *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)) (cleaned up).  Gliner's application does not address why disclosure of the website operator and author's identities would be justified or appropriate in light of their First Amendment interests, and is consequently denied.

(*Id.*)

17

**3.      Mr. Gliner Moves to Alter or Amend Under Rule 59(e) to Correct the District Court's Manifest Errors of Law, But the Court Denies His Motion Without Explanation.**

In response to the district court's order raising that First Amendment issue for the first time—and denying Mr. Gliner's Application on that basis without considering the applicable 28 U.S.C. §1782 statutory elements or discretionary factors—Mr. Gliner moved under Rule 59(e) to alter or amend the judgment.  In his motion, Mr. Gliner explained that the court manifestly erred in denying his Application on the basis of the anonymous defamer's purported First Amendment interests for two separate and independent reasons.

*First*, Mr. Gliner explained, citing the declarations supporting his application, that there is no indication that the anonymous defamer is a U.S. citizen or has any connection to the United States—in fact, the available evidence indicates that the person is *not* a U.S. citizen and is *not* located in the United States (ER-73, ¶¶7-8)—and "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution."  *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020).  (ER-12–15.)

*Second*, Mr. Gliner reiterated that he pled and provided evidence that the anonymous publisher's accusations against him are false and defamatory, and explained that, also under settled U.S. Supreme Court (and Ninth Circuit) precedent,

"[t]he freedom of speech ... does not embrace ... defamation." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002); *accord United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019). (ER-12, ER-16–17.)

As Mr. Gliner further explained, courts in the Ninth Circuit have repeatedly recognized and applied that settled precedent in evaluating applications under 28 U.S.C. §1782 (ER-13–17; *see also infra* Argument Part II), and the district court erred by disregarding it and denying his Application. Indeed, the district court's error was especially egregious because it was based on *speculative* First Amendment interests even though Dynadot and/or the anonymous defamers (through counsel while maintaining their anonymity) would have the opportunity to raise any applicable First Amendment defenses in a motion to quash any subpoena issued pursuant to the Application.

### 4. The District Court Denies Mr. Gliner's Rule 59(e) Motion Without Explanation in a Paperless Order.

On June 26, 2024, the district court denied Mr. Gliner's Rule 59(e) motion in a paperless, text-only order without any explanation of its reasons for doing so. (ER-5.) The entirety of the court's order is as follows:

> Docket Text: ORDER. Gliner's request for reconsideration, Dkt. No. 12, is denied for lack of good cause.

19

(*Id.*)  Because the district court did not provide any explanation of its reasoning for denying Mr. Gliner's Motion, he (and this Court) have no way of knowing if it even considered the settled precedent detailed in his Motion.  This appeal follows.

## SUMMARY OF ARGUMENT

The district court reversibly erred in multiple ways by denying Mr. Gliner's 28 U.S.C. §1782 application for discovery.

1.    The district court erred by disregarding the proper legal framework for evaluating Section 1782 applications.  Courts considering Section 1782 applications consider three statutory elements and four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  Here, all three statutory elements are satisfied:  (1) Dynadot, from whom Mr. Gliner seeks discovery, is located in the District in which he filed his Application; (2) Mr. Gliner seeks discovery for use in a reasonably contemplated proceeding before an foreign (English) tribunal; and (3) Mr. Gliner will be a party to that foreign litigation.  Likewise, all four discretionary factors weigh strongly in favor of granting Mr. Gliner's Application:  (1) Dynadot will not be a party to the English proceeding; (2) the English Court will be receptive to receiving evidence obtained under Section 1782; (3) the request for discovery does not attempt to circumvent any proof-gathering restrictions or other policies; and (4) the request is narrowly-tailored

20

so as not to be unduly burdensome.  Accordingly, the district court erred by denying Mr. Gliner's Application.  (*See infra* Argument Part I.)

    **2.**    The district court compounded its error by denying Mr. Gliner's Application on the basis that disclosure of the anonymous defamer's identity would infringe his "First Amendment interests."  It would not, for two separate and independent reasons.

    **2A.**    The First Amendment does not apply to the anonymous defamer because there is no indication that he is a U.S. citizen, is located in the United States, or targeted a U.S. audience.  Rather, all evidence indicates that he is *not* a U.S. citizen, is *not* located in the United States, and did *not* target a U.S. audience.  "[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including under "the First Amendment."  *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020).  And although this Court has held that the First Amendment protects the "right of domestic listeners to receive speech from foreign speakers," it has strictly limited the applicability of that right to "speech ... directed at and received by [domestic] residents."  *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021).  Thus, courts considering Section 1782 applications have consistently held that "where the record does not indicate that anonymous speakers are entitled to First Amendment protections, U.S. free-speech principles should not

factor into a federal district court's evaluation of a §1782 application." *E.g.*, *United States v. Meta Platforms, Inc.*, No. 23-mc-80249, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023). So, too, here. The district court erred by holding otherwise. (*See infra* Argument Part II.A.)

**2B.** The First Amendment does not apply to the anonymous defamer because "[t]he freedom of speech ... does not embrace ... defamation." *E.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002) (collecting cases); *accord United States v. Waggy*, 936 F.3d 1014, 1017 (9th Cir. 2019). Under that settled law, courts considering Section 1782 applications have consistently held that the First Amendment does not shield the identity of a publisher of defamatory statements. *E.g.*, *Hey, Inc. v. Twitter, Inc. (Hey II)*, No. 22-mc-80034, 2023 WL 3874022, at *4-5 (N.D. Cal. June 6, 2023). And while most courts so hold without assessing the merits of the underlying foreign claim, explaining that doing so would be inconsistent with *Intel*, Mr. Gliner provided actual evidence supporting each element of the English defamation claim underlying his Application such that, under any inquiry, the First Amendment does not apply to shield the anonymous defamer's identity. The district court erred by holding otherwise. (*See infra* Argument Part II.B.)

The judgment below should be reversed, and this Court should grant Mr. Gliner's Section 1782 Application or remand with instructions that the district court do so.

## STANDARD OF REVIEW

Questions of law and "[q]uestions of statutory interpretation are subject to de novo review while the district court's application of [28 U.S.C.] Section 1782 to the facts is reviewed for abuse of discretion." *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 666 (9th Cir. 2002), *aff'd sub nom. Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

## ARGUMENT

**I.    The District Court Reversibly Erred by Denying Mr. Gliner's 28 U.S.C. §1782 Application Because It Satisfies All Statutory Requirements and All Discretionary Factors Weigh in Favor of Granting It.**

The district court reversibly erred by denying Mr. Gliner's Section 1782 Application without considering the applicable statutory elements and discretionary factors.  As explained below, Mr. Gliner's Application easily satisfies every statutory requirement and all discretionary factors weigh in favor of granting his Application.

**A.    28 U.S.C. §1782 Broadly Allows Discovery in Aid of Foreign Proceedings.**

28 U.S.C. §1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in

23

foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). And over time Congress has repeatedly and "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." *Id.* at 247-48; *In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 563 (9th Cir. 2011) (emphasizing the "broad assistance to foreign nations and tribunals" that Section 1782 furnishes); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 667, 669 (9th Cir. 2002) ("Section 1782 is broad and inclusive" and "allow[s] ... liberal discovery[.]"), *aff'd sub nom. Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) (noting "Congress's 'aim that the statute be interpreted broadly'").

Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal.... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced[.]

28 U.S.C. §1782(a). Thus, under Section 1782, a court may grant an *ex parte*[9] application for discovery when three statutory requirements are satisfied: **(1)** the

---

[9] "Applications brought pursuant to 28 U.S.C. §1782 typically are considered on an *ex parte* basis, since 'parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.'" *In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020) (quoting *IPCom GmbH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014)); *see also, e.g., In re Letters*

person from whom discovery is sought resides or is found in the district of the district court where the application is made; **(2)** the discovery is for use in a proceeding before a foreign tribunal; and **(3)** the application is made by an interested person. *Id.*; *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019).

When all three statutory factors are satisfied, courts consider four discretionary factors identified by the Supreme Court in *Intel*: **(1)** whether the person from whom discovery is sought will be a participant in the foreign proceeding; **(2)** the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance; **(3)** whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and **(4)** whether the request is unduly burdensome. *Intel*, 542 U.S. at 264-65; *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (citing *Intel*, 542 U.S. at 264-65). (Persons from or about whom discovery is sought in retain the ability to move to quash any subpoena issued pursuant to a granted application.)

---

*Rogatory from the Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("Letters Rogatory are customarily received and appropriate action taken with respect thereto ex parte" because "[t]he witnesses can ... raise[] objections and exercise[] their due process rights by motions to quash the subpoenas.").

As explained below, Mr. Gliner's Application easily satisfies all three statutory Section 1782 requirements and all four discretionary factors weigh strongly in favor of allowing discovery.

### B. Mr. Gliner's Application Easily Satisfies Section 1782's Statutory Requirements.

Mr. Gliner's Application for a narrow subpoena to Dynadot easily satisfies Section 1782's three statutory requirements.

*First*, Dynadot "resides or is found" in the Northern District of California—where Mr. Gliner filed his Application—because it is headquartered and has its principal place of business in San Mateo, California. (ER-73–74, ¶¶10-12; ER-109; ER-112.) Under Section 1782, "[a] business entity is 'found' in the judicial district where it has its principal place of business." *E.g.*, *In re Takagi*, No. 22-mc-80240, 2022 WL 7620511, at *3 (N.D. Cal. Oct. 13, 2022); *In re Takada (Takada I)*, No. 22-mc-80221, 2022 WL 4913183, at *3 (N.D. Cal. Oct. 3, 2022) (same).[10]

---

[10] Indeed, Dynadot's Terms of Use, to which persons who use Dynadot's services agree, provide that "[a]ll legal proceedings arising out of or in connection with this Agreement, with anyone's use of this website or App or with anyone's use of [Dynadot's] Services shall be brought solely either in the United States District Court for the Northern District of California or in the Superior Court of California, San Mateo County. You expressly submit to the exclusive jurisdiction of said courts … Each party waives any objection (on the grounds of lack of jurisdiction, forum non conveniens or otherwise) to the exercise of such jurisdiction over it by any such courts." (ER-73, ¶ 9; ER-78, §3.6.)

***Second***, Mr. Gliner's Application seeks discovery for use in a reasonably contemplated proceeding before a foreign tribunal—namely, the Courts of England and Wales in the United Kingdom. As the Supreme Court has explained, the requisite foreign proceeding "need not be 'pending' or 'imminent'"; rather, "the 'proceeding' for which discovery is sought" only need be "in reasonable contemplation." *Intel*, 542 U.S. at 247; *accord Advanced Micro*, 292 F.3d at 667; *United States v. Sealed 1*, 235 F.3d 1200, 1205 (9th Cir. 2000).[11] In fact, this statutory requirement is satisfied even where (unlike here) the contemplated foreign litigation is only at the "the investigative stage." *Intel*, 542 U.S. at 247; *Yasuda II*, 2020 WL 759404, at *4. Here, Mr. Gliner's English lawsuit is well within "reasonable contemplation": as set forth in Mr. Gliner's and his counsel's declarations, Mr. Gliner intends to sue the publisher of the defamatory PoliticalLore.com article as soon as discovery produced pursuant to his Application identifies him, and, demonstrating the promptness with which Mr. Gliner intends to file his English lawsuit, he has already retained English counsel for this purpose. (ER-69, ¶¶17-18; ER-114–15, ¶¶3-4.) In fact, Mr. Gliner has filed an English claim for defamation against "Persons Unknown" that he intends to amend to add the

---

[11] *See also, e.g.*, *In re Yasuda (Yasuda II)*, No. 19-mc-80156, 2020 WL 759404, at *4 (N.D. Cal. Feb. 14, 2020); *In re ANZ Commodity Trading Pty Ltd.*, No. 17-mc-80070, 2017 WL 3334878, at *3 (N.D. Cal. Aug. 4, 2017).

actual publisher of the defamatory article when he is identified through the discovery sought in his Application.[12]   That is more than sufficient to demonstrate that the proceeding is "in reasonable contemplation." *In re Gulf Inv. Corp.*, No. 19-mc-593, 2020 WL 7043502, at *3 (S.D.N.Y. Nov. 30, 2020) ("Sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement.").

*Third*, Mr. Gliner, as the plaintiff in his English lawsuit, qualifies as an "interested party" entitled to seek discovery under Section 1782.   There is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke §1782." *Intel*, 542 U.S. at 256; *see also Akebia*, 793 F.3d at 1110 (quoting *Intel*, 542 U.S. at 256-57).

### C.   The Discretionary *Intel* Factors All Weigh in Favor of Granting Mr. Gliner's Application.

All four discretionary *Intel* factors likewise weigh heavily in favor of granting Mr. Gliner's Application.

### 1.   The First *Intel* Factor Favors Granting the Application: Dynadot Will Not Be a Party to the Foreign (English) Proceeding and Therefore That Court Cannot Compel Dynadot to Provide Discovery.

The first *Intel* factor weighs heavily in favor of granting discovery because Dynadot is not and will not be a party to Mr. Gliner's English lawsuit (and it has no

---

[12] *See Gregory Gliner v. Persons Unknown*, No. KB-2024-001583 (Eng.).

presence in the United Kingdom).  (ER-69, ¶17; ER-74, ¶13.).  As the Supreme Court has explained, "nonparticipants in [a] foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid."  *Intel*, 542 U.S. at 264; *see also, e.g.*, *London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming grant of application; explaining that "evidence sought may be unattainable in the [foreign] court while it is within the district court's jurisdiction and accessible in the United States").[13]

Because Dynadot, a U.S. corporation without a U.K. presence, will be a nonparticipant in Mr. Gliner's English lawsuit, the English Court will be unable to compel it to produce discovery, and this Application is the only means through which Mr. Gliner can discover from Dynadot evidence necessary for his English lawsuit—namely, documents identifying or leading to the identities of the person(s) who published the defamatory Article.  This factor thus weighs heavily in favor of granting Mr. Gliner's Application.

---

[13] *See also, e.g.*, *In re Motorola Mobility, LLC*, No. 12-cv-80243, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012); *In re Request for Jud. Assistance for the Issuance of Subpoena Pursuant to 28 U.S.C. §1782*, No. 11-cv-80136, 2011 WL 2747302, at *5 (N.D. Cal. July 13, 2011).

**2.    The Second *Intel* Factor Favors Granting the Application: The English Court Will Accept, Not Reject, Assistance from U.S. Courts Under Section 1782.**

The second *Intel* factor—the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government to U.S. federal court judicial assistance—weighs heavily in favor of discovery where, as here, there is no "'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of Section 1782.'" *Siemens AG v. W. Digital Corp.*, No. 13-cv-1407, 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013); *accord In re Apple Retail UK Ltd.*, No. 20-mc-80109, 2020 WL 3833392, at *2 (N.D. Cal. July 8, 2020). In evaluating this factor, courts must "err on the side of permitting discovery." *In re Eurasian Nat. Res. Corp.*, No. 18-mc-80041, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018); *accord In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (factor favors discovery when "'there is nothing to suggest that the [foreign] court would be affronted by [plaintiff's] recourse to U.S. discovery'" (quoting *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011))).

Notably, "no [] aspect of the nature of the English court or the character of the anticipated English proceedings weighs against [a Section 1782] application," *In re Credit Suisse Virtuoso*, No. 21-mc-80308, 2022 WL 1786050, at *10-11 (N.D. Cal. June 1, 2022), and district courts routinely grant requests for discovery under

30

Section 1782 for use in litigation in the United Kingdom. *See, e.g.*, *IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, at \*3-4 (N.D. Cal. Dec. 13, 2021); *In re JSC Comm. Bank Privatbank*, No. 21-mc-80216, 2021 WL 4355334, at \*1-4 (N.D. Cal. Sept. 24, 2021); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, at \*3 (N.D. Cal. Feb. 23, 2021).[14] Moreover, English attorney Ms. Whiston-Dew has explained in her Declaration that, based on her experience, U.K. courts—including the Courts of England and Wales—are receptive to receiving evidence obtained from U.S. courts under 28 U.S.C. §1782 and would be so receptive in this matter. (ER-115–17, ¶¶5-12.) Indeed, the House of Lords in *South Carolina Insurance Co. v. Assurantie N.V.* [1987] 1 A.C. 24, 42 (HC)—the "leading authority" on the issue—has expressly held that a party does nothing wrong "by seeking to exercise a right potentially available to them under the Federal law of the United States [under 28 U.S.C. §1782]," and such applications do not "in any way depart[] from, or interfere[] with, the procedure of the English court." (ER-115 ¶7; ER-141.) Other English Courts are in accord, with the High Court of Justice, for

---

[14] *See also, e.g.*, *In re Pishevar*, No. 21-mc-105, 2023 WL 2072454, at \*3 (D.D.C. Feb. 17, 2023) ("The nature of the English court system … raise[s] no concerns[.]"); *Eurasian Nat. Res. Corp. Ltd. v. Simpson*, No. 19-mc-699, 2020 WL 8456039, at \*1 (D. Md. Jan. 6, 2020) ("[T]here is no suggestion that the court presiding over the foreign proceedings [in the U.K.] would not be receptive to the assistance."); *In re Guy*, No. 19-mc-96, 2004 WL 1857580, at \*2-3 (S.D.N.Y. Aug. 19, 2004) (There is no "reason to suppose that the government of the United Kingdom would disfavor granting Applicants relief under §1782.").

example, explaining in *Nokia Corp. v. Interdigital Technology Corp.* [2004] EWHC 2920, ¶23, that "[i]t is legitimate for the requesting party to use the [Section 1782] request to ascertain facts and obtain documents of which the requesting party is unaware, but which may be in the future deployed in the English proceedings." (ER-115–17; ER-145–207.)

The second *Intel* factor thus weighs heavily in favor of granting Mr. Gliner's Application because not only is there no "authoritative proof"—or any proof whatsoever—that the English Court would reject the evidence sought, but there is affirmative evidence that it would accept it.

### 3. The Third *Intel* Factor Favors Granting the Application: The Application Does Not Attempt to Circumvent Proof-Gathering Restrictions or Policies.

The third *Intel* factor weighs heavily in favor of discovery where, as here, there is no evidence that the Application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65; *Motorola Mobility*, 2012 WL 4936609 at *2; *Varian Med.*, 2016 WL 1161568 at *5. Indeed, absent a bad-faith attempt to undermine such restrictions or policies, this factor weighs in favor of allowing discovery even where (unlike here) the documents sought would not be discoverable in the foreign jurisdiction. *Intel*, 542 U.S. at 260-63 (explaining that Section 1782 does not impose a foreign-discoverability requirement).

Moreover, as courts considering Section 1782 applications have repeatedly explained, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In re Nouvel, LLC*, No. 22-mc-4, 2022 WL 3012521, at \*4 (C.D. Cal. June 8, 2022), *adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022); *In re Vahabzadeh*, No. 20-mc-80116, 2020 WL 7227205, at \*5 (N.D. Cal. Dec. 8, 2020).  Indeed, courts have "'refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court.'" *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215, 2020 WL 820327, at \*6 (N.D. Cal. Feb. 19, 2020) (citation omitted).[15]

Here, there is no indication that any policy of the United Kingdom—or the United States—would weigh against the limited discovery Mr. Gliner seeks, and Ms. Whiston-Dew affirmatively explained in her declaration that she is aware of no

---

[15] *See also, e.g.*, *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 155 (2d Cir. 2022) ("[A] district court abuse[s] its discretion by denying an application on the basis that the applicant had not exhausted its opportunities for discovery before the foreign tribunal" because such a requirement "has no basis in the text or purpose of §1782."); *Rothe v. Aballi*, No. 20-12543, 2021 WL 4429814, at \*2 (11th Cir. Sept. 27, 2021) ("[T]here is no such exhaustion requirement in § 1782, and reading one into the statute is contrary to law and clearly erroneous."); *In re Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016) (similar); *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998), *as amended* (July 23, 1998) (similar).

such "proof-gathering restrictions or policies under English law or civil procedure rules that would be circumvented by obtaining evidence pursuant to 28 U.S.C. §1782" either in general or in this Application.  (ER-115, ¶5; ER-117, ¶12; *see also* ER-115–17,  ¶¶6-11); *see also Legatum*, 2021 WL 706436, at *3 (holding Section 1782 application was "not an attempt to circumvent proof gathering restrictions in either the United Kingdom or the United States").  Indeed, as explained above, U.S. courts routinely grant applications under Section 1782 to obtain evidence for use in foreign proceedings in the United Kingdom.  Accordingly, the third *Intel* factor weighs heavily in favor of granting Mr. Gliner's Application.

### 4.    The Fourth *Intel* Factor Favors Granting the Application: Mr. Gliner's Discovery Request Is Not Unduly Burdensome.

The fourth *Intel* factor weighs in favor of discovery where, as here, an applicant's discovery request is not "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265, as "determined by the Federal Rules of Civil Procedure," *In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) (citing *In re Letters Rogatory from Tokyo Dist. Prosecutor's Off.*, 16 F.3d 1016, 1019 (9th Cir. 1994)).  Under longstanding, ordinary discovery rules, "[d]iscovery 'is permitted if reasonably calculated to lead to the discovery of admissible evidence.'"  *HRC-Hainan Holding Co. v. Hu*, No. 19-mc-80277, 2020 WL 906719, at *11 (N.D. Cal. Feb. 25, 2020) (quoting *Franklin v. Madden*, 586 F.

App'x 431, 432 (9th Cir. 2014)). And "[r]elevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998).

Notably, courts have consistently held that this factor weighs in favor of granting a Section 1782 Application where the applicant seeks discovery to reveal the identity of a person who allegedly infringed his rights. *See, e.g.*, *Hey, Inc. v. Twitter, Inc. (Hey I)*, No. 22-mc-80034, 2022 WL 1157490, at *2-4 (N.D. Cal. Apr. 19, 2022) (granting Section 1782 application subpoena seeking "documents identifying the user(s) of the three [Twitter] accounts; names and addresses of credit card holders registered on the accounts; and access logs for the dates the tweets in question were posted," and holding that the "discovery is appropriately tailored to documents and information identifying the individual(s) responsible" for alleged wrongful conduct); *In re Takada (Takada II)*, No. 22-mc-80221, 2023 WL 1442844, at *2-3 (N.D. Cal. Feb. 1, 2023) (denying motion to quash subpoena issued under Section 1782 and ordering Twitter to produce documents sufficient to identify a user of its service); *IS Prime*, 2021 WL 5889373, at *3-4 (similar); *Legatum*, 2021 WL 706436, at *3 (similar); *Digit. Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, at *2 (N.D. Cal. Oct. 12, 2016) (similar).

Here, Mr. Gliner's Application seeks only limited discovery from Dynadot to identify the person or persons responsible for publishing the defamatory article: (1) documents sufficient to identify or provide information tending to identify the

person or persons who own, operate, registered, and/or or engaged the services of Dynadot with regard to the website PoliticalLore.com; and documents sufficient to identify or provide information tending to identify the person identified as "Edward Swensson" in the defamatory article who authored or contributed to its publication on PoliticalLore.com; and (2) a one-hour deposition in which a Dynadot corporate representative can authenticate the documents produced. As such, the burden on Dynadot is minimal. Such requests are routinely approved as not being unduly burdensome, and this final *Intel* factor weighs heavily in favor of granting Mr. Gliner's Application. *E.g.*, *Hey I*, 2022 WL 1157490, at *2-4; *Takada II*, 2023 WL 1442844, at *4; *In re Hattori*, No. 21-mc-80236, 2021 WL 4804375, at *5 (N.D. Cal. Oct. 14, 2021); *Apple Retail*, 2020 WL 3833392, at *4.[16]

***

The district court, in its paperless order denying Mr. Gliner's Application, erroneously eschewed this proper analysis. In so doing, it reversibly erred. Because Mr. Gliner's Application satisfies every 28 U.S.C. §1782 statutory requirement and every discretionary factor weighs in favor of granting his Application, this Court

---

[16] Mr. Gliner's counsel will, of course, meet and confer with Dynadot's counsel to discuss ways to obtain the discovery as efficiently and with as little burden as possible.

36

should reverse the judgment below and either grant Mr. Gliner's Application or remand with instructions that the district court grant it.

## II. The District Court Reversibly Erred by Denying Mr. Gliner's 28 U.S.C. §1782 Application on First Amendment Grounds Because It Does Not Implicate the First Amendment.

The district court further erred by denying Mr. Gliner's Application on the basis of "the website operator and author's ... First Amendment interests." (ER-6.) As explained below—and as Mr. Gliner explained in his Rule 59(e) Motion that the district court denied without explanation—the First Amendment does not apply to the anonymous publisher's false and defamatory article for multiple independent reasons.

### A. The First Amendment Is Not Implicated by Mr. Gliner's Application Because There Is No Indication That the Anonymous Publisher Is a U.S. Citizen or Located in the United States, and the First Amendment Does Not Apply to Non-U.S. Citizens Outside the United States.

The district court reversibly erred by denying Mr. Gliner's Application on the ground that disclosure of the identity of the defamatory article's publisher would infringe his "First Amendment interests," because there is no indication that the publisher is a U.S. citizen or has any connection to the United States (quite the opposite), the article does not target a U.S. audience, and, under settled precedent, foreign citizens outside the United States have no First Amendment rights.

37

U.S. Supreme Court precedent is clear:  "It is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including "under the First Amendment." *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020) (collecting cases; holding First Amendment inapplicable to foreign corporation); *accord id.* at 434 ("[T]he Court has not allowed foreign citizens outside the United States or such U.S. territory to assert rights under the U.S. Constitution. If the rule were otherwise, actions ... against foreign organizations or foreign citizens in foreign countries would be constrained by the foreign citizens' purported rights under the U.S. Constitution.  That has never been the law."); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (holding that "an alien who has had no previous significant voluntary connection with the United States" lacks "constitutional protections").

And although this Court has held that the First Amendment protects the "right of domestic listeners to receive speech from foreign speakers," it has strictly limited the applicability of that right to "speech ... directed at and received by [domestic] residents."  *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021).  As Section 1782 caselaw citing *Thunder Studios* has explained, there is "no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely accessible to U.S. citizens over the Internet."

*Takagi v. Twitter, Inc.*, No. 22-mc-80240, 2023 WL 1442893, at *3 (N.D. Cal. Feb. 1, 2023); *accord Takada II*, 2023 WL 1442844, at *3; *In re Team Co.*, No. 22-mc-80183, 2023 WL 1442886, at *3-4 (N.D. Cal. Feb. 1, 2023); *see also Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706-08 & n.6 (N.D. Cal. 2022) (admonishing that, because "'[t]he animating purpose of §1782 is comity'" and "'provid[ing] federal-court assistance in gathering evidence for use in foreign tribunals,'" "there's good reason to tread lightly in applying U.S. free-speech principles abroad" (quoting *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022), and *Intel*, 542 U.S. at 247)).

In light of this precedent, courts in this Circuit[17] considering Section 1782 applications have consistently—except in the decision below—held that "where the record does not indicate that anonymous speakers are entitled to First Amendment protections, U.S. free-speech principles should not factor into a federal district court's evaluation of a §1782 application." *United States v. Meta Platforms, Inc.*, No. 23-mc-80249, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023); *accord, e.g.*, *United States v. Google LLC*, 690 F. Supp. 3d 1011, 1022 (N.D. Cal. 2023); *Hey, Inc. v. Twitter, Inc. (Hey II)*, No. 22-mc-80034, 2023 WL 3874022, at *3 (N.D. Cal.

---

[17] Because many tech companies—including Google, Meta, Twitter/X, Glassdoor, and others—are headquartered in the San Francisco area, a large proportion of Section 1782 applications are brought in the Northern District of California.

June 6, 2023) (same); *Takada II*, 2023 WL 1442844, at *3-4 (same); *Takagi v. Twitter*, 2023 WL 1442893, at *3 (same); *Team Co.*, 2023 WL 1442886, at *3-4 (same); *Zuru*, 614 F. Supp. 3d at 706-08 & n.6 (same).

As these courts have explained, "[s]imply assuming First Amendment protection applies [to a Section 1782 application], in the absence of any facts or circumstances suggesting that it does, is inconsistent with *Intel*'s caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog." *Takagi v. Twitter*, 2023 WL 1442893, at *4; *accord Meta Platforms*, 2023 WL 8438579, at *6; *Takada II*, 2023 WL 1442844, at *4; *Team Co.*, 2023 WL 1442886, at *3. That assumption would also contravene the Supreme Court's holding that Section 1782 "does ***not*** require the applicant to show 'that United States law would allow discovery in domestic litigation analogous to the foreign proceeding.'" *Zuru*, 614 F. Supp. 3d at 707 (quoting *Intel*, 542 U.S. at 263; emphasis in original). And that assumption would be antithetical to the settled law that, as with any privilege, "it is the obligation of the person [claiming First Amendment protection] to demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984); *Santa Monica Food Not*

40

*Bombs v. City of Santa Monica,* 450 F.3d 1022, 1032 (9th Cir. 2006); *accord B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 112 (9th Cir. 2024).[18]

Here, the district court ignored or disregarded this precedent in its paperless order denying Mr. Gliner's Application and in its denial of Mr. Gliner's Rule 59(e) motion without explanation.  And that precedent compels the conclusion that the publisher of the challenged PoliticalLore.com article does not have First Amendment interests that could be implicated by disclosure of his identity.

As in *Meta Platforms*, *Hey II*, *Takagi*, *Takada II*, *Team Co.*, *Zuru*, and other cases that have consistently held the First Amendment inapplicable, there is no evidence or indication that the publisher of the defamatory PoliticalLore.com article is a U.S. citizen or is located in the United States.  But even more than that, there are affirmative indications that the publisher is *not* a U.S. citizen and is *not* located in the United States.  The defamatory publication targets Mr. Gliner and his family, who live and work in the United Kingdom.  (ER-66–67, ¶¶2, 5-6, 8.)  It accuses Mr. Gliner (and his family) of wrongdoing and criminality against the backdrop of contentious litigation pending in the United Kingdom in which Mr. Gliner's family's

---

[18] *See also, e.g.*, *Talley v. Mazzocca*, 796 F. App'x 61, 63 (3d Cir. 2019); *Bar-Navon v. Brevard Cnty. Sch. Bd.*, 290 F. App'x 273, 277 (11th Cir. 2008); *Church of Am. Knights v. Kerik*, 356 F.3d 197, 205 (2d Cir. 2004); *United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir. 1991); *Walker v. City of Kansas City*, 911 F.2d 80, 85 (8th Cir. 1990).

claims are opposed by Russian-backed interests. (ER-67–69, ¶¶10-13.) PoliticalLore.com bears all the hallmarks of a disinformation website: Almost all of its articles are Russian-centric, exhibit poor English, and contain over-the-top anti-Western content and rhetoric; it is completely devoid of advertising; its sample page is in Russian; it links to Russian-language social media in its source code; and although it contains a link for companies that wish to advertise with it, the link leads to a dead-end, thus strongly suggesting that the website is independently funded and/or relies on paid-for content. (ER-35 n.4.)[19]  And extensive research attempting to identify the "Edward Swennson" who is listed as the author of the defamatory article identified only two people by that name in the United States, neither of whom had any determinable connection to PoliticalLore.com. (ER-73. ¶7.)

Likewise, there is no evidence or indication that the defamatory PoliticalLore.com article targeted a U.S. audience. And the same evidence that the publisher of the article is not a U.S. citizen or located in the United States indicates the article was not targeted at a U.S. audience  It targeted Mr. Gliner and his family, who live and work in the United Kingdom; it accused them of wrongdoing against the backdrop of U.K. litigation in which Mr. Gliner's family is opposed by Russian-

---

[19] *See* https://politicallore.com; https://politicallore.com/sample-page.  The Court may take judicial notice of the contents of the website and its source code. *See, e.g.*, *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1186 n.4 (9th Cir. 2024); *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1176 n.6 (9th Cir. 2022).

backed interests; and PoliticalLore.com, which is rife with *anti*-American and *anti*-Western content and rhetoric, bears all the hallmarks of an *anti*-U.S. disinformation website. (ER-66–69, ¶¶2, 5-6, 8, 10-13; ER-73, ¶7; ER-35 n.4.) Indeed, even cursory review of the 'articles' posted on PoliticalLore.com shows that they have a global focus, *not* a U.S. focus.[20]

Thus, no First Amendment interests are implicated by the disclosure of the identity of the publisher of the defamatory PoliticalLore.com article. Moreover, even to the extent the district court may have (erroneously) believed that First Amendment rights could potentially be implicated, the proper course was not to deny the Application based on that mere possibility, but rather to grant it "without prejudice to any such [First Amendment] argument that might be raised in a motion to quash" by Dynadot or those publisher(s), who could raise that argument through counsel while maintaining their anonymity. *In re Anahara*, No. 22-mc-80063, 2022 WL 783896, at *5 n.1 (N.D. Cal. Mar. 15, 2022); *accord Meta Platforms*, 2023 WL 8438579, at *6.

Accordingly, the district court reversibly erred by denying Mr. Gliner's Section 1782 Application on the basis that disclosure of the publisher's identity would infringe his "First Amendment interests." (ER-6.)

---

[20] *See* https://politicallore.com.

**B.    The First Amendment Is Not Implicated by Mr. Gliner's Application Because the PoliticalLore.com Article Is False and Defamatory, and the First Amendment Does Not Protect Defamatory Speech.**

The district court likewise reversibly erred by denying Mr. Gliner's Application on the ground that disclosure of the identity of the defamatory article's publisher would infringe his "First Amendment interests" for the additional reason that the Application seeks only to discover the identity of the publisher of false and defamatory speech, and the First Amendment does not protect defamatory speech.

Again, U.S. Supreme Court precedent is clear: "The freedom of speech has its limits; it does not embrace ... defamation." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002); *accord United States v. Stevens*, 559 U.S. 460, 468 (2010) ("From 1791 to the present ... the First Amendment has permitted restrictions upon the content of speech in a few limited areas, ... including ... defamation.").[21] So, too, is this Court's precedent: "The First Amendment does not protect slander." *Felton v. Griffin*, 185 F. App'x 700, 701 (9th Cir. 2006); *accord United States v. Waggy*,

---

[21] *See also, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("The First Amendment ... include[s] exceptions for ... libel[.]"); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992) ("[T]hese areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)[.]" (emphasis in original)); *New York v. Ferber*, 458 U.S. 747, 763 (1982) ("[A] libelous publication is not protected by the Constitution."); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include ... the libelous[.]").

936 F.3d 1014, 1017 (9th Cir. 2019) ("[T]here are traditional narrow carve-outs to the First Amendment .... including, defamation[.]").[22]    That precedent is foundational, as the Supreme Court has "regularly acknowledged the 'important social values which underlie the law of defamation,' and recognized that '[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation.'" *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 22-23 (1990) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966)).

In light of that law, courts in this Circuit considering Section 1782 applications have consistently—except in the decision below—held that the First Amendment does not shield the identity of the publisher of defamatory statements. *See Hey II*, 2023 WL 3874022, at *4-5; *Takada II*, 2023 WL 1442844, at *6; *Takagi v. Twitter*, 2023 WL 1442893, at *6; *Team Co.*, 2023 WL 1442886, at *5; *Anahara*, 2022 WL 783896, at *5 n.1; *In re Planning & Dev. of Educ., Inc.*, No. 21-mc-80242, 2022 WL 228307, at *4 n.3 (N.D. Cal. Jan. 26, 2022); *In re Tagami*, No. 21-mc-80153, 2021 WL 5322711, at *3 n.1 (N.D. Cal. Nov. 16, 2021); *Zuru*, 614 F. Supp. 3d at 706-08 & n.6; *In re Yasuda (Yasuda I)*, No. 19-mc-80127, 2019 WL 4933581, at *3-4 (N.D. Cal. Oct. 7, 2019); *In re Frontier Co.*, No. 19-mc-80184, 2019 WL

---

[22] *See also, e.g.*, *United States v. Sineneng-Smith*, 910 F.3d 461, 470 (9th Cir. 2018) (same), *vacated and remanded on other grounds*, 590 U.S. 371 (2020).

3345348, at *3 (N.D. Cal. July 25, 2019); *In re Ontario Principals' Council*, No. 13-mc-120, 2013 WL 6844545, at *4 (E.D. Cal. Dec. 23, 2013).

Notably, in so doing, these courts have largely refused to condition the First Amendment's inapplicability on an assessment of the merits of the foreign claim underlying the applicant's discovery request, explaining that they are "'reluctant to endorse a standard for exercising discretion [under section 1782] that does not derive from the statute itself (or the Supreme Court's interpretation of it) and that seems ill-suited to an application for discovery in aid of a foreign proceeding that is within reasonable contemplation but not yet filed.'" *Hey II*, 2023 WL 3874022, at *5 (quoting *Takada II*, 2023 WL 1442844, at *6); *accord Takagi v. Twitter*, 2023 WL 1442893, at *6; *Team Co.*, 2023 WL 1442886, at *5. As such, these courts have held that an applicant need only "'describe the legal and factual bases for a contemplated foreign proceeding, and [] explain how the discovery will aid prosecution of that proceeding.'" *Hey II*, 2023 WL 3874022, at *5 (quoting *Takada II*, 2023 WL 1442844, at *6); *accord Takagi v. Twitter*, 2023 WL 1442893, at *6; *Team Co.*, 2023 WL 1442886, at *5; *see also Anahara*, 2022 WL 783896, at *5 n.1; *Planning & Dev.*, 2022 WL 228307, at *4 n.3; *Tagami*, 2021 WL 5322711, at *3 n.1; *Ontario Principals*, 2013 WL 6844545, at *4. By contrast, a small minority of primarily older decisions have taken "[a] peek at the merits" to see if the applicant has a plausible underlying claim or applied a "good cause" test created by

46

a district court considering pre-service discovery in aid of *domestic* claims under *U.S.* law. *See Zuru*, 614 F. Supp. 3d at 703, 706-08 & n.6 (plausibility); *Yasuda I*, 2019 WL 4933581, at *3 (good cause; citing *Columbia Ins. v. Seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1990)); *Frontier*, 2019 WL 3345348, at *3 (good cause; citing *Columbia Ins.*, 185 F.R.D. at 578-80).[23]

Here, Mr. Gliner's Application satisfies any of these inquiries. Mr. Gliner did not simply allege that the PoliticalLore.com article contains false and defamatory statements about him—which is all the majority rule requires—he submitted actual evidence (in the form of declarations under penalty of perjury) supporting each element of the defamation claim underlying his Application. The defamatory statements were plainly published; they identify Mr. Gliner by name; they are false, as Mr. Gliner explained in his declaration, under penalty of perjury, that he did not commit the crimes and acts of theft, embezzlement, and fraud of which the statements accuse him (ER-68–69, ¶13); available evidence indicates that they were made as part of a concerted effort to inflict harm on Mr. Gliner and his family to coerce them to abandon or settle claims to their family's wealth (ER-67–68, ¶¶10-

---

[23] This "good cause" test requires the party seeking discovery to "'(1) identif[y] the party with sufficient specificity that the court can determine that the party is a real person subject to suit; (2) identif[y] all previous steps taken to locate and identify the party; (3) demonstrate[] that the action can withstand a motion to dismiss; and (4) prove[] that the discovery is likely to lead to identifying information.'" *Yasuda I*, 2019 WL 4933581, at *3.

11); and "[t]he Article is defamatory of Mr. Gliner under English law" as explained in the declaration of Mr. Gliner's English solicitor (ER-117–18, ¶¶13-16), and under U.S. law, *see* Cal. Civ. Code §45; *DeMartini v. DeMartini*, 833 F. App'x 128, 132 (9th Cir. 2020). Mr. Gliner's Application also explained how he attempted to identify the publisher of the defamatory PolitcialLore.com article without judicial assistance (but was unable to do so) and how his Application will lead to information identifying that person. (ER-73, ¶¶7-9.)

Thus, under any test, the First Amendment does not apply to protect the identity of the person who anonymously defamed Mr. Gliner in the PoliticalLore.com article.[24] The district court reversibly erred by holding otherwise.

## **CONCLUSION**

Applicant-Appellant Gregory Gliner respectfully requests that the Court reverse the district court's judgment and remand with instructions that his Application under 28 U.S.C. §1782 be granted.

---

[24] Mr. Gliner's Application even satisfies the "real evidentiary basis" test that a handful of courts have applied to requests for discovery in aid of domestic claims under U.S. law. *See Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005).

Date:  September 6, 2024

Respectfully Submitted,

  _/s/ Joseph R. Oliveri_

JOSEPH R. OLIVERI
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7405
joe@clarelocke.com

MICHELE FLOYD
KILPATRICK TOWNSEND
STOCKTON LLP
2 Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 273-4756
mfloyd@ktslaw.com

*Attorneys for Applicant-Appellant*
*Gregory Gliner*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-4624

I am the attorney or self-represented party.

**This brief contains** | 11,271 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

● complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Joseph R. Oliveri | **Date** | 9/6/24

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**     *Rev. 12/01/22*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2024, I caused the foregoing Principal Brief of Applicant-Appellant Gregory Gliner to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 6, 2024          By:    */s/ Joseph R. Oliveri*
                                         Joseph R. Oliveri
                                         *Attorney for Applicant-Appellant*
                                         *Gregory Gliner*