# Exhibit 2

24

Lord Mackay
of Clashfern                    Reg. v. Shivpuri (H.L.(E.))                    [1987]

with the Lord Chancellor's view. Otherwise I agree with the reasons       A
given by my noble and learned friend, Lord Bridge.

*Appeal against conviction dismissed.*
*Costs of appellant and respondent to*
*be paid out of central funds.*

Solicitors: *Francis & Co., Cambridge; Solicitor, Customs and Excise.*       B

C. T. B.

_____

C

[HOUSE OF LORDS]

SOUTH CAROLINA INSURANCE CO.     .     .     .     Respondents

AND

ASSURANTIE MAATSCHAPPIJ "DE ZEVEN                                           D
    PROVINCIEN" N.V.     .     .     .     .     .     Appellants

SOUTH CAROLINA INSURANCE CO.     .     .     .     Respondents

AND

AL AHLIA INSURANCE CO. AND ANOTHER     .     .     Appellants
                                                                            E

1986   May 6, 7;        Lord Bridge of Harwich, Lord Brandon of Oakbrook,
       July 29                Lord Brightman, Lord Mackay of Clashfern and
                                            Lord Goff of Chieveley

*Injunction—Jurisdiction   to   grant—Foreign   proceedings—Action*       F
    *brought in England—Defendants lodging petition in United States*
    *court for pre-trial discovery—Whether defendants to be restrained*
    *from proceeding with petition under court's inherent jurisdiction*

The plaintiffs were an American insurance company, and,
having reinsured the liability of another American insurance
company, U.N.I., they reinsured the risk with the defendants in
London. The plaintiffs claimed under the contract of reinsurance
and, when the defendants disputed liability, they brought            G
proceedings in the Commercial Court. Before the defence was
served, the defendants lodged a petition in a United States
district court seeking, inter alia, an order for pre-trial discovery
of documents relevant to the claim and the plaintiffs' contract of
reinsurance with U.N.I., against persons resident in the United
States, who were not parties to the English action. On the
plaintiffs' application in the Commercial Court, the judge made      H
an order restraining the defendants from taking any further step
in the American proceedings or enforcing any order made
therein. On appeal by the defendants, the Court of Appeal
dismissed the appeal.

ER-123

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))

A       On appeal by the defendants:—
        *Held,* allowing the appeal, that although the power of the
        High Court to grant injunctions, which was a statutory power
        conferred by section 37(1) of the Supreme Court Act 1981, was
        very wide it was limited, save for two exceptions irrelevant to
        the present proceedings, to the situations (Lord Mackay of
        Clashfern and Lord Goff of Chieveley dubitante) (i) where one
        party to an action could show that the other party had either
B       invaded, or threatened to invade, a legal or equitable right of
        the former for the enforcement of which the latter was amenable
        to the jurisdiction of the court, and (ii) where one party to an
        action had behaved, or threatened to behave, in an unconscion-
        able manner; that in the circumstances the plaintiffs had failed
        to show either that the defendants' conduct towards the plaintiffs
        was amenable to the jurisdiction of the court, or that it was
        unconscionable in the sense that it interfered with the due
C       process of the High Court's jurisdiction, and that, accordingly,
        the injunctions granted would be discharged (post, pp. 31c–D,
        39H—40D, 41A–D, 44A–B, C–D, E, F).
            *Siskina (Owners of cargo lately laden on board) v. Distos
        Compania Naviera S.A.* [1979] A.C. 210, H.L.(E.); *Castanho v.
        Brown & Root (U.K.) Ltd.* [1981] A.C. 557, H.L.(E.) and
        *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58,
D       H.L.(E.) applied.
            *Per Lord Goff of Chieveley.* I am reluctant to accept the
        proposition that the power of the court to grant injunctions is
        restricted to certain exclusive categories. That power is unfettered
        by statute and it is impossible at the present time to foresee
        every circumstance in which it may be thought right to make
        the remedy available (post, p. 44G).
E           Decision of the Court of Appeal [1986] Q.B. 348; [1985] 3
        W.L.R. 739; [1985] 2 All E.R. 1046 reversed.

        The following cases are referred to in their Lordships' opinions:

        *Bank of Tokyo Ltd. v. Karoon (Note)*, post, p. 45; [1986] 3 W.L.R. 414;
            [1986] 3 All E.R. 468, C.A.
        *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58; [1984] 3
F           W.L.R. 413; [1984] 3 All E.R. 39, H.L.(E.)
        *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557; [1980] 3 W.L.R.
            991; [1981] 1 All E.R. 143, H.L.(E.)
        *Court of Commissioner of Patents for Republic of South Africa, In re* (1980)
            88 F.R.D. 75
        *Deere (John) Ltd. and Deere & Co. v. Sperry Corporation* (1985) 754 F. 2d
            132
G       *MacShannon v. Rockware Glass Ltd.* [1978] A.C. 795; [1978] 2 W.L.R. 362;
            [1978] 1 All E.R. 625, H.L.(E.)
        *Siskina (Owners of cargo lately laden on board) v. Distos Compania Naviera
            S.A.* [1979] A.C. 210; [1977] 3 W.L.R. 818; [1977] 3 All E.R. 803,
            H.L.(E.)

        The following additional cases were cited in argument:

H       *Armstrong v. Armstrong* [1892] P. 98
        *Erhmann v. Ehrmann* [1896] 2 Ch. 611, C.A.
        *Mike Trading and Transport Ltd. v. R. Pagnan & Fratelli (The Lisboa)*
            [1980] 2 Lloyd's Rep. 546, C.A.
        *North Carolina Estate Co. Ltd., In re* (1889) 5 T.L.R. 328

**South Carolina Co. v. Assurantie N.V. (H.L.(E.))**                    **[1987]**

*Straker Brothers & Co. v. Reynolds* (1889) 22 Q.B.D. 262

*Westinghouse Electric Corporation Uranium Contract Litigation M.D.L. Docket No. 235 (Nos. 1 and 2), In re* [1978] A.C. 547; [1978] 2 W.L.R. 81; [1978] 1 All E.R. 434, H.L.(E.)

A

B

APPEAL from the Court of Appeal.

This was an appeal by leave of the House of Lords (Lord Scarman, Lord Templeman and Lord Mackay of Clashfern) dated 19 November 1985 by the defendants, Assurantie Maatschappij "De Zeven Provincien" N.V., in the first action, and by the first defendants, Al Ahlia Insurance Co., and by the second defendants, Arabian Seas Insurance Co. Ltd., in the second action brought by the plaintiffs, South Carolina Insurance Co. from the judgment dated 23 May 1985 of the Court of Appeal (Griffiths, Slade and Lloyd L.JJ.) which affirmed orders made on 25 April 1985 by Hobhouse J., the effect of which was to restrain the defendants from taking any further steps in proceedings before a Federal District Court of the United States for production and inspection of documents against a number of companies and individuals not party to the present actions.

The facts are set out in the opinion of Lord Brandon of Oakbrook.

C

D

*Robert Alexander Q.C.* and *Jonathan Sumption Q.C.* for the defendants. The point raised by this appeal is novel. The question can be stated in this way: in what circumstances (if any) may the English courts restrain a party to an English action from availing himself of the process of a foreign court for the purpose of obtaining evidence relevant to the English action? The most authoritative decisions in this branch of the law are those of this House in *Siskina (Owners of cargo lately laden on board) v. Distos Compania Naviera S.A.* [1979] A.C. 210; *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557 and *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58.

In the present case the defendants against whom injunctive relief is sought availed themselves of a right open to them under the federal law of the United States and applied to a United States district court for an order requiring persons resident in the United States, but who were not parties to the English proceedings, to give pre-trial discovery of documents relevant to the English action. The particular issue, therefore, in this appeal is whether in the present circumstances it is right for the English court to restrain the defendants from prosecuting further the proceedings in the United States district court.

The rules of procedure in England provide a means whereby discovery can be obtained between parties to an action and witnesses can be subpoenaed to appear at the trial with relevant documents in their possession. The rules of procedure do not provide an exhaustive or exclusive code which prohibit a party from obtaining documents in any way other than those provided by the rules. For example, if a stranger to the action is prepared to give documents voluntarily to a party, that party is entitled to receive them without obtaining a subpoena. Further, a party may use the facilities of the courts of a friendly foreign state if that state is willing for them so to do. The defendants concede that

E

F

G

H

(5 of 23), Page 5 of 23    Case: 24-4624, 09/06/2024, DktEntry: 3.3, Page 5 of 23
Case 3:24-mc-80087  Document 1-7  Filed 04/11/24  Page 14 of 95

27

**1 A.C.**          South Carolina Co. v. Assurantie N.V. (H.L.(E.))

A  there are limits to this principle. Thus, it is inapplicable where it would be unconscionable for a party to obtain discovery, for example, of documents which in this country are subject to professional privilege.

The documents sought are relevant to the defences pleaded in the action which in turn reflect enquiries which were pursued before the action was brought. The plaintiffs obtained the injunction in spite of refusing the defendants consent to have access to the documents in
B  question. Since then they have granted the defendants access but it is the view of the defendants' solicitors that the strangers to the action have not made proper disclosure. The documents are not in the power or possession or control of the plaintiffs; therefore it is difficult to see why they object to disclosure. If the strangers to the action were in this country they could be required to produce the documents by subpoena duces tecum. As to any suggestion that the defendants could have
C  applied for letters rogatory under R.S.C., Ord. 39, r. 2, the procedure is cumbersome and expensive and they can be issued only where other efforts have been made to obtain the documents in question.

As stated previously, after the Court of Appeal gave judgment the plaintiffs did arrange for the defendants to have controlled access to certain documents in the possession of certain third parties resident in
D  the United States. This was a facility which the defendants hoped would make the prosecution of the present appeal unnecessary. However, the restrictions imposed upon the defendants' inspection of documents made the facilities which were offered to them most unsatisfactory. They have therefore with regret concluded that certain documents have been withheld in a manner which can be remedied only by the compulsory
E  procedure of the United States district court.

28 United States Code, section 1782, is a clear provision enabling parties to an English action to obtain from the courts of the United States documents for use in proceedings in this country. That being the rule, the question then arises: on what principle should the English court prevent disclosure where the United States courts would allow disclosure directed to a company which is subject to the jurisdiction of the United
F  States courts? It is the plaintiffs' contention that in the circumstances it is unconscionable for the defendants to apply for disclosure of these documents. The Court of Appeal held that in principle a party to litigation in this country should not avail itself of 28 United States Code, section 1782, against non-parties resident in the United States.

Reliance is placed on the following propositions: (i) In principle it is
G  open to the defendants to seek material to enable them to conduct their case and to obtain that material as early as possible. A party can gather evidence for use in litigation either through the use of English procedures or through other means. (ii) There is no objection to these other means including means provided by United States proceedings. This does not, as the Court of Appeal suggested, deprive the English court of control over the proceedings. (iii) Caution is required before the conduct of any
H  foreign proceedings is restrained. (iv) The use of the United States processes could be restrained by injunction if it involved the breach of some legal or equitable right of the party claiming the injunction or was unjust or unconscionable to that other party but not otherwise. The

South Carolina Co. v. Assurantie N.V. (H.L.(E.))                [1987]

defendants dissent from the general approach of the Court of Appeal in $\quad$ A
the present case.

As to the authorities, reliance is placed on *Siskina (Owners of cargo lately laden on board) v. Distos Compania Naviera S.A.* [1979] A.C. 210, 211c–d, 255f–g, 256e–257, *per* Lord Diplock. As to *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557, see *per* Lord Scarman, at pp. 572f–g, and 574d. It is to be noted that that was a forum conveniens case. In *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58, $\quad$ B the observations of Lord Diplock at pp. 80a–b et seq., and Lord Scarman at p. 95c, show that the category of cases there under discussion have no relevance to the issue in the present case. The defendants would apply by analogy to the present case the observations of Dunn L.J. in *Mike Trading and Transport Ltd. v. R. Pagnan & Fratelli (The Lisboa)* [1980] 2 Lloyd's Rep. 546, 551. $\quad$ C

On the facts of the present case it is not unreasonable or unjust for the defendants to apply for the documents in question. It is said that the documents would be obtained earlier than if they were obtained by subpoena in the English proceedings. But this is only a quirk of English procedure. The advantage of being able to obtain the documents at an earlier stage of the proceedings is in no way unconscionable to the plaintiffs. This is particularly so since otherwise they are not likely to be $\quad$ D obtained at all. The defendants do not accept that the procedure by way of letters rogatory is open to them. Further, it is an expensive procedure. It cannot be unjust or unconscionable for the defendants to take the "direct route" for obtaining these documents.

As to the United States authorities cited by Griffiths L.J. [1986] Q.B. 348, 357, those authorities are not contemplating the situation $\quad$ E which has arisen in the present case. The principles laid down by the Court of Appeal here it may be said to act unconscionably against the defendants rather than the plaintiffs. [Reference was also made to *In re North Carolina Estate Co. Ltd.* (1889) 5 T.L.R. 328; *Straker Brothers & Co. v. Reynolds* (1889) 22 Q.B.D. 262, and *Bank of Tokyo Ltd. v. Karoon (Note)* [1987] A.C. 45.]

*Kenneth Rokison Q.C.,* Christopher Symons and Thomas Weitzman $\quad$ F for the plaintiffs. Attention is drawn to the width of the inquiry requested by the defendants in the United States proceedings. They are seeking third party discovery which would not be allowed at all in England. The United States court will not allow that which would not be allowed by the court hearing the substantive issue between the parties. The defendants are in effect seeking to take part of the English $\quad$ G proceedings out of the jurisdiction and control of the English court. The difference between the disclosure of documents as a result of letters of request and the present case is that the defendants here have first gone to the foreign court and requested that court to make an order in English proceedings.

*In re Westinghouse Electric Corporation Uranium Contract Litigation M.D.L. Docket No. 235 (Nos. 1 and 2)* [1978] A.C. 547, is the antithesis $\quad$ H of the present case. The House there held that an English court will not, even when so requested by a foreign court, make an order in respect of an English person or company requiring that person or company to give

A   documentary or testamentary discovery for the purposes of the foreign proceedings. The present case is the reverse position since although the American court is being asked to assist the English court, the American court is being asked to admit a wider class of documents than is allowable under English procedure. It is thus an even stronger case than the *Westinghouse* case. The correct way for the defendants to proceed in the present issue is under R.S.C., Ord. 39, r. 1. Further, Ord. 38, r. 9
B   specifically relates to depositions in any cause or matter and links them to those under Ord. 39, r. 1.

    The approach of Griffiths L.J. in the Court of Appeal is adopted. The plaintiffs are prejudiced by the American procedure because the defendants can obtain documents which could not be obtained under English procedure. Further, the plaintiffs are necessarily prejudiced by
C   the costs and expense of the American proceedings for they are bound to take part in those proceedings to protect their interests. The question also arises whether, if the English court would not make an order for third party discovery as sought by the defendants, the American court would make any order at all. It is plain from the American decisions in *In re Court of Commissioner of Patents for Republic of South Africa* (1980) 88 F.R.D. 75, 77, and *John Deere Ltd. and Deere & Co. v.*
D   *Sperry Corporation* (1985) 754 F. 2d 132, 135, 136, that a United States court will only grant an applicant an order under 28 United States Code, section 1782, if it is satisfied that an order of the same nature would be made in like circumstances by the foreign court seised of the dispute at that stage of the proceedings. The effect of those decisions is that any American court properly advised as to English law on discovery would
E   deny the defendants' request as being for third party discovery which is not allowable under English procedure. If it be said that this question can be left for the United States district court to decide, the answer is that it is better for the English court to deal with the matter and "nip it in the bud." It may be that the United States court would not be properly advised as to the relevant English law.

    The English court has jurisdiction to restrain a party to proceedings
F   pending in England from seeking or continuing to seek interlocutory orders in a foreign jurisdiction for the purposes of those proceedings. The English court has an inherent jurisdiction to control its own proceedings. Further, it is well established that where proceedings are pending before the English court, and proceedings are brought in a foreign jurisdiction which concern the same issues, the English court has
G   a discretionary jurisdiction either to stay the English proceedings or to restrain by injunction a party to those proceedings from continuing to proceed in the foreign court. This jurisdiction was recognised by this House in *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58, 80D–F *per* Lord Diplock. This jurisdiction is commonly invoked in the so-called "forum conveniens" cases, where there is a choice of forum for determination of substantive issues between the parties. See *per* Lord
H   Scarman, at p. 95D. This jurisdiction must also exist where the foreign proceedings are of a purely interlocutory nature, but which overlap with the normal interlocutory processes before the English court. Indeed, it is an obvious and an "a fortiori" case. Thus here the United States

30

South Carolina Co. v. Assurantie N.V. (H.L.(E.))                    [1987]

A

proceedings are only ancillary proceedings and therefore there is no reason why the English court should not have granted the injunction appealed against.

*The Lisboa* [1980] 2 Lloyd's Rep. 546 is distinguishable because that was a case where proceedings were started in Venice in order to obtain security if the action was subsequently instituted in Italy. That case cannot be described as one of a foreign court's interlocutory jurisdiction being invoked in English proceedings. It was not an interlocutory application for the purposes of English proceedings. The line of cases cited by Robert Goff L.J. in *Bank of Tokyo Ltd. v. Karoon (Note)* [1987] A.C. 45, is closer to the present case. The present case is one where it is proper to grant an injunction to protect the jurisdiction of the English court.

*Armstrong v. Armstrong* [1892] P. 98 lays down the correct approach to the present problem; the principles stated there are applicable to the present case. The essential question is: who should have control over the present matter? The true answer is that it should be the English court which should have control.

Suppose that in the present case the plaintiffs had attempted in the United States Court to obtain pre-trial depositions from the defendants' employees. Such an application would surely be restrained because it would be so alien to English procedure. So also third-party discovery is alien to English procedure. The matter can be tested by the following example. If a party went to an English court and asked it to issue letters rogatory in relation to third parties' documents under Order 39, such an application would be dismissed. If the party then went to the United States court and requested it under 28 United States Code, section 1782, the English court should intervene on the ground that it was vexatious; the party having failed before the English court, it cannot obtain the evidence by utilising a foreign jurisdiction. But the answer cannot be any different merely because the party in question goes to the United States court first as in the present case.

*Erhmann v. Ehrmann* [1896] 2 Ch. 611, shows that the English court will not grant letters rogatory except in relation to evidence which is directly relevant to the issues in the case. Wider "discovery" will not be made the subject of letters rogatory—let alone in respect of documents held by a third party.

In conclusion, it is the plaintiffs' contention that they have a legal or equitable right which it is appropriate for the English court to protect by injunction, namely the right, as parties to proceedings in the English court, to have those proceedings conducted in accordance with the procedural laws and practices of England, and of no other jurisdiction. Moreover, it is their contention that the defendants' application for interlocutory relief in the United States is unconscionable and unjust to the plaintiffs. If granted, it would allow the defendants to take advantage of procedural steps and remedies available under English procedural law, while at the same time avoiding some of the restrictions on those steps and remedies which would nevertheless continue to impinge upon the plaintiffs.

*Symons* followed.

**1 A.C.**          **South Carolina Co. v. Assurantie N.V. (H.L.(E.))**

A        *Alexander Q.C.* in reply. In the present case it is accepted that there
is an advantage under the foreign proceedings which cannot be obtained
in the English proceedings. It is this factor which distinguishes the
present case from *Armstrong v. Armstrong* [1892] P. 98, as applied by
Robert Goff L.J. in the *Tokyo Bank* case *(Note)* [1987] A.C. 45. The
defendants rely on the principle on which they opened this appeal,
namely, that the plaintiffs can only succeed if they can show that the
B        defendants' application before the United States court is unconscionable.
As to the principle adumbrated by Griffiths L.J. below, the manner in
which a party gathers evidence is for that party. It may gather it
voluntarily or in pursuance of a contract. These methods do not deprive
the English court in any way of control of its own proceedings.

[Reference was also made to *In re Westinghouse Electric Corporation
C        Uranium Contract Litigation M.D.L. Docket No. 235 (Nos. 1 and 2)*
[1978] A.C. 547, 562B–F.]


Their Lordships took time for consideration.


29 July. LORD BRIDGE OF HARWICH. My Lords, for the reasons
given in the speech of my noble and learned friend, Lord Brandon of
D        Oakbrook, with which I agree, I would allow this appeal.


LORD BRANDON OF OAKBROOK. My Lords, the question for decision
in this appeal is a novel one and can be stated in this way. An action
between A and B is pending before an English court. While it is
pending B, exercising a statutory right potentially available to him under
E        the federal law of the United States, applies to a district court of the
United States for an order that persons resident in the United States,
who are not parties to the action before the English court, should give
him pre-trial discovery of documents relevant to the issues in that
action. In those circumstances, is it right for the English court, on the
application of A, to grant an injunction against B prohibiting him from
prosecuting further his proceedings in the United States district court?
F        Hobhouse J. at first instance, and the Court of Appeal (Griffiths, Slade
and Lloyd L.JJ.) on appeal from him, have held that it is right for such
an injunction to be granted. The parties enjoined (for in the instant case
there are three of them) now bring a further appeal with the leave of
your Lordships' House.

The background of the case is to be found in what can conveniently
G        be described as a three-tier insurance arrangement. The company which
first insured the relevant risks was a United States company, United
National Insurance Co. ("United National"). United National re-insured
the risks which it had insured with another United States company,
South Carolina Insurance Co. ("South Carolina"). South Carolina in
turn re-re-insured the risks which it had re-insured with a number of
other insurance companies in the London market. These other insurance
H        companies included a Dutch company, Assurantie Maatschappij "De
Zeven Provincien" (Seven Provinces) and two Middle or Far Eastern
companies, Al Ahlia Insurance Co. ("Al Ahlia") and Arabian Seas
Insurance Co. ("Arabian Seas"). In or about 1984 South Carolina called

Lord Brandon
of Oakbrook          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          [1987]

A    upon Seven Provinces, Al Ahlia and Arabian Seas to pay substantial sums which South Carolina claimed to be due from them under the contracts of re-re-insurance concerned. Seven Provinces, Al Ahlia and Arabian Seas refused to make the payments asked for, denying that they were liable to do so.

As a result South Carolina brought two actions in the Commercial Court here in order to recover the sums which they claimed to be payable, together with interest on such sums. In the first action, which
B    was begun on 12 December 1984, Seven Provinces is the sole defendant. In the second action, which was begun on 28 February 1985, Al Ahlia is the first defendant and Arabian Seas is the second defendant. It was the original intention of the solicitors acting for South Carolina to seek summary judgment in both actions under R.S.C., Order 14. However, at an application to fix a date for the hearing of the Order 14
C    proceedings against Seven Provinces, counsel for the latter indicated that a number of substantial defences would be raised to South Carolina's claim. These defences included (1) misrepresentation or non-disclosure regarding the retention position on the part of South Carolina; (2) non-disclosure of a previous bad loss record on the business concerned; (3) excessive deductions from premiums; and (4) payment of claims outside
D    the limits of the relevant treaty.

The underwriting agent for United National through whom business was placed with it was Pacific General Agency Inc. ("P.G.A."). The loss adjusters who investigated the claims made against United National were Arthur Campbell-Husted and Co. ("Campbell-Husted"). The principal place of business of both P.G.A. and Campbell-Husted is in
E    the State of Washington.

My Lords, Seven Provinces, Al Ahlia and Arabian Seas ("the re-re-insurers") are, by reasons of their position, remote from the facts in dispute, and obliged to rely for detailed information about them on such documents as they can obtain from South Carolina or P.G.A. and Campbell-Husted. The latter two, however, were not the agents of South Carolina in connection with the relevant transactions; it follows
F    that discovery of documents by South Carolina in the two actions in England would not extend to relevant documents held by them. In this situation, if the re-re-insurers are to achieve their legitimate object of inspecting and copying where necessary, relevant documents held by P.G.A. and Campbell-Husted, some other means have to be found to enable them to do so.

In November 1984, after South Carolina had put forward its claims
G    against the re-re-insurers, but before the two actions in England were begun, the latter had asked P.G.A. if they could inspect the documents in which they were interested at Seattle on 7 December 1984. P.G.A. referred the request to their principal, United National, which in turn consulted South Carolina. It appears that, on the advice of South Carolina's English solicitors, the request for inspection was, in effect, refused. The two actions in England were subsequently begun.
H    My Lords, 28 United States Code, section 1782, provides:

"Assistance to foreign and international tribunals and to litigants before such tribunals. (a) The district court of the district in

33

1 A.C.    South Carolina Co. v. Assurantie N.V. (H.L.(E.))    Lord Brandon of Oakbrook

A    which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure."

On 28 March 1985, before the re-re-insurers had served their points of defence and counterclaim in the two actions against them in England, they applied by motion to the district court of the United States, Western District of Washington, at Seattle, for an order under section 1782 above. The motion, the title of which referred to the two actions in England, asked for an order against P.G.A. and Campbell-Husted involving two matters. The first matter was the production and inspection of numerous specified classes of documents of the kind which could reasonably be expected to have come into being in the course of the transaction of the insurance business which had led to United National, having settled claims itself, to recover from South Carolina as its re-insurers, and to South Carolina then claiming to recover over from the re-re-insurers. The second matter was the appearance of three named persons from P.G.A. and Campbell-Husted to give testimony by deposition. The motion was supported by a memorandum and an affidavit.

Notice of the re-re-insurers' motion was served on P.G.A. and Campbell-Husted. South Carolina was also served with notice of the motion, or otherwise made aware of its having been lodged. Neither P.G.A. nor Campbell-Husted appeared before the district court to resist the application. South Carolina, however, did so appear, and having indicated their objection to it, was given until 29 April 1985 to file its affidavit in opposition. It is to be inferred from the foregoing that neither P.G.A. nor Campbell-Husted objects to producing the documents listed in the motion for inspection, and where necessary for copying, by the re-re-insurers, and that it is only the objection of South Carolina that has stood in the way of their doing so.

On 24 April 1985, before the date fixed for filing its affidavit in opposition in the United States district court, South Carolina issued summonses in the two actions in England. By their summonses South Carolina sought (1) an order that the re-re-insurers should withdraw their application to the United States district court, (2) an injunction

1987 A.C.—2

34

restraining the re-re-insurers from proceeding further with such A
application, and (3) a declaration that the application was an abuse of
the English court.

My Lords, the summonses were heard by Hobhouse J. on 25 April
1985. He declined to make the declaration asked for, but granted South
Carolina injunctions restraining the re-re-insurers until further order
from taking any further steps in their motion before the United States
district court and from enforcing any order made by that court on such B
motion. The main ground on which Hobhouse J. decided to grant such
injunctions appears from pp. 10 and 11 in Appendix I to the printed
case. Having set out what he called the framework of the matter, he
said:

> "It involves a question of principle as to whether or not the English
> court should retain the control of its own procedure and the C
> proceedings that are before it. I have no doubt that the answer to
> be given to that question is that the English court should retain that
> control."

The decision of Hobhouse J. was, as I indicated earlier, affirmed by
the Court of Appeal [1986] Q.B. 348. Griffiths L.J. gave the principal
judgment, with which Slade and Lloyd L.JJ. both agreed. The main D
reason which Griffiths L.J. gave for his decision was similar to that
relied on by Hobhouse J. He said, at p. 358:

> "Once the parties have chosen or accepted the court in which their
> dispute is to be tried they must abide by the procedure of that
> country and that court must be master of its own procedure.
> Litigation is expensive enough as it is, and if a party fighting a case E
> in this country has to face the prospect of fighting procedural battles
> in whatever other jurisdiction his opponent may find a procedural
> advantage it may impose intolerable burdens, and encourage the
> worst and most oppressive form of procedural forum shopping. We
> should set our face against any such situation developing.
>
> "Severe dislocation to the timetable of the English litigation is a F
> readily foreseeable consequence of unrestrained access to foreign
> procedural remedies. This is likely to cause hardship or inconvenience
> not only to the other party to that litigation but will also affect
> other litigants whose cases are listed upon forecasts dependent upon
> litigation being conducted in accordance with our own rules of
> procedure. As the judge said, the court will lose control of its own G
> proceedings. Furthermore, one party might be able to gain a very
> unfair advantage in the English procedure if he was able to take the
> deposition of and cross-examine a witness whom he would never
> call on his own behalf at the trial, for example, the employees or
> business associates of his opponent. I think Mr. Sumption [counsel
> for the re-re-insurers] recognised this when he said he would be
> content to accept the stay in respect of his application to take the H
> depositions of the witnesses from P.G.A. and Arthur Campbell-
> Husted & Co. I am therefore satisfied that as a matter of principle
> the court must have an inherent jurisdiction to make any necessary

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          Lord Brandon
                                                                          of Oakbrook

A    order to ensure that the litigation is conducted in accordance with
     its own procedures."

     My Lords, before examining the question whether Hobhouse J. and
     the Court of Appeal were right or wrong to grant the injunctions now
     appealed against, it is necessary to draw attention to a number of
     preliminary matters.

B    The first matter to which attention needs to be drawn is the existence
     of an essential difference between the civil procedures of the High Court
     in England on the one hand, and of courts of the United States on the
     other, with regard to what may be compendiously described as pre-trial
     discovery. Under the civil procedure of the High Court in England, pre-
     trial discovery may take two forms. The first form, which is far and
C    away the more common, is by way of disclosure and inspection of
     relevant documents under R.S.C., Ord. 24. The second form, which is
     comparatively rare, is by way of the asking and answering on oath of
     interrogatories under R.S.C., Ord. 26. Such discovery is, however,
     subject to two important limitations, one relating to its scope and the
     other to the stage of an action at which it normally takes place. So far as
     the scope of discovery is concerned, it is limited to the disclosure and
D    inspection of documents in the possession or power of the parties to the
     action, or to the asking and answering on oath of interrogatories as
     between such parties. So far as the stage of an action at which discovery
     normally takes place is concerned, it is the general rule that the two
     forms of discovery to which I have referred do not take place until the
     formal pleadings by both sides have been completed and the issues in
     disputes thereby fully and clearly defined. In this connection, however,
E    it is right to say that the court has power to order either form of
     discovery at any stage of an action, including a stage earlier than the
     completion of pleadings; but such power is rarely exercised and then
     only on special grounds, for instance when discovery is needed in order
     that justice may be done in interlocutory proceedings.

F    Because of the first limitation to which I have referred, there is no
     way in which a party to an action in the High Court in England can
     compel pre-trial discovery as against a person who is not a party to such
     action, either by way of the disclosure and inspection of documents in
     his possession or power, or by way of giving oral or written testimony. I
     would, however, stress the word "compel" which I have used in the
     preceding sentence, for there is nothing to prevent a person who is not a
G    party to an action from voluntarily giving to one or other or both parties
     to it either disclosure and inspection of documents in his possession or
     oral or written testimony.

     The procedure of the High Court in England, while not enabling
     parties to an action to compel pre-trial discovery as against a person
     who is not a party to such action, nevertheless affords ample means by
     which such a person, provided that he is within the jurisdiction of the
H    court, can be compelled either to give oral testimony, or to produce
     documents in his possession or power, at the trial of the action itself.
     Under R.S.C., Ord. 38, Part II, such a person may be compelled to give
     oral testimony at the trial by the issue and service on him of a subpoena

**South Carolina Co. v. Assurantie N.V. (H.L.(E.))**    **[1987]**

A

ad testificandum, or to produce documents in his power or possession (so long as they are adequately described and defined) by the issue and service on him of a subpoena duces tecum. The issue of such subpoenas is in the first instance a ministerial rather than a judicial act, and a party may therefore issue subpoenas of either kind as he thinks fit; the court, however, has power to set aside any subpoena on proper grounds, for instance, irregularity of form, irrelevance, oppressiveness or abuse of the process.

B

The procedure of the High Court in England includes a further power of the court, conferred on it by R.S.C., Ord. 38, r.13, to order any person to attend any proceedings in a cause or matter and produce any document to be specified or described in the order, the production of which appears to the court to be necessary for the purpose of that proceeding. It has, however, long been established that this rule is not intended to be used, and cannot properly be used, to enable a party to an action to obtain pre-trial disclosure and inspection of documents in the possession or power of a person who is not a party to such action. It is a rule of limited application, involving the production of a document or documents to the court itself rather than to either of the parties to an action.

C

My Lords, the civil procedure of courts in the United States differs essentially from that in the High Court in England in that under it parties to an action can compel, as against persons who are not parties to it, a full measure of pre-trial discovery, including both the disclosure and production for inspection and copying of documents, and also the giving of oral or written testimony. This power of compulsion can be, and regularly is, used at an early stage of an action.

D

The second matter to which attention needs to be drawn is that 28 United States Code, section 1782, as appears from its terms which I set out earlier, expressly provides that an order made under it may prescribe the practice and procedure, which may be in whole or in part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing; and that, to the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Procedure.

E

F

Reference was made in the two courts below and again in your Lordships' House to certain United States authorities which bear on the exercise of a district court's powers under section 1782. In a decision of the United States District Court of Pennsylvania, *In re Court of the Commissioner of Patents for Republic of South Africa* (1980) 88 F.R.D. 75, 77, Judge Newcomer said:

G

"[1, 2] It is of great concern to this court that counsel for opponent has not been able to represent to this court that the documents and testimony for which opponents request a discovery order are discoverable under South African law. Indeed, *discussions with* counsel lead this court to suspect that these materials would *not* be available through South African procedures. Clearly, this court should not by its exercise of the discretion allowed it under section

H

A          1782 allow litigants to circumvent the restrictions imposed on discovery by foreign tribunals. Few actions could more significantly impede the development of international co-operation among courts than if the courts of the United States operated to give litigants in foreign cases processes of law to which they are not entitled in the appropriate foreign tribunals."

B     Further in *John Deere Ltd. and Deere & Co. v. Sperry Corporation* (1985) 754 F.2d 132, 135, Judge Garth, giving the judgment of the United States Court of Appeals for the Third Circuit, said:

         "As a co-operative measure, section 1782 cannot be said to ignore those considerations of comity and sovereignty that pervade international law. A grant of discovery that trenched upon the
C       clearly established procedures of a foreign tribunal would not be within section 1782."

         My Lords, it was contended for South Carolina, on the basis of these authorities, that the re-re-insurers' application to the district court of the United States was bound to fail. The ground relied on was that, since the procedure of the High Court in England did not enable parties to an action to compel pre-trial discovery against persons not parties to it, the
D     district court would not permit the re-re-insurers to circumvent that limitation by granting them an order for such discovery under section 1782.

         It appears to me that there may well be considerable force in this contention. It is not possible, however, for your Lordships, on the limited material before you, to decide for yourselves in advance how the
E     United States district court would see fit to exercise the discretion conferred on it by section 1782, in the particular circumstances of this case, and having regard to the characteristics of civil procedure in the High Court in England which I endeavoured to summarise earlier.

         The third matter to which attention needs to be drawn concerns certain changes in the positions of the parties which have occurred since
F     the original hearing of South Carolina's two summonses before Hobhouse J. The first change of position relates to the memorandum lodged in support of the re-re-insurers' application to the United States district court, in which they asserted:

         "As evidenced by the attached affidavit of Francis Otley Mackie the petitioners herein are seeking this court's assistance in obtaining information and documentation which is necessary, material and relevant to litigation pending in the courts of England for use in
G     those proceedings. The affidavit further establishes that were all the parties residents of England, the requested discovery would be permitted pursuant to the rules of procedure and discovery in England. Accordingly, the petitioners' motion for taking of testimony and the production of documents should be granted."

H     Mr. Mackie, whose affidavit is referred to at the beginning of the above passage, is a partner in the firm of solicitors acting for the re-re-insurers in the two actions in England. The relevant part of that affidavit is paragraph 12, in which Mr. Mackie deposed, inter alia, as follows:

38

Lord Brandon
of Oakbrook           **South Carolina Co. v. Assurantie N.V. (H.L.(E.))**           [1987]

"Discovery of such documentation and testimony is permitted     A
according to the English rules of procedure . . . . Petitioners would
be able to obtain writs of subpoena duces tecum issued by the High
Court of England . . . directing these entities to produce the
documents requested and directing them individually to appear and
give testimony at depositions."

These statements in the re-re-insurers' memorandum and Mr.     B
Mackie's affidavit were criticised by Hobhouse J. and by Griffiths L.J. in
the Court of Appeal as giving such an incomplete and inaccurate
account of the procedure of the High Court in England with regard to
discovery as seriously to mislead the United States district court. Griffiths
L.J., however, expressly acquitted Mr. Mackie of any deliberate intention
to mislead. Before your Lordships Mr. Robert Alexander, who appeared     C
as leading counsel for the appellant re-re-insurers, accepted unreservedly
that the passages in question were incomplete and inaccurate, and as a
consequence liable to mislead. The main error, as will be apparent, is
the failure to distinguish clearly between compelling a person not a party
to an action to give pre-trial discovery on the one hand, and compelling
him to give oral evidence and produce documents at the trial itself on
the other hand. I think that it is right for your Lordships to say that the     D
criticisms of that error made by the two courts below were fully justified
and that it is most unfortunate that it should ever have occurred. That
said, however, having regard to the admission of such error freely made
by Mr. Alexander for the re-re-insurers, and having regard further to
the summary which I endeavoured to give earlier of the relevant
procedure of the High Court in England, it seems to me that the error is     E
no longer of significance in the consideration of this appeal.

The second change of position concerns the scope of the re-re-
insurers' application to the United States district court. As I indicated
earlier, that application as originally framed covered two distinct matters:
first, the production and inspection of specified classes of documents;
and, secondly, the appearance of three named persons from P.G.A. and
Campbell-Husted to give testimony by depositions. On the face of the     F
motion it appeared that what the re-re-insurers were seeking in relation
to the second of these matters was the taking of oral evidence from the
persons named relevant to the issues in the English actions, such
evidence to be recorded in depositions. Before the Court of Appeal,
however, Mr. Sumption for the re-re-insurers expressly abandoned any
intention to achieve this end, and before your Lordships Mr. Alexander     G
made it clear that the appearance of the named persons was only sought
for the purpose of their producing and identifying the relevant documents
held by P.G.A. and Campbell-Husted, and in no way for the purpose of
their giving oral evidence to be recorded in depositions with regard to
issues of fact arising in the English actions.

The third change of position arises from the stage which the two
actions in England have now reached. At the time when South Carolina's     H
applications first came before Hobhouse J. the re-re-insurers had not yet
served their points of defence and counterclaim, so that the issues
between the parties had not yet been defined by pleadings and no

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          Lord Brandon
                                                                          of Oakbrook

A  discovery of documents as between the parties had yet taken place. Hobhouse J. regarded this as a significant matter in exercising the discretion to grant injunctions which he held that he had. During the hearing before the Court of Appeal, however, the re-re-insurers served points of defence and counterclaim, and since then discovery of documents as between the parties has taken place. The actions in England are, therefore, much further advanced than they were when

B  South Carolina's applications first came before the judge.

The fourth change of position is this. Following the decision of the Court of Appeal South Carolina arranged for the re-re-insurers to have controlled access to certain documents held by P.G.A. and Campbell-Husted. According to the re-re-insurers, however, substantial restrictions were imposed by South Carolina on the documents which they were

C  allowed to inspect under this arrangement. It is the re-re-insurers' case, therefore, that their application to the United States district court remains necessary in order to enable them to have inspection of other documents to which, by reason of the control exercised by South Carolina, they have not so far had access. Your Lordships were not asked to go into the details of these matters, which are in dispute between the parties, and it is right, I think, for the purposes of this

D  appeal for your Lordships to proceed on the basis that the re-re-insurers have at least an arguable case with regard to them.

The fifth and final matter to which attention should be drawn is that the judge of the United States district court before whom the re-re-insurers' application under section 1782 is pending has helpfully directed that further proceedings in that application should be stayed until the determination first of the re-re-insurers' appeal to the Court of Appeal,

E  and then of their further appeal to your Lordships' House.

My Lords, having drawn attention to these various preliminary matters, I turn to consider whether the injunctions granted by Hobhouse J. and affirmed by the Court of Appeal should be allowed to stand. I put the question in that form because of the various ways described by me above in which the positions of the parties have

F  changed since the original hearing before Hobhouse J.

As appears from the passages from the judgments of Hobhouse J. and Griffiths L.J. which I set out earlier, both courts below treated South Carolina's applications for injunctions as raising matters of principle for decision. I have no doubt that they were right so to treat them. Putting the point differently, the question which your Lordships have to decide is whether the circumstances of the case are such as to

G  give the court power to grant the injunctions at all, and not whether, there being such power, it was a proper exercise of discretion to grant them rather than to refuse them.

In considering the question which I have formulated, it will be helpful in the first place to state certain basic principles governing the grant of injunctions by the High Court. The first basic principle is that

H  the power of the High Court to grant injunctions is a statutory power conferred on it by section 37(1) of the Supreme Court Act 1981, which provides that "the High Court may by order (whether interlocutory or final) grant an injunction in all cases in which it appears to the court to

A

be just and convenient to do so." That provision is similar to earlier provisions of which it is the successor, namely, section 45(1) of the Supreme Court of Judicature (Consolidation) Act 1925 and section 25(8) of the Supreme Court of Judicature Act 1873. The second basic principle is that, although the terms of section 37(1) of the Act of 1981 and its predecessors are very wide, the power conferred by them has been circumscribed by judicial authority dating back many years. The nature of the limitations to which the power is subject has been considered in a number of recent cases in your Lordships' House: *Siskina (Owners of cargo lately laden on board) v. Distos Compania Naviera S.A.* [1979] A.C. 210; *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557; and *British Airways Board v. Laker Airways Ltd.* [1985] A.C. 58. The effect of these authorities, so far as material to the present case, can be summarised by saying that the power of the High Court to grant injunctions is, subject to two exceptions to which I shall refer shortly, limited to two situations. Situation (1) is when one party to an action can show that the other party has either invaded, or threatens to invade, a legal or equitable right of the former for the enforcement of which the latter is amenable to the jurisdiction of the court. Situation (2) is where one party to an action has behaved, or threatens to behave, in a manner which is unconscionable. The third basic principle is that, among the forms of injunction which the High Court has power to grant, is an injunction granted to one party to an action to restrain the other party to it from beginning, or if he has begun from continuing, proceedings against the former in a foreign court. Such jurisdiction is, however, to be exercised with caution because it involves indirect interference with the process of the foreign court concerned.

B

C

D

E

The latter form of injunction may be granted in such circumstances as to constitute an exception to the second basic principle stated above. This may occur where one party has brought proceedings against another party in a foreign court which is not the forum conveniens for the trial of the dispute between them, as that expression was defined and applied in *MacShannon v. Rockware Glass Ltd.* [1978] A.C. 795. In such a case the party who has brought the proceedings in the foreign court may not, by doing so, have invaded any legal or equitable right of the other party, nor acted in an unconscionable manner. The court nevertheless has power to restrain him from continuing his foreign proceedings on the ground that there is another forum in which it is more appropriate, in the interests of justice, that the dispute between the parties should be tried. The present case, however, is not concerned with a choice between two competing forums for the trial of a dispute, and the exception to which I have just referred is therefore not relevant to it.

F

G

The power of the court to grant *Mareva* injunctions may also, before it was statutorily recognised, have been a further exception to the second basic principle stated above. That power, however, has now been expressly recognised by section 37(3) of the Supreme Court Act 1981, and again the present case is in no way concerned with it.

H

Ignoring these exceptions, therefore, and applying the basic principles which I have stated to the present case, the first question for consideration is whether South Carolina has shown that what I have

1 A.C.                    South Carolina Co. v. Assurantie N.V. (H.L.(E.))              Lord Brandon
                                                                                       of Oakbrook

A  described above as situation (1) exists. Has South Carolina shown that
   the re-re-insurers, by beginning and intending to prosecute their
   application to the United States district court, has invaded, or threatened
   to invade, a legal or equitable right of South Carolina for the
   enforcement of which the re-re-insurers are amenable to the jurisdiction
   of the court? It was contended by Mr. Rokison on behalf of South
   Carolina that South Carolina did indeed have such a legal or equitable
B  right, but it appeared to me that he had great difficulty in formulating
   the legal or equitable right on which he relied. Neither of the courts
   below decided as they did on the basis that the re-re-insurers had by
   their conduct invaded a legal or equitable right of South Carolina, and I
   cannot see how such a case can be made out. I would therefore hold
   that South Carolina has not shown that situation (1) exists.

C      The second question for consideration is whether South Carolina has
   shown that what I have described above as situation (2) exists. Has
   South Carolina shown that the re-re-insurers, by beginning and intending
   to prosecute their application to the United States district court, have
   acted in a manner which is unconscionable? It is difficult, and would
   probably be unwise, to seek to define the expression "unconscionable
   conduct" in anything like an exhaustive manner. In my opinion, however,
D  it includes, at any rate, conduct which is oppressive or vexatious or
   which interferes with the due process of the court.

       Although neither Hobhouse J. at first instance, nor Griffiths L.J. in
   the Court of Appeal, stated in terms that they thought it right to grant
   injunctions on the ground that the conduct of the re-re-insurers in
   making their application to the United States district court was
E  unconscionable, it seems to me to be implicit in their reasons that they
   regarded it as being so. Hobhouse J. based his decision expressly on the
   need for the court to retain control of its own process, with the
   necessary implication that the re-re-insurers' conduct was an interference
   with such control and therefore an interference with the due process of
   the court. Griffiths L.J. based his decision on three grounds: first (like
   Hobhouse J.), that the court must retain control of its own process;
F  secondly, that the civil procedure of United States courts is significantly
   different from that of English courts, and the parties, by submitting to
   the jurisdiction of an English court, must be taken to have accepted its
   procedure; and, thirdly, that unrestricted access to foreign procedural
   remedies was liable to produce hardship in the form of increased costs
   and inconvenience. I shall consider each of these grounds in turn.

G      I consider, first, the ground that the re-re-insurers' conduct was an
   interference with the court's control of its own process. It is not clear to
   me why this should be so. Under the civil procedure of the High Court
   the court does not, in general, exercise any control over the manner in
   which a party obtains the evidence which he needs to support his case.
   The court may give him help, certainly; for instance by discovery of
   documents inter partes under R.S.C., Ord. 24; by allowing evidence to
H  be obtained or presented at the trial in various ways under Orders 38
   and 39; and by the issue of subpoenas under Part II of Order 38, to
   which I referred earlier. Subject, however, to the help of the court in
   these various ways, the basic principle underlying the preparation and

A    presentation of a party's case in the High Court in England is that it is
for that party to obtain and present the evidence which he needs by his
own means, provided always that such means are lawful in the country
in which they are used. It was not in dispute that, if P.G.A. and
Campbell-Husted, uninfluenced by the control exercised over them by
South Carolina on the advice of the latter's English solicitors, had freely
and voluntarily allowed the re-re-insurers to inspect, and where necessary
B    to copy, all the documents referred to in the latter's application, it could
not possibly have been said that there had been any interference with
the English court's control of its own process. That being so, I cannot
see why, since the Federal law of the United States authorises an
application of the kind made by the re-re-insurers in this case, the
making of such application, which may or may not succeed in whole or
in part, should be regarded as being such an interference either. I
C    cannot, therefore, agree with the first ground of decision relied on by
the Court of Appeal.

I consider, secondly, the ground that the procedure of United States
courts is significantly different from that of English courts, and the
parties, by submitting to the jurisdiction of an English court, must be
taken to have accepted its procedure. It is, no doubt, true that the re-re-
D    insurers, by entering unconditional appearances in the two English
actions, can be said in a certain sense to have accepted the procedure of
that court. Your Lordships were not, however, informed of any ground
on which the re-re-insurers could, with any prospect of success, have
contested the jurisdiction of the High Court in England in respect of the
disputes which are the subject matter of the two actions concerned. Be
that as it may, I cannot see that the re-re-insurers, by seeking to
E    exercise a right potentially available to them under the Federal law of
the United States, have in any way departed from, or interfered with,
the procedure of the English court. All they have done is what any party
preparing his case in the High Court here is entitled to do, namely to try
to obtain in a foreign country, by means lawful in that country,
documentary evidence which they believe that they need in order to
prepare and present their case. It was said that the re-re-insurers could
F    have applied to the High Court under R.S.C., Ord. 39, r. 2, for letters
of request to issue to the proper judicial authorities in the United States.
But 28 United States Code, section 1782, allows an application to be
made either indirectly by the foreign court concerned or directly by an
interested party, and I can see no good reason why the re-re-insurers
should not have chosen whichever of these two alternatives they
G    preferred. It is, I think, of the utmost importance to appreciate that the
reason why English procedure does not permit pre-trial discovery of
documents against persons who are not parties to an action is for the
protection of those third parties, and not for the protection of either of
the persons who are parties to the action. I cannot, therefore, agree
with the second ground of decision relied on by the Court of Appeal.

H    I consider, thirdly, the ground that unrestrained access to foreign
procedural remedies was liable to cause hardship in the form of increased
costs and inconvenience. So far as increased costs are concerned,
Griffiths L.J. was referring to increased costs incurred or to be incurred

1 A.C.          South Carolina Co. v. Assurantie N.V. (H.L.(E.))          Lord Brandon
                                                                          of Oakbrook

A   by South Carolina in contesting the proceedings in the United States district court. If, however, the re-re-insurers are right in their contention that they have not yet, by reason of the control exercised by South Carolina, had access to all the documents to which they believe that they need access in order to prepare their case in the two English actions, it can reasonably be said that any liability for increased costs incurred by South Carolina is in a sense self-imposed. If they had been

B   willing to permit P.G.A. and Campbell-Husted to allow the re-re-insurers to inspect, and where necessary copy, all the documents to which the latter had sought access, the making or prosecution of the re-re-insurers' application to the United States district court would not have been necessary. In this connection it is right to stress what I have already stated earlier, that P.G.A. and Campbell-Husted, left to

C   themselves, would voluntarily have given the re-re-insurers permission to inspect, and where necessary copy, all the documents to which the latter sought access. It was said for South Carolina that the documents not so far disclosed were not relevant to the issues in the two English actions. If that is so, I cannot help asking myself why South Carolina has gone to such lengths to prevent the disclosure of such documents. So far as inconvenience is concerned, it is apparent that Griffiths L.J. had two

D   kinds of inconvenience in mind: first inconvenience in relation to the two actions immediately concerned in the form of delay in getting them tried and possible prolongation of the trial when it took place; and, secondly, inconvenience to other litigants by reason of the consequent dislocation of the time-table for the trial of other cases in the congested list of the Commercial Court. So far as delay is concerned, it is perhaps

E   ironical that the only result of South Carolina seeking to obtain injunctions against the re-re-insurers has been to increase greatly whatever delay the re-re-insurers' application, if allowed to proceed unopposed, might otherwise have caused. I recognise that the re-re-insurers' application may result in some increased costs to South Carolina, but these could, as I indicated earlier, have easily been avoided by a different attitude on South Carolina's part. I recognise also

F   that some inconvenience of the two kinds to which I have referred may arise from the re-re-insurers' application; but, if there is a reasonable possibility that such inconvenience is the price of justice being fully done at the trial of the two English actions, then it seems to me to be a price which must necessarily be paid. In any event, I cannot see how the re-re-insurers' application, made in what may prove to be a just cause, can,

G   solely on the ground that it occasions the extra costs and inconvenience under discussion, be categorised as an interference with the court's control of its own process. The court can control any excessive delay by fixing such date for the trial of the two actions as may be just, and nothing which the re-re-insurers can do can take away or interfere with the court's control in this respect. As to increased costs these will, no doubt, be a matter for the consideration of the Commercial judge at the

H   conclusion of the trial, and I do not think it would be right for your Lordships to express any views, one way or the other, about such matter. For these reasons I cannot agree with the third ground of decision relied on by the Court of Appeal.

**Lord Brandon
of Oakbrook**     South Carolina Co. v. Assurantie N.V. (H.L.(E.))     **[1987]**

    A

My Lords, the result of the views which I have expressed is that there was, in my opinion, no such interference with the procedure of the English High Court by the re-re-insurers as would amount to unconscionable conduct on their part, and so justify, in accordance with the basic principles which I stated earlier, the exercise of the court's power to grant injunctions against them. It follows that I would allow the appeal and set aside the orders of Hobhouse J. dated 25 April 1985 and of the Court of Appeal dated 23 May 1985. As regards costs in your Lordships' House, I have no doubt that South Carolina should pay the costs of the re-re-insurers. As regards costs in the two courts below, different considerations may apply, first, because of the breadth of the re-re-insurers' application to the United States district court as originally framed, and, secondly, because of the misleading nature, in the respect to which I referred earlier, of the memorandum and affidavit lodged in support of such application. I therefore think it desirable that, in relation to those costs, your Lordships should have the assistance of further argument from counsel on either side.

    B

    C

LORD BRIGHTMAN. My Lords, in this appeal I respectfully differ from the conclusion reached by the Court of Appeal. I have had the privilege of studying in advance the speech of my noble and learned friend, Lord Brandon of Oakbrook, and I find myself wholly convinced by his reasons for moving that this appeal should be allowed. I agree with the orders that he proposes should be made.

    D

LORD MACKAY OF CLASHFERN. My Lords, I have had the advantage of reading in draft the speeches prepared by my noble and learned friends, Lord Brandon of Oakbrook and Lord Goff of Chieveley. I agree that it would be wise to make the reservation on the matter to which Lord Goff of Chieveley has drawn attention but, like him, I agree with the conclusion reached by Lord Brandon of Oakbrook and with the reasons he has given for reaching that conclusion.

    E

LORD GOFF OF CHIEVELEY. My Lords, I find myself to be in respectful agreement with the conclusion reached by my noble and learned friend, Lord Brandon of Oakbrook, on this appeal, and with the reasons given by him for reaching that conclusion. I wish, however, to draw attention to one matter upon which I have certain reservations, and to which I attach importance.

    F

I am reluctant to accept the proposition that the power of the court to grant injunctions is restricted to certain exclusive categories. That power is unfettered by statute; and it is impossible for us now to foresee every circumstance in which it may be thought right to make the remedy available. In particular, I do not regard the exercise of the power to restrain a person from commencing or continuing proceedings in a foreign forum as constituting an exception to certain limited categories of case in which it has been said that the power may alone be exercised. In my opinion, restraint of proceedings in a foreign forum simply provides one example of circumstances in which, in the interests of justice, the power to grant an injunction may be exercised. I have

    G

    H

1 A.C.                    South Carolina Co. v. Assurantie N.V. (H.L.(E.))              Lord Goff
                                                                                    of Chieveley

A   elsewhere explained in detail, for reasons which it is unnecessary for me
    to repeat in the present case, why, on the basis of a line of established
    authority, I am at present inclined to the opinion that an injunction has
    generally been granted in such circumstances for the purpose of
    protecting the English jurisdiction, and why I doubt, with all respect,
    whether the speech of my noble and learned friend, Lord Scarman, in
    *Castanho v. Brown & Root (U.K.) Ltd.* [1981] A.C. 557, contains the
B   last word on the subject. I refer, in this connection, to my judgment in
    *Bank of Tokyo Ltd. v. Karoon* (Note) [1987] A.C. 45.

    Even so, I can see no basis for the grant of an injunction in the
    present case. In particular, in agreement with my noble and learned
    friend Lord Brandon of Oakbrook, and respectfully differing from
    Hobhouse J. and the Court of Appeal, I do not consider that the grant
C   of the injunction can be justified as necessary to protect the English
    jurisdiction on the facts of the present case. In this, I find myself
    entirely in agreement with the reasons expressed in the speech of my
    noble and learned friend, Lord Brandon of Oakbrook. I therefore agree
    that the appeal should be allowed.

                                                        *Appeal allowed with costs.*

D
        *Solicitors: Clyde & Co.; Herbert Smith & Co.*

                                                                        J. A. G.

E

                              _____

F                                NOTE

                          [COURT OF APPEAL]

            BANK OF TOKYO LTD. v. KAROON AND ANOTHER

    1984  April 3, 4, 5;                      Ackner and Robert Goff L.JJ.
G         May 24

    *Injunction—Jurisdiction to grant—Foreign proceedings—Interpleader*
      *proceedings to determine ownership of money held by bank in*
      *England—Bank's subsidiary in New York providing information*
      *concerning claimant and his accounts—Claimant bringing pro-*
      *ceedings in New York against subsidiary—Whether bank entitled*
      *to injunction to restrain proceedings in New York*
H
        APPEAL from Bingham J.
        In 1983 Mr. Majid Karoon started proceedings in New York against the
    Bank of Tokyo Ltd., a Japanese bank carrying on business in London, and also
    against a wholly-owned subsidiary of that bank, the Bank of Tokyo Trust Co.