NO. 24-4624

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

IN RE EX PARTE APPLICATION OF

GREGORY GLINER,

APPLICANT-APPELLANT.

On Appeal from the United States District Court
for the Northern District of California
The Honorable James Donato
District Court Case No. 3:24-mc-80087-JD

**BRIEF OF AMICUS CURIAE AMERICAN CIVIL LIBERTIES UNION OF
NORTHERN CALIFORNIA, IN SUPPORT OF NO PARTY.**

Nicolas A. Hidalgo (SBN 339177)
   *Counsel of Record*
Matthew T. Cagle (SBN 286101)
Nicole A. Ozer (SBN 228643)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN    CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
nhidalgo@aclunc.org
mcagle@aclunc.org
nozer@aclunc.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29(a)(4)(A) of the Federal Rules of Appellate Procedure, *amicus curiae* states that it does not have a parent corporation and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT OF INTEREST ............................................................................ ix

SOURCE OF AUTHORITY TO FILE ................................................................. x

FED. R. APP. P. 29(a)(4)(E) STATEMENT ....................................................... x

INTRODUCTION & SUMMARY OF ARGUMENT ............................................ 1

ARGUMENT ...................................................................................................... 3

    I.   Anonymous Online Speech is Important and Must be Safeguarded on U.S.-based Services. .............................................................................................. 3

        A.  Free Speech is a Foundational Principle of The United States and Its Protections Apply Online. ....................................................................... 3

        B.  Online Speech on U.S.-based Services Can Originate Anywhere and Reach a Global Audience. ...................................................................... 5

    II.  Section 1782 Should Not Be Used to Circumvent the Rigorous *Highfields* Test for Unmasking Anonymous Online Speakers. ..................................... 8

        A.  The *Highfields* Test for Unmasking Anonymous Speakers Protects Free Speech. ........................................................................................... 8

        B.  The Section 1782 *Intel* Test was Not Designed to Help Courts Decide When to Unmask Anonymous Online Speakers and Routinely Fails to Protect Free Speech as a Result. .......................................................... 10

    III. Foreign and Domestic Litigants are Exploiting Section 1782 to Improperly Unmask Anonymous Online Speakers on U.S.-Based Services. ............... 14

        A.  Foreign Litigants Frequently Exploit Section 1782 to Unmask Online Critics. .................................................................................................. 15

B.   American Litigants Are Exploiting Section 1782 to Circumvent U.S. Free Speech Protections. .........................................................................17

IV. U.S. Courts Should Apply the *Highfields* Test to All Section 1782 Applications Seeking to Unmask Anonymous Online Speakers. ...............19

A.   Applying *Highfields* to all Section 1782 Unmasking Cases Is Compatible with the Statute's Purposes.................................................19

B.   *Highfields* Should Apply to all Section 1782 Unmasking Applications Due to the Compelling Free Speech Interests of U.S. Audiences, Services, and Courts. .............................................................................21

CONCLUSION.........................................................................................27

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING ................................1

CERTIFICATE OF COMPLIANCE.........................................................................2

# TABLE OF AUTHORITIES

**Cases** ........................................................................................ **Page(s)**

*Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT,
  2021 WL 4942658 (D. Ariz. Oct. 22, 2021) .........................................2

*Bursey v. United States*,
  466 F.2d 1059 (9th Cir. 1972) ................................................................24

*Dendrite Intern., Inc. v. Doe No. 3*,
  775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) ........................ 8, 9, 14

*Desai v. Hersh*,
  719 F. Supp. 670 (N.D. Ill. 1989) ..........................................................24

*Doe v. 2TheMart.com Inc.*,
  140 F. Supp. 2d 1088 (W.D. Wash. 2001) .............................................4

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ............................................................... ix

*Gonzalez v. Google LLC*,
  598 U.S. 617 (2023) ............................................................................... ix

*Herbert v. Lando*,
  441 U.S. 153 (1979) ................................................................................26

*hey, inc. v. Twitter, Inc.*,
  No. 23-15911 (9th Cir. 2024) ................................................................ ix

*Highfields Cap. Mgmt., L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005)............................................ *passim*

*In re Al-Baldawi*, No. 5:22-MC-80329-EJD,
  2023 WL 3603731 (N.D. Cal. May 23, 2023) .....................................16

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011) ................................................................2

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
  608 F. Supp. 3d 868 (N.D. Cal. 2022)..................................... 9, 10, 22

*In re Eshelman*, No. 5:23-MC-80015,
2023 WL 3361192 (N.D. Cal. May 9, 2023) .................................................. 17, 18

*In re Ex Parte Application of Fredric N. Eshelman*, No. 5:23-mc-80015,
(Dist. Ct. N.D. Cal. 2023) ................................................................................. ix

*In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS,
2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) ............................................ 20, 21

*In re Plan. & Dev. of Educ., Inc.*, No. 21-MC-80242-JCS,
2022 WL 228307 (N.D. Cal. Jan. 26, 2022) ................................................ 15, 26

*In re Sungrove Co., Ltd.*, No. 23-MC-80080-BLF,
2023 WL 2699987 (N.D. Cal. Mar. 28, 2023) ...................................................16

*In re Takada*, No. 22-MC-80221-VKD,
2023 WL 1452080 (N.D. Cal. Feb. 1, 2023) .......................................................20

*In re Team Co., Ltd.*, No. 22-MC-80183-VKD,
2023 WL 1442886 (N.D. Cal. Feb. 1, 2023) ............................................... 15, 16

*In re Yasuda*, No. 19-MC-80156-TSH,
2019 WL 7020211 (N.D. Cal. Dec. 20, 2019) ...................................................20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ........................................................ 10, 11, 13, 20

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) .............................................................................................4

*Med. Corp. Seishinkai v. Google LLC*, No. 5:22-MC-80282-EJD,
2023 WL 3726499 (N.D. Cal. May 30, 2023) ...................................................16

*Mirza v. Yelp, Inc.*, No. 21 MISC. 621 (LGS),
2021 WL 3772039 (S.D.N.Y. Aug. 25, 2021) ...................................................16

*Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-CV-10803,
2014 WL 10319321 (E.D. Mich. July 2, 2014)....................................................10

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) .................................................................. 2, 4, 26

*Palko v. State of Connecticut*,
   302 U.S. 319 (1937) ...................................................................4

*Reno v. ACLU*,
   521 U.S. 844 (1997) ........................................................... ix, 4

*SaleHoo Grp., Ltd. v. ABC Co.*,
   722 F. Supp. 2d 1210 (W.D. Wash. 2010) .............................2

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ...................................................................26

*Sinclair v. TubeSockTedD*,
   596 F. Supp. 2d 128 (D.D.C. 2009) .......................................10

*Sony Music Ent. Inc. v. Does 1-40*,
   326 F. Supp. 2d 556 (S.D.N.Y. 2004) .....................................4

*Stanley v. Georgia*,
   394 U.S. 557 (1969) ................................................................23

*Thunder Studios, Inc. v. Kazal*,
   13 F.4th 736 (9th Cir. 2021) .................................................23

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR,
   2021 WL 4124216 (N.D. Cal. Sept. 9, 2021).............................. *passim*

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) ........................................................... ix

*Uchida v. YouTube, LLC*, No. 22-MC-80155-JSC,
   2022 WL 4923241 (N.D. Cal. Oct. 3, 2022) .......................16

*United States v. 18 Packages of Mags.*,
   238 F. Supp. 846 (N.D. Cal. 1964).......................................24

*Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*,
   289 Va. 426 (2015)..................................................................24

*Zuru, Inc. v. Glassdoor, Inc.*,
   614 F. Supp. 3d 697 (N.D. Cal. 2022)........................... 12, 13

**Statutes** ........................................................................................... **Page(s)**

28 U.S.C. § 1782 ............................................................................... *passim*

**Other Authorities** ......................................................................... **Page(s)**

About iCloud Private Relay (June 2, 2023), https://support.apple.com/en-us/HT212614. ....................................................................................7

Brian Frederick, *The Top 100 Social Media Influencers Worldwide*, Search Engine Journal (Jan. 10, 2023), https://www.searchenginejournal.com/top-social-media-influencers/475776/. ...................................................................6

Dynadot FAQ, How do I add domain privacy to a domain in my Dynadot account? (Nov. 6, 2023) https://www.dynadot.com/community/help/question/add-privacy ...............................................................................................7

Edward F. Maluf, Eddy Salcedo, & Owen R.Wolfe, *The Expanding Use of 28USC § 1782*,Seyfarth Shaw LLP (Jun. 7, 2021), https://www.seyfarth.com/news-insights/the-expanding-use-of-28-usc-1782.html. .............................................14

GoDaddy Domains Help, What is Domain Privacy? (last visited Sep. 5, 2024) https://www.godaddy.com/help/what-is-domain-privacy-41145. .........................7

Internet/Broadband Fact Sheet, Pew Research Center (Jan. 31, 2024), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/#home-broadband-use-over-time.....................................................................11

J. Alexander Lawrence & Geary Choe, *ForeignCompanies Can Use 28 U.S.C. §1782 to Unmask Anonymous Internet Posters,* Morrison & Foerster LLP (Dec. 10, 2019), https://www.lexology.com/library/detail.aspx?g=fe50a462-8926-4c8f-aa5e-b113e41469f7. .............................................................................15

Leticia Polese, 10 Non-Verified Twitter Accounts With the Most Followers, Audiense (Sep. 12, 2021), https://resources.audiense.com/en/blog/top-non-verified-twitter-accounts-with-the-most-followers. .............................................6

Press Release, ACLU Commends Supreme Court Decisions Allowing Free Speech Online To Flourish, American Civil Liberties Union (May 18, 2023), https://www.aclu.org/press-releases/aclu-commends-supreme-court-decisions-allowing-free-speech-online-to-flourish.............................................................25

Press Release, EFF Warns Supreme Court that Users' Speech is at Stake When
   Increasing Platforms' Liability, Elec. Frontier Found (Jan. 19, 2023),
   https://www.eff.org/press/releases/ff-warns-supreme-court-users-speech-stake-
   when-increasing-platforms-liabi...........................................................................25

Press Release, In Free Speech Win, Millionaire Withdraws Attempt to Identify
   Anonymous Online Critic, American Civil Liberties Union (July 13, 2023),
   https://www.aclu.org/press-releases/in-free-speech-win-millionaire-withdraws-
   attempt-to-identify-anonymo................................................................................18

Samantha Allen, How Facebook Exposes Domestic Violence Survivors, The Daily
   Beast (May 20, 2015), https://www.thedailybeast.com/articles/2015/05/20/how-
   facebook-exposes-domestic-violence-survivors. ....................................................6

The Committee on International Commercial *Disputes, 28 U.S.C. § 1782 As a
   Means of Obtaining Discovery in Aid of International Commercial Arbitration—
   Applicability and Best* Practices, The New York City Bar (Feb.29, 2008),
   https://www.nycbar.org/pdf/report/....................................................................10

## STATEMENT OF INTEREST

The ACLU of Northern California is the Northern California affiliate of the American Civil Liberties Union ("ACLU"), a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles embodied in the Federal Constitution and our nation's civil rights laws. The ACLU and its affiliates share a longstanding commitment to freedom of speech and digital rights. The ACLU of Northern California has a Technology and Civil Liberties Program, founded in 2004, which works specifically on legal and policy issues at the intersection of new technology and privacy, free speech, and other civil liberties and civil rights. Since its founding in 1920, the ACLU has frequently appeared before the U.S. Supreme Court, this Court, and other federal courts in cases related to free speech and freedom of association, including exercise of those rights online. *See, e.g., Reno v. ACLU*, 521 U.S. 844 (1997) (counsel); *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) (amici); *Gonzalez v. Google LLC*, 598 U.S. 617 (2023) (amici); *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) (amici); *In re Ex Parte Application of Fredric N. Eshelman*, 5:23-mc-80015 (Dist. Ct. N.D. Cal. 2023) (voluntarily dismissed) (counsel); *hey, inc. v. Twitter, Inc.,* 23-15911 (9th Cir. 2024) (voluntarily dismissed) (amicus).

## SOURCE OF AUTHORITY TO FILE

Counsel for *amicus curiae* have filed an accompanying Motion for Leave to File Brief of Amicus Curiae pursuant to Federal Rule of Appellate Procedure 29(a) and Circuit Rule 29-3.

## FED. R. APP. P. 29(a)(4)(E) STATEMENT

*Amicus* declares that:

1. no party's counsel authored the brief in whole or in part;

2. no party or party's counsel contributed money intended to fund preparing or submitting the brief; and

3. no person, other than amicus, its members, or its counsel, contributed money intended to fund preparing or submitting the brief.

## INTRODUCTION & SUMMARY OF ARGUMENT

People must be able to speak anonymously online without fear that litigious companies and individuals will be able to easily circumvent established free speech protections and obtain their identities. In this case, Gregory Gliner, a dual citizen of the United States and United Kingdom citizen ("Appellant" or "Gliner") seeks to unmask anonymous online speakers by using a federal statute designed to assist discovery in foreign proceedings. The district court denied Gliner's request, finding he had failed to justify why unmasking the anonymous speakers would be appropriate considering their First Amendment interests, but it did not provide a detailed opinion explaining its reasoning and what legal test it employed in making its determination.[1]

Amicus write to highlight the importance of anonymous speech online under the First Amendment and the worrisome trend of litigants exploiting 28 U.S.C. § 1782 ("Section 1782") to circumvent U.S. free speech protections. In assessing these unmasking demands under Section 1782, lower courts are currently struggling to strike a balance between free speech interests and a litigant's need for information to assist foreign proceedings. The test to unmask anonymous speech articulated in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974–75

---

[1] Order Denying Ex Parte Application, *In re Ex Parte Application of Gregory Gliner*, No. 3:24-mc-80087 (Docket Number 11) (June 26, 2024).

(N.D. Cal. 2005) is well-established[2] and reconciles these interests by requiring a party seeking the identity of an anonymous online speaker to demonstrate a prima facie case on the merits of their underlying claim, after which courts balance the need for that discovery against the free speech interests at stake. This Court should provide clarity for lower courts by holding that they should consistently employ the *Highfields* test when considering Section 1782 demands to unmask anonymous speakers online.

The United States has a "profound national commitment" to free speech. *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) and the right to speak anonymously is a key component of that free speech. Speech protections are especially important in the modern internet era where many users speak anonymously online via services with global reach, exposing them to possible litigation abroad. But corporations and individuals have taken notice that lower courts are inconsistently applying *Highfields* in the Section 1782 context and have tried to exploit that statute to unmask anonymous online speakers. Because speech

---

[2] District courts in this Circuit routinely apply the *Highfields* test to cases involving attempts to unmask anonymous speakers. *See Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) (applying *Highfields*); *Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658 (D. Ariz. Oct. 22, 2021) (same); *SaleHoo Grp., Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210 (W.D. Wash. 2010) (same). Though this Court has yet to formally adopt it. *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175 (9th Cir. 2011) (mentioning the *Highfields* test without formally adopting it).

on U.S.-based services is often accessible globally, allowing Section 1782 applications to unmask speakers without the standard *Highfields* analysis may incentivize well-heeled plaintiffs to sue their anonymous American critics abroad. Indeed, as discussed below, Americans are now bringing Section 1782 cases to unmask American speakers.

Regardless of why a litigant seeks an anonymous speaker's identity, courts have a constitutional responsibility to safeguard the free speech interests of all anonymous speakers on U.S.-based services. Doing so protects the rights of U.S. audiences to receive speech and supports the flourishing of free speech on U.S.-based services. Thus, the Court should direct district courts to apply the *Highfields* test to all attempts to use Section 1782 to unmask anonymous online speakers on U.S. services.[3]

## ARGUMENT

## I.    Anonymous Online Speech is Important and Must be Safeguarded on U.S.-based Services.

### A.    Free Speech is a Foundational Principle of The United States and Its Protections Apply Online.

Freedom of speech is one of the founding principles of the United States and is enshrined in the First Amendment to the Constitution. The Supreme Court has

---

[3] Appellant claims that his application satisfies the "real evidentiary basis test" from *Highfields*. Principal Brief of Applicant-Appellant, (Docket Number 3.1), at 48 n 24. Amicus does not take a position on whether Appellant meets this standard.

declared the United States has a "profound national commitment" to protecting and promoting free speech, *New York Times Co.*, 376 U.S. at 270, which it characterized as "the matrix, the indispensable condition, of nearly every other form of freedom." *Palko v. State of Connecticut*, 302 U.S. 319, 327 (1937). A key element of this is anonymous speech, which "protect[s] unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Without these rights, our other fundamental rights, such as the right to vote, would wither and die.

These First Amendment protections apply to online speech. *Reno v. ACLU*, 521 U.S. 844, 870 (1997). This is in part because the internet is "a valuable forum for robust exchange and debate." *Sony Music Ent. Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004). On the internet, the right to "anonymity facilitates the rich, diverse, and far ranging exchange of ideas." *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092, 1097 (W.D. Wash. 2001).

Properly protecting free and anonymous online speech requires a rigorous application of free speech principles when plaintiffs ask U.S. courts to unmask the identities of anonymous speakers on a U.S.-based service.

B.     Online Speech on U.S.-based Services Can Originate Anywhere and Reach a Global Audience.

The nature of modern online speech means that nearly all speech posted on U.S.-based services has a chance of being viewed in a foreign jurisdiction, and that many users' exact locations and identities will be unknown even to these same services. Courts must consider these elements of online speech when deciding how to analyze Section 1782 applications that seek to unmask anonymous speakers based on an asserted nexus with foreign audiences or plaintiffs.

The internet has connected speakers across the globe more than any other technology in human history. Email and other direct messaging services allow for instantaneous person-to-person connection across countries and borders. Social media services allow speakers to reach even wider audiences across the planet, all with a single post. On services such as Instagram, Facebook, Reddit, X, and websites hosted or registered by Dynadot, Inc., people around the world with an internet connection can read and follow posts from their favorite speakers. These and other services allow speakers to make their speech visible to interested audiences globally. Users can also search these services for content on a specific topic and review speech from creators that they do not directly follow. The result: speech posted by U.S.-based speakers on U.S.-based services can reach users

abroad, and speech posted by speakers abroad reaches U.S.-based users on those same services.[4]

Internet services also allow speakers to share their thoughts anonymously with wide audiences, including some that attract large numbers of followers.[5] Many online services do not require users to provide their real names when signing up for an account and many online speakers prefer to use anonymous or pseudonymous usernames to retain their privacy, safety, and protect themselves from real-world dangers and backlash for their protected speech. Survivors of domestic violence are one example.[6]

Some online speakers also prefer to keep information about their physical location private for privacy or personal safety reasons. Widely available internet

---

[4] Some social media users have amassed staggering numbers of followers, including in some cases more followers than people who live in the United States. For example, American actress and musician Selena Gomez has nearly 500 million followers. International soccer stars Cristiano Ronaldo and Leo Messi have even more followers. Brian Frederick, *The Top 100 Social Media Influencers Worldwide*, SEARCH ENGINE JOURNAL (Jan. 10, 2023), https://www.searchenginejournal.com/top-social-media-influencers/475776/.

[5] For example, in 2021 an anonymous Twitter user with the handle @travel and included posts about travel destinations around the world had 7.5 million followers. Leticia Polese, *10 Non-Verified Twitter Accounts With the Most Followers,* AUDIENSE (Sep. 12, 2021), https://resources.audiense.com/en/blog/top-non-verified-twitter-accounts-with-the-most-followers.

[6] Samantha Allen, *How Facebook Exposes Domestic Violence Survivors*, THE DAILY BEAST (May 20, 2015), https://www.thedailybeast.com/articles/2015/05/20/how-facebook-exposes-domestic-violence-survivors.

technologies such as virtual private networks ("VPNs") allow users to access the internet without revealing their actual internet protocol ("IP") address, which can reveal their general physical location. Other popular privacy-protecting technologies such as Apple's iCloud Private Relay allow users to conceal some of their private information from the websites they visit.[7] Website domain registrars, such as Dynadot, often permit users to register domains while shielding their personal information—such as their physical address—from public view.[8] These technologies and features are legitimate, legal, and can help protect users' browsing activity, identity, and location, allowing for enhanced privacy, safety, and autonomy online. They also make it more difficult for online services—and by extension courts who are considering unmasking applications—to know a user's exact location. Litigants have been trying to take advantage of this uncertainty, and when an online speaker's location is not clearly in the United States, attempting to utilize Section 1782 and circumventing proper First Amendment protections.

---

[7] *About iCloud Private Relay* (June 2, 2023), https://support.apple.com/en-us/HT212614.

[8] Dynadot FAQ, *How do I add domain privacy to a domain in my Dynadot account?* (Nov. 6, 2023) https://www.dynadot.com/community/help/question/add-privacy; *see also* GoDaddy Domains Help, *What is Domain Privacy?* (last visited Sep. 5, 2024) https://www.godaddy.com/help/what-is-domain-privacy-41145.

**II.    Section 1782 Should Not Be Used to Circumvent the Rigorous
*Highfields* Test for Unmasking Anonymous Online Speakers.**

Citing free speech interests, the district court denied Gliner's application

under Section 1782 to unmask anonymous speakers who he alleges defamed him,

but it did so without specifying the appropriate legal standard. To consistently

protect free speech interests, we encourage the Court to find that district courts

should always apply the *Highfields* test when considering Section 1782

applications to unmask anonymous speakers. Failing to apply *Highfields* could risk

exposing many more anonymous speakers to intimidation and harassment and

leads to results at odds with our nation's commitment to free speech.

A.    The *Highfields* Test for Unmasking Anonymous Speakers Protects
Free Speech.

U.S. courts apply a well-established legal analysis when asked by plaintiffs

to unmask anonymous speakers. This test was first articulated in *Dendrite Intern.,*

*Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001) and then applied

in the Ninth Circuit[9] in *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969

(N.D. Cal. 2005).

---

[9] As explained above, while nearly every district court in the Ninth Circuit applies
*Highfields* in unmasking cases, the Ninth Circuit itself has not formally adopted the
test. *Supra* note 2.

This *Highfields* test requires courts to "go beyond the pleadings and determine if there is an evidentiary basis for concluding that the requested discovery is appropriate," *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-MC-80102-DMR, 2021 WL 4124216, at *5 (N.D. Cal. Sept. 9, 2021), and "consists of two steps. First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim. Second, the court balances the need for the discovery against the First Amendment interest at stake." *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022) (*citing Dendrite*, 775 A.2d at 760-61; *Highfields*, 385 F. Supp. 2d at 974-75).

Under the first step of *Highfields,* applicants must show "real evidentiary basis" for their claim in order to unmask an anonymous speaker. 385 F. Supp. 2d at 975. To do this, "the plaintiff must adduce *competent evidence*" that would be necessary "to prevail under at least one of the causes of action plaintiff asserts." *Id.* at 975–76 (emphasis in the original). Consequently, "[t]he court may not enforce the subpoena if, under plaintiff's showing, any essential fact or finding lacks the requisite evidentiary support." *Id.*

Even if the applicant satisfies the first step of *Highfields*, under the second step the court must balance the interests that would be impacted if the anonymous speaker's identity was revealed. The interests the court may consider include the free speech interests of the defendant, the court, the audience, and of course the

9

speaker. *See Highfields*, 385 F. Supp. 2d at 975 (discussing the free speech interests of the anonymous speaker and the audience).

District courts in the Ninth Circuit and across the U.S. routinely and properly apply *Highfields* and tests echoing it to ensure that the identities of anonymous online speakers are not revealed without parties providing an adequate showing and considering the interests of all parties. *See, e.g.*, *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 876; *Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-CV-10803, 2014 WL 10319321 (E.D. Mich. July 2, 2014); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009).

B. The Section 1782 *Intel* Test was Not Designed to Help Courts Decide When to Unmask Anonymous Online Speakers and Routinely Fails to Protect Free Speech as a Result.

Section 1782 was intended to assist discovery in foreign proceedings, not as a tool or guide for deciding when to unmask speakers on U.S. services. Based on laws from the 1800s, Section 1782 was passed by Congress "to provide federal-court assistance in gathering evidence for use in foreign tribunals."[10] The law's amendments also predate today's internet and none contemplate its use to unmask

---

[10] *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004); The Committee on International Commercial Disputes, *28 U.S.C. § 1782 As a Means of Obtaining Discovery in Aid of International Commercial Arbitration— Applicability and Best Practices*, THE NEW YORK CITY BAR (Feb. 29, 2008), https://www.nycbar.org/pdf/report/1782_Report.pdf.

anonymous speakers, online or off. The Supreme Court established the legal standard for Section 1782 in *Intel Corp. v. Advanced Micro Devices, Inc*, a 2004 multi-jurisdictional and international antitrust case between two large companies. 542 U.S. at 241. The *Intel* case did not involve an attempt to unmask an anonymous speaker and was decided at a time when social media services did not exist in their current form.[11] The *Highfields* test provides clarity and assists the application of *Intel* when a Section 1782 application involves an attempt to unmask a speaker, for several reasons.

*First*, because *Intel* does not require a pending foreign lawsuit, litigants from around the world can easily use U.S. courts to seamlessly obtain the identities of speakers on U.S. services. Under *Intel*, an applicant need only allege that the discovery sought will be used in a foreign proceeding where a "dispositive ruling" by a foreign tribunal is "within reasonable contemplation." 542 U.S. at 258–59. That may make sense where a Section 1782 applicant seeks evidence necessary for a foreign civil litigation involving corporations. But where applicant seeks the identity of an anonymous online speaker, the lack of an active proceeding requirement raises the risk that speakers on U.S.-based services will be subject to

---

[11] In 2004, approximately 25% of Americans had a home broadband internet connection. By 2023 that number had risen to 80% and is likely even higher today. *Internet/Broadband Fact Sheet*, PEW RESEARCH CENTER (Jan. 31, 2024), https://www.pewresearch.org/internet/fact-sheet/internet-broadband/#home-broadband-use-over-time.

baseless threats to their anonymity and the possibility of costly litigation abroad in countries with weak speech protections. *Highfields*, if applied, would consider what evidentiary basis exists to unmask a speaker using a Section 1782 application, including in situations where no active litigation exists.

*Second,* because the location of many anonymous online speakers is unclear, litigants in U.S. courts have an incentive to style their unmasking demands as Section 1782 applications, even in situations where *Highfields* might be applicable. Section 1782's standard does not consider a speaker's location, and speakers may not have an opportunity to provide it because many applications under the statute are *ex parte* by nature. An anonymous speaker may also have compelling reasons not to disclose their location.[12] But some courts considering Section 1782 applications under *Intel* have said *Highfields* only applies to users who are clearly U.S. citizens or residents. *See, e.g.*, *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 706 n.6 (N.D. Cal. 2022) (finding *Highfields* does not apply where the anonymous speaker is a "foreign citizen speaking outside U.S. territory"). The result: litigants can take advantage of this information vacuum and circumvent

---

[12] Indeed, the residency or location will often be unknown to the U.S.-based service as well. This is because many U.S.-based online services do not ask for a user's citizenship and, as discussed at *supra* section I, a speaker's use of privacy-protecting software may obscure their actual location.

*Highfields* protections using Section 1782 to unmask unknown speakers. As explained in section III below, some of these speakers may be American citizens.

*Finally*, *Intel* allows for consideration of a litigant's ulterior motives, but *Highfields* ensures these motives are properly vetted by requiring competent evidence to justify piercing anonymous speech rights and unmasking a person. Indeed, when applying *Intel* alone, courts have not required Section 1782 applicants to provide competent evidence for their underlying claim in order to unmask a person. *See, e.g.*, *Zuru*, 614 F. Supp. 3d at 708 ("This Court won't require Zuru to satisfy *Highfields's* 'real evidentiary basis' standard."). Without some minimal evidence in support of an unmasking application, courts are not able to properly consider whether to exercise their discretion under *Intel* to reject applications that seek to "circumvent" U.S. policy or that are "unduly intrusive or burdensome." [13] The result is that applicants can easily abuse Section 1782 to unmask and harass anonymous online critics, including speakers in the U.S.

---

[13] In addition to Section 1782's foreign proceedings requirement, *Intel* held that federal courts have discretion to reject a Section 1782 application that "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" or that is "unduly intrusive or burdensome." 542 U.S. at 264–65.

### III. Foreign and Domestic Litigants are Exploiting Section 1782 to Improperly Unmask Anonymous Online Speakers on U.S.-Based Services.

Congress did not contemplate Section 1782 as a tool for the powerful to unmask anonymous speakers, but foreign and domestic litigants have brought Section 1782 cases to unmask and potentially silence online critics who are engaged in online speech. It should not be surprising that some would try to use Section 1782's discovery mechanisms as a loophole to thwart proper judicial oversight. As the *Dendrite* case highlighted, litigants who do not like the content of online anonymous speech will often misuse "discovery procedures to ascertain the identities of unknown defendants in order to harass, intimidate or silence critics in the public forum opportunities presented by the Internet." *Dendrite*, 775 A.2d at 771.

Litigants in these cases usually allege that critical speech defamed them in a foreign country and that they need a U.S.-based service to identify the user because they plan to take advantage of foreign defamation laws, which rarely reflect the U.S.'s free speech principles.[14] Below, *amicus* describes how foreign litigants have been employing Section 1782 for quite some time to unmask anonymous critics

---

[14] The use and success rate of Section 1782 seeking to unmask anonymous online speakers are on the rise. Edward F. Maluf, Eddy Salcedo, & Owen R. Wolfe, *The Expanding Use of 28 USC § 1782*, SEYFARTH SHAW LLP (Jun. 7, 2021), https://www.seyfarth.com/news-insights/the-expanding-use-of-28-usc-1782.html.

14

and its use has been on the rise.[15] Further, and even more concerning, *amicus*

identify an emerging risk of American litigants also trying to use Section 1782 to

circumvent U.S. law and constitutional protections for free speech.

A.   Foreign Litigants Frequently Exploit Section 1782 to Unmask Online Critics.

Foreign litigants have succeeded at exploiting Section 1782 to force U.S.

technology services to unmask anonymous online critics.[16] For example, the

applicant in *In re Team Co., Ltd*. was a Japanese corporation that operated a

restaurant in its home country. No. 22-MC-80183-VKD, 2023 WL 1442886, at *1

(N.D. Cal. Feb. 1, 2023). An anonymous Google account user posted a "one-star"

rating on the restaurant's Google Map review page. The applicant alleged that the

review was hurting its business and planned to sue the anonymous user in a foreign

court. The applicant filed a Section 1782 request for a subpoena that would force

Google to uncover the identity of the critic. Google moved to quash, citing the

---

[15] J. Alexander Lawrence & Geary Choe, *Foreign Companies Can Use 28 U.S.C. § 1782 to Unmask Anonymous Internet Posters,* MORRISON & FOERSTER LLP (Dec. 10, 2019), https://www.lexology.com/library/detail.aspx?g=fe50a462-8926-4c8f-aa5e-b113e41469f7.

[16] The court in *In re Plan. & Dev. of Educ., Inc*. recognized this concerning trend. "As a substantial number of applications have been filed within the last year seeking personally identifiable information from Google for the purpose of identifying of negative reviewers, the Court is concerned that the influx of these requests will create a chilling effect on the speech of anonymous reviewers or embolden entities which seek only to harass or intimidate the speakers." No. 21-MC-80242-JCS, 2022 WL 228307, at *5 n.4 (N.D. Cal. Jan. 26, 2022).

importance of U.S. free speech principles, but the court denied Google's motion. *Id*. at 2–4.

Foreign corporations seem eager to quell criticism at home by taking advantage of U.S. laws and courts, and the *In re Team Co.* example is only one of many. *Id.*; *see also Med. Corp. Seishinkai v. Google LLC*, No. 5:22-MC-80282-EJD, 2023 WL 3726499 (N.D. Cal. May 30, 2023) (Japanese medical corporation sued to uncover the identity of an anonymous poster of a one-star review); *In re Sungrove Co., Ltd.*, No. 23-MC-80080-BLF, 2023 WL 2699987 (N.D. Cal. Mar. 28, 2023) (Japanese website company sought to uncover the identity of poster of a negative review article). Using Section 1782, these plaintiffs have been able to pierce the anonymity of online speakers which would have been ordinarily protected under *Highfields* and U.S. free speech principles. *Cf. Mirza v. Yelp, Inc.*, No. 21 MISC. 621 (LGS), 2021 WL 3772039, at *1–3 (S.D.N.Y. Aug. 25, 2021) (in a non-Section 1782 case, the court applied *Highfields* and refused to enforce subpoena to force Yelp to unmask anonymous user who criticized applicant's cosmetic products).

Individuals have also started exploiting Section 1782 against critics. In *In re Al-Baldawi*, a Canadian doctor sought a subpoena against RateMDs Inc. to uncover the poster of a negative review about his medical practice. No. 5:22-MC-80329-EJD, 2023 WL 3603731 (N.D. Cal. May 23, 2023). In *Uchida v. YouTube, LLC*, a

16

Japanese animator sought information from YouTube to help identify a poster of vague statements that he claimed were critical of his professional capabilities. No. 22-MC-80155-JSC, 2022 WL 4923241 (N.D. Cal. Oct. 3, 2022). In each of these examples federal district courts granted the Section 1782 application after applying *Intel* in isolation. The few courts to even discuss *Highfields* did so only when the technology company or anonymous speaker argued that it should apply in a motion to quash. *See, e.g.*, *Tokyo Univ.* 2021 WL 4124216 (court initially granted the *ex parte* application, but then granted Twitter's motion to quash after applying the *Highfields* test).

   With sufficient resources, it seems that any foreign litigant—corporation or individual—can currently try to use Section 1782 to conscript U.S. courts to unmask and chill free speech taking place on U.S.-based services.

   B.    <u>American Litigants Are Exploiting Section 1782 to Circumvent U.S. Free Speech Protections.</u>

   American litigants who would ordinarily have to meet the protective *Highfields* standard are taking advantage of Section 1782 to intimidate and harass other Americans.

   In a recent case in the Northern District of California, a wealthy American tried to use Section 1782 to unmask another American who had anonymously criticized him online. Eshelman Declaration, *In re Eshelm*an, No. 5:23-MC-80015,

2023 WL 3361192 (Dkt. No. 1-4). The applicant claimed that the Doe's speech had defamed him to foreign business contacts and that he planned to sue abroad, Application at 1, *In re Eshelman*, (Dkt. No. 1-1), but did not demonstrate any "competent evidence" that he had been harmed in another country or explain how that unproven harm was actionable under foreign law. Doe's speech was clearly protected opinion under the First Amendment, but applicant tried to use Section 1782 to circumvent the free speech protections of *Highfields*. The court initially applied the *Intel* test and granted the application, but after Google and Doe both moved to quash and argued that *Highfields* should apply,[17] the applicant voluntarily withdrew his subpoena.[18]

The *Eshelman* case shows that even Americans are attempting to circumvent *Highfields* and the First Amendment by using Section 1782 to bully and censor their critics. As things stand, litigants can use American courts and Section 1782 to circumvent protections for anonymous speech and potentially harass, intimidate, and silence their critics. Guidance from this Court is necessary to ensure that

---

[17] The ACLU of Northern California and Public Citizen jointly represented Doe in this case.

[18] Press Release, *In Free Speech Win, Millionaire Withdraws Attempt to Identify Anonymous Online Critic*, AMERICAN CIVIL LIBERTIES UNION (July 13, 2023), https://www.aclu.org/press-releases/in-free-speech-win-millionaire-withdraws-attempt-to-identify-anonymous-online-critic.

people who take issue with online speech are held to the same standard as other civil litigants when they seek obtain the identities of speakers in district court.

## IV.   U.S. Courts Should Apply the *Highfields* Test to All Section 1782 Applications Seeking to Unmask Anonymous Online Speakers.

American free speech principles are implicated by all Section 1782 applications to unmask anonymous speakers. These interests include not just the speaker's right to anonymity, but also the rights and interests of the U.S.-based audiences, services, and courts. Because the *Highfields* test protects each of these interests, courts should apply it to all Section 1782 unmasking applications, regardless of the speaker's location or residency.

### A.   Applying *Highfields* to all Section 1782 Unmasking Cases Is Compatible with the Statute's Purposes.

The application of *Highfields* to all Section 1782 unmasking applications aligns with three core purposes of the statute: assisting foreign tribunals, preventing the circumvention of U.S. policy, and avoiding unduly burdensome discovery requests. The evidentiary standard of *Highfields* would only apply to the narrow class of Section 1782 applications that involve unmasking and would not generally impact or prevent applicants from seeking and obtaining information from U.S. entities or from using that information in foreign tribunals. Instead, requiring unmasking plaintiffs to provide some basis for their claim as part of their

19

Section 1782 application would help uncover and prevent attempts to use Section 1782 to silence or harass online critics. Consequently, the application of *Highfields* to all Section 1782 unmasking applications also furthers the U.S. Supreme Court's guidance that the statute be unavailable for attempts to circumvent U.S. policy or seek discovery that is unduly burdensome, as articulated in the *Intel* test's factors granting courts the discretion to reject Section 1782 applications. *Intel*, 542 U.S. at 264–65.[19] As illustrated above, we are seeing a proliferation of such requests under Section 1782.

Recognizing all of this, some district courts in the Ninth Circuit have decided that First Amendment interests require the application of *Highfields* to attempts to unmask anonymous speakers using Section 1782, even where the speaker appears to be a foreign citizen outside the United States. For example, the court in *Tokyo Univ.* applied the *Highfields* test even where the petitioner was a Japanese company and the anonymous speaker appeared to be a Japanese citizen. 2021 WL 4124216, at *1–2. That court said that, irrespective of the speaker's

---

[19] Indeed, courts applying *Highfields* in the context of Section 1782 unmasking applications often tie that analysis to the third or fourth *Intel* factors. *See Tokyo Univ.*, 2021 WL 4124216, at *2–3 (applying *Highfields* under the fourth *Intel* factor); *In re Yasuda*, No. 19-MC-80156-TSH, 2019 WL 7020211, at *6 (N.D. Cal. Dec. 20, 2019) (same); *In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (same); *In re Takada*, No. 22-MC-80221-VKD, 2023 WL 1452080, at *3–4 (N.D. Cal. Feb. 1, 2023) (discussing *Highfields* in the context of analyzing *Intel's* third factor).

citizenship, "an author's decision to remain anonymous…is an aspect of the freedom of speech..." *Id.* at *3 (internal citation omitted). To that end, the court said that it must "consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity." *Id.* at *3; *see also In re PGS Home Co. Ltd.*, No. 19-MC-80139-JCS, 2019 WL 6311407, at *6 (N.D. Cal. Nov. 25, 2019) (applying *Highfields* to Section 1782 application and quashing unmasking subpoena). These decisions to apply *Highfields* in Section 1782 unmasking cases are supported by the broader free speech interests at play– including those of U.S.-based audiences, services, and courts.

>  B.  *Highfields* Should Apply to all Section 1782 Unmasking Applications Due to the Compelling Free Speech Interests of U.S. Audiences, Services, and Courts.

The *Highfields* protections for anonymous speakers are appropriate wherever unmasking attempts implicate interests "rooted in the First Amendment to the Constitution of the United States." *Highfields*, 385 F. Supp. 2d at 974. Some district courts have refused to apply *Highfields* in cases involving foreign citizens speaking outside of U.S. territory, but the interests of speakers are not the only ones implicated by attempts to unmask anonymous speakers. Courts must also consider other free speech interests, including the interests of U.S.-based audiences for anonymous speech, the interests of U.S. services that host speech and receive

21

Section 1782 subpoenas, and the interests of the deciding court in safeguarding anonymous speech.

The analysis in *In re DMCA Subpoena to Reddit, Inc.* provides a useful framework for assessing the U.S. speech interests implicated by unmasking demands. There, the court considered an attempt to unmask an anonymous speaker using copyright law. 383 F. Supp. 3d 900, 905 (N.D. Cal. 2019). The magistrate judge had evidence that the speaker was a foreign citizen living abroad and therefore not generally protected by the First Amendment. *Id.* at 908 (anonymous speaker "resides outside the United States"). But it applied the *Highfields* test to protect the free speech interests of three key actors: (1) the potential audience for the speech, (2) the U.S. service hosting the speech, and (3) the court charged with upholding constitutional principles. *In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d at 909 ("[b]ased on the involvement of the United States Court's procedures by and against United States companies and the audience of United States residents, as well as the broad nature of the First Amendment's protections, the Court finds that the First Amendment is applicable here."). *In re DMCA*'s analysis is equally appropriate for Section 1782 unmasking cases, where applicants seek information from U.S. companies using U.S. courts and laws about unknown speakers who—due to the nature of online speech—may be U.S.-based or have a U.S. audience.

The application of *Highfields* to all attempts to unmask anonymous speakers with Section 1782 would protect these interests without being too rigid. It would enable courts to properly consider broader free speech interests even where a speaker's real location or nationality may not be known. Crucially, *Highfield*'s evidentiary requirement helps prevent attempts to harass and intimidate online critics. Applying the test also ensures no U.S. citizen or resident is inappropriately deprived of their First Amendment rights.

Because of the interrelated interests of U.S. audiences, services, and the courts, this Court should instruct district courts to apply *Highfields* when assessing Section 1782 unmasking applications.

### 1. Free Speech Rights of U.S. Audiences

U.S. audiences have an interest in reading and enjoying online speech. Anonymous speech posted on U.S. services, even by a foreign citizen living abroad, is viewable by American residents and citizens. Those audience members are protected by the First Amendment, which applies even if they are recipients rather than speakers. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to *receive* information and ideas.") (emphasis added); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743–44 (9th Cir. 2021) (the First Amendment protects the right to receive information in the U.S. from outside U.S. territory), cert. denied sub nom. *David v. Kazal*, 142 S.

23

Ct. 1674 (2022); *see also Desai v. Hersh*, 719 F. Supp. 670, 676 (N.D. Ill. 1989) ("The [F]irst [A]mendment shields the actions of speakers for the benefit of their audience."); *Bursey v. United States*, 466 F.2d 1059, 1083–84 (9th Cir. 1972) ("Freedom of the press was not guaranteed solely to shield persons engaged in newspaper work from unwarranted governmental harassment. The larger purpose was to protect public access to information."). Applying the *Highfields* test to all Section 1782 unmasking applications vindicates the First Amendment right of American audiences to view online speech on all manner of issues. *See United States v. 18 Packages of Mags.*, 238 F. Supp. 846, 848 (N.D. Cal. 1964) ("[t]he First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers.").

## 2. *Free Speech Concerns of U.S. Online Services*

Section 1782 applications usually seek identifying information from American services that host online discussions and commentary, such as Google, Reddit, Twitter, and others. These services, at their best, function to promote First Amendment interests by hosting and protecting anonymous online speech and speakers. *See* Twitter Mot. To Quash (Dkt. No. 6) at 6, *hey, inc v. Twitter*, 4:22-mc-80034 (N.D. Cal. 2023) (arguing that "[a]nonymous online speech is protected by the First Amendment to the United States Constitution."); Yelp Inc.'s Opening Brief, at 14, *Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 289 Va. 426 (2015) ("A

rule that makes it too easy to remove the cloak of anonymity will deprive the marketplace of ideas of valuable contributions."). For this reason, U.S.-based users rely on these services to connect, organize, and speak on issues of the day. Similarly, activists abroad that look to the United States and the First Amendment as a beacon of liberty rely on these services to speak anonymously.

Allowing unmasking plaintiffs to take advantage of Section 1782 without making the requisite showing under *Highfields* threatens the vitality of free speech on these U.S.-based services. First, it discourages anonymous speech on the services by exposing users to chilling foreign legal demands for their identities. Relatedly, it burdens services with subpoenas for user information, which require personnel time to process and legal resources to fight. As a result, many services may feel pressured to discourage or even prohibit anonymous accounts, for fear of inviting Section 1782 demands from aggrieved plaintiffs.[20]

---

[20] *See* Press Release, *ACLU Commends Supreme Court Decisions Allowing Free Speech Online To Flourish*, AMERICAN CIVIL LIBERTIES UNION (May 18, 2023), https://www.aclu.org/press-releases/aclu-commends-supreme-court-decisions-allowing-free-speech-online-to-flourish ("Twitter and other apps are home to an immense amount of protected speech . . . the rules we apply to the internet should foster free expression, not suppress it.") (discussing Section 230 of the Communications Decency Act); *see also* Press Release, *EFF Warns Supreme Court that Users' Speech is at Stake When Increasing Platforms' Liability*, ELEC. FRONTIER FOUND (Jan. 19, 2023), https://www.eff.org/press-releases/ff-warns-supreme-court-users-speech-stake-when-increasing-platforms-liability ("Platforms facing a potential onslaught of litigation are going to be unwilling to take a chance on provocative or unpopular speech.") (same).

### 3. Free Speech Interests of U.S. Courts

Section 1782 applications also seek to take advantage of American law and force American courts to assist with unmasking anonymous speakers. American courts routinely uphold the "profound national commitment" to free speech. *See New York Times Co.* 376 U.S. at 270. This interest in protecting free speech applies with full force to the discovery process. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984); *Herbert v. Lando*, 441 U.S. 153, 178 (1979) (Powell, J., concurring) ("In supervising discovery . . . a district court has a duty to consider First Amendment interests as well as the private interest of the plaintiff.").

It should also apply where that discovery is against a U.S.-based service with U.S.-based users and a potential U.S. audience, even though the information is sought for potential foreign litigation. *In re Plan.* 2022 WL 228307 at *4 n.3 (observing that the "principles underlying the First Amendment may counsel a court of the United States against exercising its discretion" to grant a Section 1782 application). When a court allows a plaintiff to strip a user's anonymity without an evidentiary basis, it may lead to harassment, intimidation, or censorship of non-citizens and citizens alike. Authoritarian nations may routinely punish speakers for dissent and disfavored commentary, but U.S. courts should not approve applications under Section 1782 that risk undermining free speech principles.

26

## CONCLUSION

This Court should direct district courts to apply the *Highfields* test to all 28

U.S.C. § 1782 applications seeking to unmask anonymous online speakers.

Dated: September 13, 2024                    Respectfully submitted,

/s/ *Nicolas A. Hidalgo*

Nicolas A. Hidalgo (SBN 339177)
Matthew T. Cagle (SBN 286101)
Nicole A. Ozer (SBN 228643)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
nhidalgo@aclunc.org
mcagle@aclunc.org
nozer@aclunc.org

*Attorneys for Amicus Curiae*

**CERTIFICATE OF SERVICE FOR ELECTRONIC FILING**

I hereby certify that on September 13, 2024, I electronically filed the foregoing Amicus Curiae Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the ACMS system, which effects service upon all counsel of record.


Dated: September 13, 2024                    /s/ *Nicolas A. Hidalgo*

                                             Nicolas A. Hidalgo
                                             AMERICAN CIVIL
                                             LIBERTIES UNION
                                             FOUNDATION OF
                                             NORTHERN CALIFORNIA  39
                                             Drumm Street
                                             San Francisco, CA 94111
                                             hidalgo@aclunc.org

                                             *Attorney of Record for Amicus*
                                             *Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 24-4624

I am the attorney or self-represented party.

**This brief contains** | 6,094 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [                    ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Nicolas A. Hidalgo | **Date** | 9/13/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

2