No. 24-4624

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE EX PARTE APPLICATION OF GREGORY GLINER
FOR AN ORDER PURSUANT TO 28 U.S.C. §1782
GRANTING LEAVE TO OBTAIN DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS

On Appeal from the United States District Court
for the Northern District of California at San Francisco
(Case No. 3:24-mc-80087-JD, Hon. James Donato)

## [PROPOSED]*
## APPLICANT-APPELLANT GREGORY GLINER'S REPLY TO THE
## AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA'S
## AMICUS BRIEF

MICHELE FLOYD
KILPATRICK TOWNSEND
STOCKTON LLP
2 Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 273-4756
mfloyd@ktslaw.com

JOSEPH R. OLIVERI
*Lead Counsel*
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7405
joe@clarelocke.com

*Attorneys for Applicant-Appellant Gregory Gliner*

October 11, 2024

---

* *See* Resp. to ACLU's Mot. for Leave to File Amicus Curiae Br. & Cross-Mot. for
Leave to File a Reply (Sept. 20, 2024) [Dkt. 13].

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT .....................................................................................5

I.  ACLU Asks the Court to Overrule Supreme Court Precedent by Holding That the First Amendment Applies to Non-U.S.-Citizens Outside the United States Who Do Not Direct Their Speech to a U.S. Audience. ............5

II.  ACLU Asks the Court to Decide a Constitutional Question That It Need Not Decide to Resolve This Appeal and to Re-Write the Framework for Evaluating Some (But Not All) Applications Under 28 U.S.C. §1782. .........9

CONCLUSION ..................................................................................15

CERTIFICATE OF COMPLIANCE ....................................................17

CERTIFICATE OF SERVICE..............................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
292 F.3d 664 (9th Cir. 2002),
*aff'd*, 542 U.S. 241 (2004) .................................................................15

*Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*,
591 U.S. 430 (2020) ....................................................................1, 6, 11

*Camreta v. Greene*,
563 U.S. 692 (2011) ...........................................................................10

*Clinton v. Jones*,
520 U.S. 681 (1997) ........................................................................4, 10

*Hey, Inc. v. Twitter, Inc.*,
No. 22-mc-80034, 2023 WL 3874022
(N.D. Cal. June 6, 2023).........................................................4, 10, 11, 14

*Highfields Cap. Mgmt., L.P. v. Doe*,
385 F. Supp. 2d 969 (N.D. Cal. 2005).............................................3, 9

*Hunley v. Instagram, LLC*,
73 F.4th 1060 (9th Cir. 2023) .............................................................14

*In re Anahara*,
No. 22-mc-80063, 2022 WL 783896
(N.D. Cal. Mar. 15, 2022) ...............................................................7, 11

*In re PGS Home Co.*,
No. 19-mc-80139, 2019 WL 6311407
(N.D. Cal. Nov. 25, 2019) ..................................................................11

*In re Takada*,
No. 22-mc-80221, 2023 WL 1452080
(N.D. Cal. Feb. 1, 2023) ......................................................6, 8, 11, 15

*In re Team Co.*,
No. 22-mc-80183, 2023 WL 1442886
(N.D. Cal. Feb. 1, 2023) ......................................................6, 8, 11, 15

*In re Yasuda*,
  No. 19-mc-80156, 2019 WL 7020211
  (N.D. Cal. Dec. 20, 2019) ....................................................................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..................................................... 3, 4, 12, 13, 14

*Lyng v. Nw. Indian Cemetery Prot. Ass'n*,
  485 U.S. 439 (1988) ................................................................................ 10

*Matal v. Tam*,
  582 U.S. 218 (2017) ......................................................................... 4, 10

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ...................................................... 7, 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ................................................................................ 14

*Pena v. Lindley*,
  898 F.3d 969 (9th Cir. 2018) ........................................................... 14

*Rescue Army v. Mun. Ct. of City of L.A.*,
  331 U.S. 549 (1947) ................................................................................ 10

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  590 U.S. 212 (2020) ......................................................................... 4, 13

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
  909 F.3d 1069 (9th Cir. 2018),
  *aff'd*, 589 U.S. 178 (2020) ................................................................. 14

*Takagi v. Twitter, Inc.*,
  No. 22-mc-80240, 2023 WL 1442893
  (N.D. Cal. Feb. 1, 2023) ..................................... 2, 6, 8, 11, 12, 15

*Thunder Studios, Inc. v. Kazal*,
  13 F.4th 736 (9th Cir. 2021) ......................................................... 1, 6, 8

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*,
  No. 21-mc-80102, 2021 WL 4124216
  (N.D. Cal. Sept. 9, 2021) .................................................................. 4, 11

*United States v. Bus. of Custer Battlefield Museum*
   *& Store Located at Interstate 90*,
   658 F.3d 1188 (9th Cir. 2011) ................................................................ 10

*United States v. Google LLC*,
   690 F. Supp. 3d 1011 (N.D. Cal. 2023) ................................................ 11

*United States v. Meta Platforms, Inc.*,
   No. 23-mc-80249, 2023 WL 8438579
   (N.D. Cal. Dec. 5, 2023) ................................................................... 7, 11

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ................................................................................. 6

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
   596 U.S. 619 (2022) ............................................................................ 4, 13

*Zuru, Inc. v. Glassdoor, Inc.*,
   614 F. Supp. 3d 697 (N.D. Cal. 2022) ............................... 3, 10, 12, 14

**Statutes and Rules**

28 U.S.C. §1782 ............................................................................................ 1

47 U.S.C. §230 ......................................................................................... 2, 8

iv

## **INTRODUCTION**

ACLU's amicus brief asks this Court to go far beyond the narrow issue presented in this appeal and to sit as a policymaker and legislator to re-write a statute—28 U.S.C. §1782—that ACLU evidently does not like by overruling Supreme Court precedent and making broad and novel holdings on constitutional questions that the Court need not decide to resolve this appeal.

This appeal presents a narrow question. Gregory Gliner, a U.K. resident, filed an application under 28 U.S.C. §1782 seeking discovery to identify the anonymous publisher of a defamatory article on a Russian disinformation website so he can sue that person in the United Kingdom. Because all available evidence indicates that the anonymous publisher is not a U.S. citizen, is located outside the United States, and did not target a U.S. audience, that publisher has no First Amendment rights to be implicated by Mr. Gliner's Application. *See Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021). Nevertheless, the district court denied Mr. Gliner's Application—without considering the applicable Section 1782 statutory elements and discretionary factors—based on the anonymous publisher's supposed (but non-existent) First Amendment right to remain anonymous. Did the district court thereby err? As explained in Mr. Gliner's Opening Brief, the answer is yes.

ACLU, however, asks the Court to go far beyond deciding that narrow question. *First*, ACLU asks the Court to overrule *USAID*, *Thunder Studios*, and the decades of precedent on which they are based and to hold that the First Amendment applies to "all Section 1782 applications to unmask anonymous speakers" even if the anonymous speaker is not a U.S. citizen, did not publish his statements in the United States, and did not direct his speech to a U.S. audience. (ACLU Br. 19.) ACLU notably does not even attempt to reconcile its argument with *USAID*, and there is "no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely accessible to U.S. citizens over the Internet." *E.g.*, *Takagi v. Twitter, Inc.*, No. 22-mc-80240, 2023 WL 1442893, at *3 (N.D. Cal. Feb. 1, 2023). So, ACLU invokes the purported "Free Speech Interests of U.S. Online Services"—which are not publishers of the speech they host, 47 U.S.C. §230(c)(1)—and, bizarrely, the "Free Speech Interests of U.S. Courts." Even if this Court could overrule the Supreme Court precedent ACLU ignores, ACLU offers no reason to do so.

*Second*, ACLU asks the Court to go even further and re-write the framework for evaluating some (but not all) applications under 28 U.S.C. §1782—namely, those seeking to discover the identity of anonymous tortfeasors. ACLU asks the Court to require those applications to satisfy an additional test, unrelated to the statute, created in *Highfields Capital Management, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D.

2

Cal. 2005), for domestic litigation involving claims under U.S. law. That so-called "*Highfields* test" would require applicants, in addition to satisfying the requirements of Section 1782, to (1) "demonstrate a prima facie case on the merits of [their] underlying claim" by providing "a real evidentiary basis" for it, and (2) demonstrate that the need for discovery outweighs the "First Amendment interest[s] at stake." (ACLU Br. 9 (citing *Highfields*, 385 F. Supp. 2d at 975-76).) ACLU asserts that "lower courts are inconsistently applying *Highfields* in the Section 1782 context" and asks this Court "to find that district courts should always apply [it] when considering Section 1782 applications to unmask anonymous speakers." (*Id.* at 2, 8.)

But district courts have not been inconsistent: They have overwhelmingly refused to apply *Highfields* under 28 U.S.C. §1782. They have explained that doing so would contradict the Supreme Court's holding that Section 1782 "does *not* require the applicant to show 'that United States law would allow discovery in domestic litigation analogous to the foreign proceeding.'" *Zuru, Inc. v. Glassdoor, Inc.*, 614 F. Supp. 3d 697, 707 (N.D. Cal. 2022) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 263 (2004)). It would contradict the Supreme Court's "caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog." *Takagi*, 2023 WL 1442893, at *4 (citing *Intel*, 542 U.S. at 263). And by imposing additional domestic-law-based burdens on discovery under the statute, it would undermine the statute's "'animating purpose'" of

promoting comity and "encourag[ing] reciprocal assistance" from foreign tribunals. *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *Intel*, 542 U.S. at 247. Plus, applying *Highfields* under Section 1782 would force courts into the untenable position of evaluating the merits of reasonably contemplated but not-yet-filed foreign claims. And *Highfields* presupposes the applicability of the First Amendment (which is inapplicable under the facts here).

ACLU just fails to acknowledge the overwhelming precedent refusing to apply *Highfields* under 28 U.S.C. §1782. And ACLU hides the fact that the case it repeatedly cites to support the application of *Highfields* under Section 1782—*Tokyo University of Social Welfare v. Twitter, Inc.*, No. 21-mc-80102, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021)—has been repudiated as "wrong[]" by the Judge who decided it. *See Hey, Inc. v. Twitter, Inc.*, No. 22-mc-80034, 2023 WL 3874022, at *4 (N.D. Cal. June 6, 2023).

The Court should decline ACLU's invitation to go far beyond the narrow issue presented in this appeal to judicially re-write 28 U.S.C. §1782 to advance ACLU's favored policy interests internationally by making broad and novel holdings on constitutional questions it need not decide. *See Matal v. Tam*, 582 U.S. 218, 230-31 (2017) ("It is 'important to avoid the premature adjudication of constitutional questions.'" (quoting *Clinton v. Jones*, 520 U.S. 681, 690 (1997); cleaned up)); *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219-20 (2020) ("[T]he place for

reconciling competing and incommensurable policy goals ... is before policymakers. This Court's limited role is to read and apply the law those policymakers have ordained[.]").

## **ARGUMENT**

I.     **ACLU Asks the Court to Overrule Supreme Court Precedent by Holding That the First Amendment Applies to Non-U.S.-Citizens Outside the United States Who Do Not Direct Their Speech to a U.S. Audience.**

ACLU asks this Court to broadly hold that the First Amendment applies to "all [28 U.S.C.] Section 1782 applications to unmask anonymous speakers" because, according to it, "American free speech principles are implicated by all Section 1782 applications to unmask anonymous speakers ... regardless of the speaker's location or residency" and regardless of the audience to which he directs his speech. (ACLU Br. 19.) ACLU thus asks this Court to hold that the First Amendment applies to non-U.S. citizens who publish statements outside the United States and do not direct those statements to a U.S. audience.

In so doing, ACLU asks this Court to overturn decades of U.S. Supreme Court precedent—and this Court's own precedent—which ACLU notably does not acknowledge. That precedent is clear: It is a "fundamental principle" and "long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including "under the First Amendment." *Agency for Int'l Dev. (USAID) v. All. for Open Soc'y Int'l,*

5

*Inc.*, 591 U.S. 430, 433 (2020) (collecting cases; holding First Amendment inapplicable to foreign corporation); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (holding that "an alien who has had no previous significant voluntary connection with the United States" lacks "constitutional protections"). Thus, the "[Supreme] Court has not allowed foreign citizens outside the United States or [] U.S. territory to assert rights under the U.S. Constitution. If the rule were otherwise, actions ... against foreign organizations or foreign citizens in foreign countries would be constrained by the foreign citizens' purported rights under the U.S. Constitution. That has never been the law." *USAID*, 591 U.S. at 434.

Similarly, although this Court has held that the First Amendment protects the "right of domestic listeners to receive speech from foreign speakers," it has strictly limited the applicability of that right to "speech ... directed at and received by [domestic] residents." *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 744 (9th Cir. 2021). And as Section 1782 caselaw citing *Thunder Studios* has explained, there is "no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet." *Takagi*, 2023 WL 1442893, at *3; *In re Takada*, No. 22-mc-80221, 2023 WL 1452080, at *3 (N.D. Cal. Feb. 1, 2023); *In re Team Co.*, No. 22-mc-80183, 2023 WL 1442886, at *3-4 (N.D. Cal. Feb. 1, 2023). Indeed, as this Court has admonished, "[n]ot all material placed on the Internet is, solely by virtue of its

6

universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011).

ACLU does not acknowledge that law. Instead, it makes policy arguments why this Court should apply the First Amendment to "all Section 1782 applications to unmask anonymous speakers." (ACLU Br. 19.) But even if policy arguments could displace Supreme Court precedent, ACLU's arguments provide no reason to do so.

*First*, ACLU contends that litigants are "trying to use Section 1782 to circumvent U.S. law and constitutional protections for free speech." (ACLU Br. 14-19.) But that contention assumes its conclusion. Courts considering *ex parte* Section 1782 applications where there is no indication that the anonymous tortfeasor is a U.S. citizen, published the challenged statements in the United States, or targeted a U.S. audience with his speech already grant such applications "without prejudice to any [First Amendment] argument that might be raised in a motion to quash or modify the subpoena"—which can be made anonymously through counsel. *See, e.g.*, *United States v. Meta Platforms, Inc.*, No. 23-mc-80249, 2023 WL 8438579, at *6 (N.D. Cal. Dec. 5, 2023); *In re Anahara*, No. 22-mc-80063, 2022 WL 783896, at *5 n.1 (N.D. Cal. Mar. 15, 2022) (same).

*Second*, ACLU invokes the "free speech rights of U.S. audiences ... to receive information in the U.S. from outside U.S. territory." (ACLU Br. 23-24.) But ACLU

ignores that for that right to apply, the speech must be "directed at and received by [domestic] residents," *Thunder Studios*, 13 F.4th at 744, and "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at" a domestic audience, *Mavrix Photo*, 647 F.3d at 1231.  Again, there is "no authority for the expansive proposition that anonymous speech implicates First Amendment protections if that speech is merely *accessible* to U.S. citizens over the Internet."  *Takagi*, 2023 WL 1442893, at *3; *Takada*, 2023 WL 1452080, at *3; *Team Co.*, 2023 WL 1442886, at *3-4.  ACLU does not contend otherwise.

*Third*, ACLU invokes "free speech concerns of U.S. online services" that host anonymous speech (ACLU Br. 24-25)—but it tellingly cites no caselaw for the proposition that mere hosts of online speech have a First Amendment right in its publication.  They do not.  Under the Communications Decency Act, those online services are not publishers of that speech.  *See* 47 U.S.C. §230(c)(1).

*Finally*, ACLU bizarrely invokes the "free speech interests of U.S. courts." (ACLU Br. 26.)  But U.S. courts plainly have no independent interest in the actions underlying the cases they adjudicate.  The only "interest" of U.S. courts is to fairly adjudicate cases by applying the law that actually applies to them.

The Court should reject ACLU's invitation to overturn the Supreme Court's decision in *USAID*, this Court's decision in *Thunder Studios*, and the decades of precedent on which they are based.

II.     **ACLU Asks the Court to Decide a Constitutional Question That It Need Not Decide to Resolve This Appeal and to Re-Write the Framework for Evaluating Some (But Not All) Applications Under 28 U.S.C. §1782.**

The Court should also reject ACLU's invitation to go even further. Presupposing that the First Amendment applies to the anonymous foreign publisher of the defamatory article underlying Mr. Gliner's Section 1782 Application, ACLU asks this Court to broadly "find that district courts should always apply the *Highfields* test when considering Section 1782 applications to unmask anonymous speakers." (ACLU Br. 2, 8.) That is, ACLU asks this Court to re-write the framework for evaluating applications under 28 U.S.C. §1782—but only *some* of them, namely, those seeking to discover the identity of anonymous tortfeasors.  ACLU asks the Court to hold that, in addition to satisfying Section 1782's statutory requirements and the discretionary factors set forth by the Supreme Court, those applications must (1) "demonstrate a prima facie case on the merits of [their] underlying claim" by providing "a real evidentiary basis" for it, and (2) demonstrate that the need for discovery outweighs the "First Amendment interest[s] at stake."  (ACLU Br. 9 (citing *Highfields*, 385 F. Supp. 2d at 975-76).)  The Court should not do so.

As an initial matter, ACLU asks this Court to decide a constitutional question it need not decide to resolve this appeal.  The question whether the *Highfields* test best balances First Amendment interests and Section 1782 applicants' need for discovery—or whether the First Amendment, when implicated by a Section 1782

9

application, requires application of the *Highfields* test—is not before the Court in this case.   As explained above, the First Amendment is not implicated by Mr. Gliner's Application because it seeks only to discover the identity of a non-U.S.-citizen who published his defamatory statements outside the United States and did not direct them at a U.S. audience.  The "'longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'"  *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (quoting *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988)); *accord Matal v. Tam*, 582 U.S. 218, 230-31 (2017) (declining to decide First Amendment question and admonishing that "it is 'important to avoid the premature adjudication of constitutional questions.'" (quoting *Clinton v. Jones*, 520 U.S. 681, 690 (1997); cleaned up)); *Rescue Army v. Mun. Ct. of City of L.A.*, 331 U.S. 549, 568-69 (1947) ("[T]his Court has followed a policy of strict necessity in disposing of constitutional issues."); *United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90*, 658 F.3d 1188, 1196 (9th Cir. 2011) (similar).

ACLU elides that settled law and attempts to manufacture a reason to disregard it by asserting that "lower courts are inconsistently applying *Highfields* in the Section 1782 context."  (ACLU Br. 2, 8.)  But they are not.  To the contrary, district courts have overwhelmingly (and expressly) refused to apply *Highfields* under 28 U.S.C. §1782.  *See Zuru*, 614 F. Supp. 3d 706-07; *Hey*, 2023 WL 3874022,

10

at *4; *Takagi*, 2023 WL 1442893, at *3-4; *Takada*, 2023 WL 1452080, at *3-4; *Team Co.*, 2023 WL 1442886, at *3-4; *see also United States v. Google LLC*, 690 F. Supp. 3d 1011, 1022 (N.D. Cal. 2023) (favorably citing *Zuru*, *Hey*, and *Takagi*); *Meta Platforms*, 2023 WL 8438579, at *6 (favorably citing *Hey* and *Takagi*).

ACLU ignores or mischaracterizes[1] almost all of that caselaw and instead cites three decisions that applied *Highfields* under Section 1782: *Tokyo University*, *Yasuda*, and *PGS Home Co.*[2]  But in all three of those cases, the courts just assumed without discussion that the First Amendment applied;[3] *Tokyo University* has been repudiated as "wrong[]" by the Judge who decided it, *see Hey*, 2023 WL 3874022, at *4 & n.2; and the Judge who decided *PGS Home* has subsequently not applied *Highfields* where the anonymous speaker is "a foreign citizen outside U.S. territory," *see Anahara*, 2022 WL 783896, at *5 & n.1 (citing *USAID*, 591 U.S. at 433; brackets omitted).[4]

---

[1] ACLU cites *Takada* as supposedly applying *Highfields*, but it did not: *Takada* squarely rejected *Highfields*.  (*Compare* ACLU Br. 20 n.19, *with Takada*, 2023 WL 1452080, at *3-4.)

[2] *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021); *In re Yasuda*, No. 19-mc-80156, 2019 WL 7020211 (N.D. Cal. Dec. 20, 2019); *In re PGS Home Co.*, No. 19-mc-80139, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019).

[3] *Tokyo Univ.*, 2021 WL 4124216, at *4-5; *Yasuda*, 2019 WL 7020211, at *4-6; *PGS Home*, 2019 WL 6311407, at *4-6.

[4] The other cases ACLU cites as applying *Highfields* did not involve Section 1782.

11

District courts have overwhelmingly refused to apply *Highfields* under 28 U.S.C. §1782 for good reason—in fact, myriad good reasons.

To begin, extending *Highfields* to Section 1782 would contradict the Supreme Court's holding that Section 1782 "does *not* require the applicant to show 'that United States law would allow discovery in domestic litigation analogous to the foreign proceeding.'" *Zuru*, 614 F. Supp. 3d at 707 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 263 (2004)). *Intel* specifically "reject[ed]" that requirement, explaining that "Section 1782 is a provision for assistance to tribunals abroad" and dismissing as "fraught with danger" the lone dissenter's position that a Section 1782 application should be denied if "the discovery [sought] would not be available under domestic law in analogous circumstances." *Intel*, 542 U.S. at 263 & n.15; *id.* at 270 (Breyer, J., dissenting). Similarly, extending *Highfields* to Section 1782 would contradict the Supreme Court's "caution against evaluating an anticipated foreign proceeding through the lens of the nearest domestic analog." *Takagi*, 2023 WL 1442893, at *4 (citing *Intel*, 542 U.S. at 263).

Even more fundamentally, imposing domestic-law-based burdens to obtain discovery under Section 1782 over and above the requirements of the statute and the discretionary factors established by the Supreme Court would undermine the "animating purpose" of the statute. 28 U.S.C. §1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in

gathering evidence for use in foreign tribunals," and over time Congress has repeatedly and "substantially broadened the scope of assistance" courts provide under the statute. *Intel*, 542 U.S. at 247-48. Section 1782's "animating purpose ... is comity: Permitting federal courts to assist foreign and international governmental bodies promotes respect for foreign governments and encourages reciprocal assistance." *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022). By "providing efficient assistance to participants in international litigation," Section 1782 "encourag[es] foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (citation omitted).

Congress passed and amended Section 1782 to achieve that policy goal. *Intel*, 542 U.S. at 252; *ZF Auto.*, 596 U.S. at 632. Contrary to ACLU's assertion (ACLU Br. 19-21), imposing additional domestic-law hurdles to obtaining discovery under Section 1782 is *not* "compatible" with that purpose, as it would encourage foreign courts to impose similar hurdles under their domestic laws for U.S. citizens seeking their assistance. ACLU wants to pursue a different policy goal by re-writing Section 1782 to extend speech rights abroad (beyond the First Amendment's reach), but this Court cannot re-write the statute to advance ACLU's (not Congress's) policy goal. *See, e.g.*, *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219 (2020) ("[T]he place for reconciling competing and incommensurable policy goals like these is before policymakers. This Court's limited role is to read and apply the law

13

those policymakers have ordained[.]"); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) ("Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments."); *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1076 (9th Cir. 2023) ("As citizens and internet users, we too are concerned with the various tensions in the law and the implications of our decisions, but we are not the policymakers.").[5] That is why courts have recognized that "'there's good reason to tread lightly in applying U.S. free-speech principles abroad'" via Section 1782.  *Hey*, 2023 WL 3874022, at *3 n.1 (quoting *Zuru*, 614 F. Supp. 3d at 707).

Applying *Highfields* under Section 1782 would also contravene the Supreme Court's admonition that Section 1782(a) "imposes no substantive limitation on the discovery to be had," and it would be untenable in practice.  *Intel*, 542 U.S. at 260 n.11.  Not only would "federal district courts ... be called upon to regularly interpret and apply laws from around the globe," *Zuru*, 614 F. Supp. 3d at 703, but—because Section 1782 allows discovery for reasonably contemplated but not-yet-filed foreign claims—courts would have to evaluate the merits of (and supporting evidence for)

---

[5] *See also, e.g.*, *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1076-77 (9th Cir. 2018) ("Our task is not to make policy decisions, but to interpret the statute as enacted."), *aff'd*, 589 U.S. 178 (2020); *Pena v. Lindley*, 898 F.3d 969, 979-80 (9th Cir. 2018) ("Nor do we substitute our own policy judgment for that of the legislature.").

foreign claims that are "anticipated but [for which] no complaint ... has been filed" and "where the case-initiating documents in the foreign proceeding do not require the same kind of supporting factual allegations" as do complaints under U.S. law, *Takada*, 2023 WL 1452080, at *5. *Highfields* is "ill-suited to [such] an application." *E.g.*, *Team Co.*, 2023 WL 1442886, at *5. Applying it would undermine Section 1782's purpose of providing accessible fora in which foreign litigants can obtain liberal discovery in aid of foreign claims. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004).

For all of these reasons, courts have rightly and consistently refused "to endorse a standard for exercising discretion that does not derive from [Section 1782] itself (or the Supreme Court's interpretation of it)." *E.g.*, *Takagi*, 2023 WL 1442893, at *6. ACLU offers no reason to change course, and this Court should reject its invitation to do so.

## CONCLUSION

Applicant-Appellant Gregory Gliner respectfully requests that the Court reverse the district court's judgment and remand with instructions that his Application under 28 U.S.C. §1782 be granted.

15

Date:  October 11, 2024                    Respectfully Submitted,

                                       */s/ Joseph R. Oliveri*

JOSEPH R. OLIVERI
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7405
joe@clarelocke.com

MICHELE FLOYD
KILPATRICK TOWNSEND
STOCKTON LLP
2 Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 273-4756
mfloyd@ktslaw.com

*Attorneys for Applicant-Appellant*
*Gregory Gliner*

## <u>CERTIFICATE OF COMPLIANCE</u>

**1.    Type Volume**

[X]    This document complies with type-volume limits of FRAP 32(a)(7)(B)
and Circuit Rule 32-1(a) because, excluding the parts of the document exempted by
FRAP 32(f) (cover page, disclosure statement, table of contents, table of citations,
statement regarding oral argument, statutory addendum, signature block, certificates
of counsel, and proof of service), this document contains <u>3,642</u> words.

**2.    Typeface and Type-Style**

[X]    This document complies with the typeface requirements of
FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because this
document has been prepared in a proportionally spaced typeface using Microsoft
Word in 14-point Times New Roman font.


  */s/ Joseph R. Oliveri*
Joseph R. Oliveri
*Attorney for Applicant-Appellant*
*Gregory Gliner*

Dated:  October 11, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2024, I caused the foregoing [Proposed] Applicant-Appellant Gregory Gliner's Reply to the American Civil Liberties Union of Northern California's Amicus Brief to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 11, 2024            By:    */s/ Joseph R. Oliveri*
                                                    Joseph R. Oliveri
                                                    *Attorney for Applicant-Appellant*
                                                    *Gregory Gliner*

18